JUDGE SWAIN

## 13 CV 1041

DICKSTEIN SHAPIRO LLP
Jeffrey A. Mitchell
1633 Broadway
New York, New York 10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501
mitchellj@dicksteinshapiro.com
Attorneys For Plaintiffs
Tiffany And Company and Tiffany (NJ) LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| TIFFANY AND COMPANY and TIFFANY (NJ) LLC, | ) ) ) ) |
| Plaintiffs, | ) ) Civil Action No. |
| v. | ) ) (Jury Trial Demanded) |
| COSTCO WHOLESALE CORPORATION, | ) ) |
| Defendant. | ) ) ) |

### COMPLAINT

Plaintiffs, Tiffany and Company ("Tiffany") and Tiffany (NJ) LLC ("Tiffany Licensor") (collectively, Tiffany and Tiffany Licensor are referred to as the "Tiffany Companies" or "plaintiffs"), by their attorneys, Dickstein Shapiro LLP, allege on knowledge as to their own acts and otherwise on information and belief as follows:

### ALLEGATIONS COMMON TO ALL COUNTS

**A.   Nature of the Case**

1.      This is an action for trademark infringement, dilution, counterfeiting, unfair competition, injury to business reputation, false and deceptive business practices and false advertising, all in violation of the laws of the United States and the State of New York. The

Tiffany Companies seek a permanent injunction, damages, including defendant's profits, trebled under the law, punitive damages, and related relief as more fully described herein.

2.      Tiffany is the world renowned manufacturer and retailer of high-end jewelry and other fine merchandise, and licenses the exclusive right to manufacture and sell fine jewelry and other products from its affiliate, Tiffany Licensor.  Defendant Costco Wholesale Corporation ("Costco") is a members-only warehouse and online retailer that sells, among other products, branded merchandise, including expensive jewelry.  Costco claims it is able to offer competitive prices by, among other things, selling in bulk, offering no frills, purchasing and offering for sale brand name manufacturers' excess or prior season inventory, or obtaining products from third-party sources outside a manufacturer's normal channels of distribution, sometimes referred to as the gray market.

3.      In connection with jewelry items such as watches, Costco regularly offers for sale branded items from such high-end companies as *Cartier, Breitling, Chanel, Movado* and others. It is known to have regularly sourced high-end watches from outside the United States, and has aggressively litigated its ability to do so with companies such as Omega S.A. with varying degrees of success.

4.      Alongside branded watches, Costco also sells expensive gold and platinum jewelry items, including rings, necklaces, and bracelets.  Among those items are diamond engagement rings retailing from several thousand dollars to tens of thousands of dollars, and more.  In November 2012, a consumer shopping in the Huntington Beach, California Costco warehouse complained to Tiffany that she was disappointed to observe that Costco was offering for sale what were promoted on in-store signs as Tiffany diamond engagement rings.

5.    Subsequent investigation showed that in the jewelry display case at the Huntington Beach Costco location was an engagement ring alongside a point of sale ("POS") sign marked "639911 – PLATINUM *TIFFANY* .70 VS2, 1 ROUND DIAMOND RING – 3199.99," and another ring alongside a different POS sign marked "605880 – PLATINUM *TIFFANY* VS2.1 1.00CT ROUND BRILLIANT SOLITAIRE RING – 6399.99." (emphasis added)   The Costco salesperson also referred to each of the rings as a "Tiffany ring," and said the store generally carries one of each item.

6.    Neither of the rings identified in the Huntington Beach store as "Tiffany" was, in fact, a Tiffany ring, nor was it manufactured by, approved by, licensed by, or otherwise in any way properly associated with Tiffany.  Tiffany promptly confronted Costco with its discovery, and Costco said it removed all Tiffany references from product signage.  Unbeknownst to Tiffany, Costco had apparently been selling different styles of rings for many years that it has falsely identified on in-store signage as "Tiffany."

7.    Tiffany then discovered that Costco was not using the Tiffany trademarks online for the same products at the same time, thereby avoiding detection of its unlawful activities by Tiffany's normal trademark policing procedures.

8.    As a result of the foregoing, unbeknownst to Tiffany, Costco was able to sell in warehouse stores around the United States for many years, including stores located in the State of New York and this District, engagement rings falsely identified as "Tiffany," and thereby unlawfully trade off Tiffany's goodwill and brand awareness to increase its own sales, including member acceptance of Costco as a retailer of high-end jewelry products.  Costco thereby falsely led its members to believe it was a source, presumably outside Tiffany's normal channels of distribution, for authentic Tiffany engagement rings, but at reduced prices.  There are now

hundreds if not thousands of people who mistakenly believe they purchased and own a Tiffany engagement ring from Costco.

9.      Accordingly, Tiffany is entitled to monetary damages, trebled under the law, including, but not limited to an amount equal to all profits of Costco by which it was unjustly enriched by its counterfeiting of Tiffany's valuable trademarks, plus punitive damages, costs and attorneys' fees.  Included in the foregoing are monetary damages equal to the amount by which Costco's engagement ring business increased following its counterfeiting of the Tiffany trademarks.

10.     Tiffany confronted Costco in December of 2012 after first being alerted about the foregoing, and was assured in response that Costco would refrain from any further use of the Tiffany trademarks in the manner described herein.   Accordingly, there is no need for a preliminary injunction at this time.  Nevertheless, Costco should be permanently enjoined and restrained from using any Tiffany trademark to falsely identify rings or other products not manufactured by Tiffany or its licensees, and compelled to publicly admit its misconduct to the purchasers of each such ring, and notify affected purchasers that they do not own a Tiffany engagement ring from Costco.

**B.      Jurisdiction and Venue**

11.     The Tiffany Companies' claims are predicated upon the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et seq., including 15 U.S.C. §§ 1114(1)(a) and (1)(b), §§1117(a)(1), (a)(3) and (b)(1), and §1125.  The Court has jurisdiction over the claims in this matter pursuant to 15 U.S.C. §1121 and 28 U.S.C. §§ 1331, 1338 and 1367(a).   Venue is properly founded in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

DOCSNY-529496v3

**C.**   **The Parties**

12.   Tiffany is a corporation duly organized and existing under the laws of the State of Delaware, and maintains its principal place of business at 200 Fifth Avenue, New York, New York 10010.   Tiffany manufactures and sells worldwide merchandise that bears the Tiffany Trademarks (as defined below), and is the exclusive licensee of those marks for fine jewelry and other items from its affiliate Tiffany Licensor.

13.   Tiffany Licensor is a limited liability company organized and existing under the laws of the State of Delaware, and has its principal place of business at 15 Sylvan Way, Parsippany, New Jersey.   Tiffany Licensor is the owner of all of the Tiffany Trademarks.

14.   Costco is a corporation duly organized and existing under the laws of the State of Washington, and is authorized to do and does business in the State of New York and within this District, as well as around the world.   Costco is not and never has (i) been an owner of the Tiffany Trademarks, (ii) a licensee of the Tiffany Trademarks, or (iii) ever sought or obtained permission from the Tiffany Companies to use the Tiffany Trademarks on POS signs or otherwise.

**D.**   **Tiffany's Famous Trademarks**

15.   For more than 175 years, Tiffany's merchandise has been widely advertised, offered for sale and sold throughout the United States under various distinctive trademarks. Famous Tiffany trademarks have been used in conjunction with the manufacture and sale of high quality goods, including specialty gift items, such as jewelry, silver, china, glassware, decorative objects, crystal, and clocks, under the trademarks and trade names Tiffany & Co, Tiffany, Tiffany Blue Box, T&CO, and others (collectively the "Tiffany Trademarks").   The Tiffany Trademarks have at all relevant times been owned by Tiffany or its predecessors and/or affiliates.

5

16.     As a result of Tiffany's exclusive and extensive use and promotion of the Tiffany Trademarks in the jewelry category, those marks have acquired enormous value and recognition in the United States and throughout the world among people shopping for certain categories of high-end products, and in particular, jewelry.  The Tiffany Trademarks are well known to the consuming public and trade as identifying and distinguishing Tiffany exclusively and uniquely as the source of the high quality products to which the Tiffany Trademarks are applied.  The Tiffany Trademarks are both distinctive and famous.

17.     Tiffany is particularly known for its branded high-end jewelry items, such as 18 karat gold and platinum rings, bracelets, necklaces, and earrings, both with and without diamonds or other precious gems. Authentic Tiffany jewelry is subject to significant quality control standards to assure the consuming public about the provenance and quality of each Tiffany item, and that it has been manufactured in accordance with strict specifications.  Tiffany stands behind that assurance of excellence and quality with a lifetime guaranty for its diamond engagement jewelry.  To protect the brand, Tiffany fine jewelry is only sold in Tiffany retail stores in the United States by trained sales professionals, and is not distributed or sold at discount through off-price retail establishments anywhere in the world. In particular, Tiffany has never sold nor would it ever sell its fine jewelry through an off-price warehouse retailer like Costco, either directly or indirectly.

18.     As a result of the foregoing, the Tiffany Trademarks have developed a reputation and significance in the minds of the purchasing public, worldwide, as distinguishing goods sold under the Tiffany Trademarks as being of higher quality and manufactured to higher standards than most other similar products, most especially jewelry manufactured and sold by Costco.

DOCSNY-529496v3

19.     As such, the Tiffany Trademarks have become strong, famous marks entitled to a broad scope of protection, and are among Tiffany's most important business assets. Any party that falsely labels or offers for sale as Tiffany products those not manufactured and sold by Tiffany does so in order to convert to its own use and unlawfully take advantage for itself the goodwill and strong brand recognition of the Tiffany Trademarks, and to mislead the consuming public into believing the secondary meaning ascribed to authentic Tiffany should apply to products being falsely offered and sold as "Tiffany."

20.     Tiffany Licensor owns and exclusively controls all of the Tiffany Trademarks, including the following, which are relevant to this action and listed on the Principal Register in the United States Patent and Trademark Office:

| Mark | Reg No. | Reg. Date | Goods and Services | First Use | Owner |
|------|---------|-----------|--------------------|-----------|-------|
| Tiffany | 1,228,409 | 2/22/1983 | Decorative Art Objects Made in Whole or in Part of Precious or Semi-Precious Metals- Namely, Figurines, Boxes, Bowls, Trays, and Flowers, Jewelry, Semi-Precious Stones, and Natural and Cultured Pearls | 1868 | Tiffany (NJ) LLC 15 Sylvan Way Parsippany, New Jersey 07054 |
| Tiffany | 133,063 | 7/6/1920 | Jewelry for Personal Wear, Not Including Watches; [Precious Stones,] and Flat and Hollow Ware Made of or Plated with Precious Metal | 1868 | Tiffany (NJ) LLC 15 Sylvan Way Parsippany, New Jersey 07054 |
| Tiffany & Co. | 23,573 | 9/5/1883 | Jewelry and Watches | 1868 | Tiffany (NJ) LLC 15 Sylvan Way Parsippany, New Jersey 07054 |
| Tiffany & Co. | 1,228,189 | 2/22/1983 | Decorative Art Objects Made in | 1868 | Tiffany (NJ) LLC 15 Sylvan Way |

DOCSNY-529496v3

| Mark | Reg No. | Reg. Date | Goods and Services | First Use | Owner |
|------|---------|-----------|--------------------|-----------|-------|
|  |  |  | Whole or in Part of Precious or Semi-Precious Metals-Namely, Figurines, Boxes, Bowls, Trays, [and Flowers,] Jewelry, Metal Wares Made in Whole or in Part of Precious or Semi-Precious Metals-Namely, Business Card Cases, Candelabras, Candlesticks, Cigar and Cigarette Boxes, Napkin Rings, and Bookmarks, Semi-Precious Stones, Natural and Cultured Pearls |  | Parsippany, New Jersey 07054 |
| T & Co. | 4,018,341 | 8/30/2011 | Jewelry; rings, earrings, necklaces, charms, bracelets, pendants, cuff links, bracelet cuffs and bangles; key rings of precious metal, valet key rings of precious metal | 1979 | Tiffany (NJ) LLC 15 Sylvan Way Parsippany, New Jersey 07054 |

21.    All of the above Tiffany Trademarks are valid and subsisting, and registration Nos. 1,228,189 and 1,228,409 have become incontestable pursuant to 15 U.S.C § 1065.

E.    Costco

22.    Costco is the largest membership warehouse retailer in the world.  According to its 2012 Annual Report, at fiscal year-end 2012 it had 622 warehouse stores in 41 states and around the world, and employed over 180,000 people.  It was a pioneer in its industry, and only

sells to members who pay an annual fee to gain admittance to Costco's no-frills warehouse stores, or to purchase items offered on its website.

23.    The no-frills limited selection approach to retailing of Costco is the polar opposite to the approach of Tiffany, which is well-known for offering its customers attentive personalized service in stores built out in a first-class manner consistent with the high quality and standards associated with the *Tiffany* brand.

24.    Costco is known by its members for offering branded merchandise from well-known manufacturers across many product categories, at a discount.   Otherwise, it offers equivalent products, but usually under its house brand *Kirkland Signature*.   Because it sells high volume, and generally in large quantities, manufacturers are able to supply Costco at reduced wholesale prices, and the Costco business model is to pass those volume savings on to members. Costco publicly claims to have approximately 60-million members worldwide who are not only familiar with its business model, but who also pay for the privilege of membership to gain access to its warehouse stores.

25.    Among its product lines, Costco has also historically sold at a discount higher priced items, such as electronics, computers and cameras, many made by leading manufacturers. Members know that some items can be sold by Costco at a discount because they are near the end of a product cycle, and others because they have been sourced aggressively, including overseas.

26.    When it comes to even its own *Kirkland Signature* house brand, Costco considers its intellectual property rights valuable and significant.   Its 2012 Annual Report states:

> We believe that, to varying degrees, our trademarks, trade names, copyrights, proprietary processes, trade secrets, patents, trade dress, domain names and similar intellectual property add significant value to our business and are important factors in our success.   We have invested significantly in the

9

development and protection of our well-recognized brands, including the Costco Wholesale® series of trademarks and our private label brand, Kirkland Signature®. We believe that Kirkland Signature products are premium products offered to our members at prices that are generally lower than those for national brand products and that they help lower costs, differentiate our merchandise offerings from other retailers, and generally earn higher margins. We expect to increase the sales penetration of our private label items in the future. We rely on trademark and copyright laws, trade secret protection, and confidentiality and license agreements with our suppliers, employees and others to protect our proprietary rights.

27.    As a result of the foregoing business model, Costco members expect to find brand name merchandise from all sorts of manufacturers across many product categories at a discount, and given Costco's heretofore fine reputation, do not question the authenticity of branded items offered for sale in Costco warehouse stores. Costco members similarly expect that where an item is made by Costco, it will be clearly marked that way, and that it will usually carry the *Kirkland Signature* brand name.

28.    Costco knowingly, intentionally and willfully used the Tiffany Trademarks to misrepresent the jewelry items described herein because they were far more valuable than its own *Kirkland Signature* brand could ever be for jewelry items.

**F.    Costco Sells Branded Jewelry**

29.    Costco has added over the years higher priced product lines like fine art, fine wine, and jewelry. In order to bring attention to its jewelry department, a product category for which Costco is not known, it sells some branded watches from high-end manufacturers, such as *Cartier, Breitling, Chanel* and *Movado*. At least one manufacturer, Omega S.A., has challenged Costco's right to sell "authentic" Omega watches obtained by Costco on the gray market. Costco knows and understands the business value of having brand names at a discount across all product lines, including jewelry.

30.     In the early to mid-2000s, Costco began aggressively marketing its supposed ability to offer the same quality engagement rings as better manufacturers like Tiffany, but at a lower price.  Indeed, in 2005, Costco allowed an ABC News crew to have access to one of its stores to do a story comparing Costco diamond engagement rings to those from Tiffany.

31.     Sometime in the early to mid-2000s, unbeknownst to Tiffany, Costco apparently began using the Tiffany Trademarks on POS signs to distinguish some of the engagement rings being offered to its members.  However, unlike with brand name watches, which at least were actually manufactured by the companies whose names were displayed on POS signs, the engagement rings identified in the same jewelry cases on POS signs as "Tiffany" were not made by, licensed by, or authorized by Tiffany.

32.     Costco knew that its use of the Tiffany Trademarks to identify or describe engagement rings would attract the attention of its members looking at its jewelry cases, and enhance the image of that segment of the jewelry category for which Costco was not known.

33.     Even though Costco had its own *Kirkland Signature* brand with which to label rings it manufactured, Costco decided instead to forego use of that brand name which would have clearly informed members about the source of its engagement rings, and instead counterfeited the Tiffany Trademarks on POS signs.

34.     Indeed, by marking some rings as *Tiffany*, and others not, Costco knowingly and intentionally created the false impression that as with watches, it had a source for engagement rings from Tiffany directly, or from parties within Tiffany's normal channels of distribution.  In addition, since the rings themselves were not *Tiffany*, the counterfeiting made other non-branded jewelry in the same display case appear more valuable by comparison since those other items were, in fact, no different than what was falsely labeled as *Tiffany*.

DOCSNY-529496v3

35.     Accordingly, in addition to selling what amounted to counterfeit Tiffany rings, Costco was also able to increase sales of all of its engagement rings.  The use of the Tiffany Trademarks brought attention not just to the rings marked *Tiffany* themselves, but to Costco's fine jewelry department generally.  It also misled Costco members who compared the quality of what were identified as Tiffany rings to those without the Tiffany brand, as they appeared identical since they really were.

36.     Costco knew and understood there was a generic, non-infringing, and descriptive way to offer those same rings for sale without the Tiffany Trademarks.

37.     Costco counterfeited the Tiffany Trademarks for the sole purpose of misleading its members, and creating a false impression about the rings described in the counterfeit POS signs.

38.     The use by Costco of the Tiffany Trademarks was intentional, and willfully designed to evade detection by Tiffany, as evidenced by the following:

a.      Access to Costco stores is limited to Costco members;

b.      Costco did not promote its use of the Tiffany Trademarks outside of its warehouse stores;

c.      Costco was not known to sell Tiffany engagement rings, or to have a source to Tiffany's legitimate chain of distribution of such rings, so its activities were never under suspicion by Tiffany;

d.      The only place the Tiffany Trademarks were displayed were on POS signs within a glass case in the jewelry departments of Costco warehouse stores, making them visible only to Costco members shopping for engagement rings in particular stores where the rings were displayed;

e.      Costco members, familiar with Costco's business model, had no reason to suspect that rings identified as *Tiffany* were, in fact, not Tiffany rings;

f.      Costco did not maintain stock of the subject rings at all times and in all stores, creating the illusion of short supply as if they were real Tiffany rings; and

DOCSNY-529496v3

g.      When selling the same rings online, Costco omitted the reference to "Tiffany" that it used for the same item number on its in-store POS signs.  For example, in *Costco Connection* dated November 2012, Costco's online magazine, Costco described the ring sold at the same time in its stores with the POS sign "Tiffany" (Item No. 639911), only as "*Diamond Solitaire Ring – This classic solitaire features a .70 ct. round-brilliant cut diamond.  Set in platinum.*"

39.      The rings identified on the Costco POS signs as "Tiffany" were not Tiffany rings.

40.      As further evidence of Costco's bad faith, it did not use any disclaimers, in signs or otherwise, to make clear to its members that the use of the Tiffany Trademarks was not meant to convey the impression that the item being sold was a Tiffany product, or in any way associated with Tiffany, its manufacturers or its manufacturing process.

41.      Costco also did not provide any training to its salespeople about the source of the rings identified on the POS signs as "Tiffany," or that despite the use of the Tiffany Trademarks, the products displayed were not Tiffany products.

42.      Costco's intent and purpose in using the Tiffany Trademarks was to convey false information, and mislead its members about the source of the rings bearing the Tiffany Trademarks because doing so increased sales, added to the perceived value of its high-end jewelry department, and made its other non-branded rings look more valuable by comparison.

43.      Costco engaged in the foregoing conduct to trade off of and usurp for itself the value of the Tiffany Trademarks and the goodwill associated with them, both to sell counterfeit Tiffany products to unsuspecting members, as well as to increase the credibility and market acceptance of its jewelry department among its members.

44.      All of the foregoing also diluted the value of the Tiffany Trademarks by causing them to be associated with Costco and its discount warehouse operations, a method of retailing Tiffany would never utilize or authorize for its products.

DOCSNY-529496v3

## COUNT I

### Federal Trademark Infringement

45.      Plaintiffs hereby incorporate by reference and reallege each and every allegation set forth in Paragraphs 1 through 44 above.

46.      Costco's offer to sell, sale, distribution, and advertisement of engagement rings under the Tiffany Trademarks violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

47.      The Tiffany Trademarks are federally registered, and are entitled to protection under both federal and common law.

48.      Costco's unauthorized use of the Tiffany Trademarks is likely to cause confusion, to cause mistake, and to deceive customers and potential customers as to the source or origin of Costco's goods and to cause them to mistakenly believe that Costco's goods are Tiffany's goods, or are otherwise affiliated, connected, or associated with Tiffany in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

49.      Costco's unauthorized use of the Tiffany Trademarks has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Tiffany for which Tiffany has no adequate remedy at law, including substantial and irreparable injury to the goodwill and reputation associated with the Tiffany Trademarks.

50.      Upon information and belief, Costco's infringement of the Tiffany Trademarks is willful and reflects Costco's intent to trade on the goodwill and strong brand recognition associated with the Tiffany Trademarks.

51.      Plaintiffs are entitled to injunctive relief, and also entitled to recover their costs, reasonable attorney's fees, and Costco's profits under 15 U.S.C. §§ 1114, 1116, 1117.

DOCSNY-529496v3

## COUNT II

### Federal False Designation of Origin and Unfair Competition

52.     Plaintiffs hereby incorporate by reference and reallege each and every allegation set forth in Paragraphs 1 through 44 above.

53.     Costco's offer to sell, sale, distribution, and advertisement of engagement rings under the Tiffany Trademarks constitutes unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

54.     The Tiffany Trademarks are federally registered, and are entitled to protection under both federal and common law.

55.     Costco's unauthorized use of the Tiffany Trademarks constitutes unfair competition and the use of a false designation of origin that is likely to cause confusion and deceive consumers as to the impression that Costco's products are manufactured by, authorized by, or otherwise associated with Tiffany in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

56.     Costco's unauthorized use of the Tiffany Trademarks has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Tiffany for which Tiffany has no adequate remedy at law, including substantial and irreparable injury to the goodwill and reputation associated with the Tiffany Trademarks.

57.     Upon information and belief, Costco's infringement of the Tiffany Trademarks is willful and reflects Costco's intent to trade on the goodwill and strong brand recognition associated with the Tiffany Trademarks.

58.     Plaintiffs have no adequate remedy at law.  If use of the Tiffany Trademarks by Costco is not enjoined, plaintiffs will suffer substantial and irreparable injury to their business reputation and the goodwill associated with the Tiffany Trademarks.

DOCSNY-529496v3

## COUNT III

### Federal Trademark Dilution

59.     Plaintiffs hereby incorporate by reference and reallege each and every allegation set forth in Paragraphs 1 through 44 above.

60.     The Tiffany Trademarks are federally registered, and are entitled to protection under both federal and common law.

61.     The Tiffany Trademarks are famous marks.   Specifically, (a) the Tiffany Trademarks are inherently distinctive and have acquired a high degree of distinctiveness; (b) Tiffany has used the Tiffany Trademarks for over 150 years in connection with the manufacture and sale of high quality goods, including specialty gift items, such as jewelry, silver, china, glassware, decorative objects, crystal, and clocks; (c) Tiffany has extensively advertised and promoted the trademarks for over 150 years; (d) the Tiffany Trademarks have an extremely high degree of recognition among consumers; and (e) the Tiffany Trademarks are registered on the Principal Register of the United States Patent and Trademark Office under the Lanham Act. Accordingly, the Tiffany Trademarks qualify for protection from dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

62.     Costco's unauthorized use of the Tiffany Trademarks has diluted and damaged the distinctiveness of Tiffany's famous marks and has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Tiffany for which Tiffany has no adequate remedy at law, including substantial and irreparable injury to the goodwill and reputation associated with the Tiffany Trademarks, all in violation of the Federal Trademark Dilution Act of 1995, 15 U.S.C. § 1125(c).

DOCSNY-529496v3

63.     Plaintiffs have no adequate remedy at law.  If use of the Tiffany Trademarks by Costco is not enjoined, plaintiffs will suffer substantial and irreparable injury to their business reputation and the goodwill associated with the Tiffany Trademarks.

<u>COUNT IV</u>

**Federal Trademark Counterfeiting**

64.     Plaintiffs hereby incorporate by reference and reallege each and every allegation set forth in Paragraphs 1 through 44 above.

65.     The Tiffany Trademarks are federally registered, and are entitled to protection under both federal and common law.

66.     Without plaintiffs' authorization or consent, Costco has used spurious designations that are identical with, or substantially indistinguishable from, the Tiffany Trademarks in connection with goods covered by registrations for the Tiffany Trademarks.

67.     Costco has used these spurious designations knowing they are counterfeit in connection with the advertisement, promotion, sale, offering for sale and distribution of goods in direct competition with Tiffany's goods covered by registrations for the Tiffany Trademarks.

68.     Costco's use of the spurious designations as set forth above in connection with Costco's business and the distribution, advertising and selling of Costco's engagement rings is likely to cause confusion, mistake and deception; and cause the public to believe that Costco's engagement rings are the same as Tiffany's engagement rings or that Costco's engagement rings are authorized, sponsored or approved by Tiffany or that Costco is affiliated, connected or associated with or in some way related to Tiffany.

69.     Costco's use of the spurious designations as set forth above is likely to result in Costco unfairly benefiting from Tiffany's advertising and promotion and profiting from the

DOCSNY-529496v3

reputation of Tiffany and the Tiffany Trademarks all to the substantial and irreparable injury of the public, Tiffany and the Tiffany Trademarks and the substantial goodwill represented thereby.

70.     The acts of Costco as described above constitute trademark counterfeiting in violation of Section 32(c) of the Lanham Act, 15 U.S.C. § 1114(c).

71.     Upon information and belief, Costco's use of the spurious designations is willful and reflects Costco's intent to trade on the goodwill and strong brand recognition associated with the Tiffany Trademarks.

72.     Plaintiffs are entitled to injunctive relief, and are also entitled to statutory damages as provided by 15 U.S.C. § 1117(c) of the Lanham Act, or at Tiffany's election, an amount representing three (3) times Tiffany's damage or Costco's illicit profits, and its costs and reasonable attorney's fees under 15 U.S.C. § 1117.

## COUNT V

### Violation of New York General Business Law Article 22-A § 349

73.     Plaintiffs hereby incorporate by reference and reallege each and every allegation set forth in Paragraphs 1 through 44 above.

74.     Without plaintiffs' authorization or consent, and having knowledge of Tiffany's well-known, prior rights in the Tiffany Trademarks, Costco manufactured, distributed, promoted, offered for sale and sold to the public engagement rings under the *Tiffany* name that are identical and/or highly similar to the Tiffany Trademarks, in direct competition with Tiffany's genuine merchandise bearing the Tiffany Trademarks.

75.     Costco's unauthorized use of the Tiffany Trademarks is likely to cause confusion and deceive consumers as to the origin, sponsorship, or approval of Costco's products by creating the false and misleading impression that Costco's products are manufactured by, authorized by, or otherwise associated with Tiffany.

DOCSNY-529496v3

76.     If Costco's activities are not enjoined, plaintiffs will suffer immediate and continuing irreparable harm and injury to their reputation and to the goodwill and distinctiveness in the Tiffany Trademarks.

**COUNT VI**

**Violation of New York General Business Law Article 24 § 360-L**

77.     Plaintiffs hereby incorporate by reference and reallege each and every allegation set forth in Paragraphs 1 through 44 above.

78.     Costco's unauthorized offer to sell, sale, distribution, and advertisement of engagement rings bearing the *Tiffany* name violates Section 360-L of the New York General Business Law.

79.     The Tiffany Trademarks are federally registered and are entitled to protection under both federal and New York common law.

80.     Costco's unauthorized use of the Tiffany Trademarks is likely to confuse and deceive consumers as to the sponsorship or approval of Costco's engagement rings by creating the false and misleading impression that Costco's engagement rings are authorized, licensed or otherwise associated with Tiffany.

81.     Costco's unauthorized use of the Tiffany Trademarks, unless enjoined, will cause substantial and irreparable injury to Tiffany for which Tiffany has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation associated with the Tiffany Trademarks.

82.     Costco's unauthorized use of the Tiffany Trademarks has diluted and damaged the distinctiveness of Tiffany's famous marks and has caused, and unless enjoined, will continue to cause substantial and irreparable injury to plaintiffs for which they have no adequate remedy

DOCSNY-529496v3

at law, including substantial and irreparable injury to the goodwill and reputation associated with the Tiffany Trademarks.

83.     Plaintiffs are entitled to injunctive relief, and are also entitled to recovery of Costco's profits, actual damages, enhanced profits and damages, costs, and reasonable attorney's fees.

### COUNT VII

### Trademark Infringement in Violation of New York Common Law

84.     Plaintiffs hereby incorporate by reference and reallege each and every allegation set forth in Paragraphs 1 through 44 above.

85.     Costco's offer to sell, sale, distribution, and advertisement of engagement rings under the Tiffany Trademarks constitutes common law trademark infringement.

86.     The Tiffany Trademarks are federally registered, and are used in New York and elsewhere extensively, and are entitled to protection under both federal law and New York common law.

87.     Costco's unauthorized use of the Tiffany Trademarks is likely to cause confusion and deceive consumers as to the origin, sponsorship, or approval of Costco's products by creating the false and misleading impression that Costco's products are manufactured by, authorized by, or otherwise associated with Tiffany.

88.     Costco's unauthorized use of the Tiffany Trademarks has caused, and unless enjoined, will continue to cause substantial and irreparable injury to plaintiffs for which they have no adequate remedy at law, including substantial and irreparable injury to the goodwill and reputation associated with the Tiffany Trademarks.

DOCSNY-529496v3

89.     Upon information and belief, Costco's infringement of the Tiffany Trademarks is willful and reflects Costco's intent to trade on the goodwill and strong brand recognition associated with the Tiffany Trademarks.

90.     Upon information and belief, Costco's infringement of the Tiffany Trademarks has been deliberate and calculated, having copied Tiffany's product and advertised, distributed, and promoted Costco's engagement rings under the *Tiffany* name, resulting in confusion and deception among consumers as to the origin, sponsorship, or approval of Costco's products, and resulting in significant damages to Tiffany.

91.     Plaintiffs are entitled to injunctive relief, and are also entitled to recover their damages, costs, and reasonable attorney's fees.

92.     Costco's acts constitute trademark infringement in violation of the common law of the State of New York.

## COUNT VIII

### Unfair Competition in Violation of New York Common Law

93.     Plaintiffs hereby incorporate by reference and reallege each and every allegation set forth in Paragraphs 1 through 44 above.

94.     With knowledge of the fame and distinctiveness of the Tiffany Trademarks, Costco intended to and did trade on the goodwill and strong brand recognition associated with the Tiffany Trademarks by manufacturing, distributing, promoting and selling engagement rings using the Tiffany *name* and under the Tiffany Trademarks.

95.     Costco's acts as alleged herein are likely to cause confusion, mistake, and deception to consumers as to the affiliation, connection, or association of Costco with Tiffany, and as to the origin, sponsorship, or approval of Costco's engagement rings under the Tiffany Trademarks, all to the detriment and damage of Tiffany and to the unjust enrichment of Costco.

DOCSNY-529496v3

96.     Costco's unauthorized use of the Tiffany Trademarks, unless enjoined, will cause substantial and irreparable injury to plaintiffs for which they have no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation associated with the Tiffany Trademarks.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for the following relief:

A.      For judgment that:

(i)     Costco has engaged in trademark infringement in violation of Section 32(l) of the Lanham Act, 15 U.S.C. § 1114(1);

(ii)    Costco has engaged in unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

(iii)   Costco has engaged in trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c);

(iv)    Costco has engaged in trademark counterfeiting in violation of Section 32(c) of the Lanham Act, 15 U.S.C. 1114(c);

(v)     Costco has engaged in unlawful deceptive acts and practices in violation of Section 349 of the New York General Business Law;

(vi)    Costco has engaged in trademark dilution in violation of Section 360-L of the New York General Business Law;

(vii)   Costco has engaged in trademark infringement in violation of the common law of New York; and

(viii)  Costco has engaged in unfair competition in violation of the common law of New York.

22

DOCSNY-529496v3

B.     For a permanent injunction enjoining Costco, and any successors or assigns, and its principals, officers, partners, agents, subcontractors, servants, employees, attorneys, affiliates, licensees, subsidiaries and related companies or entities, and all others acting in active concert or participation with it who receive actual notice of the Court's order by personal service or otherwise, from:

(i)     using the *Tiffany* name and/or the Tiffany Trademarks or any other word, symbol, or device or colorable imitation thereof, or any other mark belonging to Tiffany, or any other mark, name, or term, in any manner or media, which is likely to cause confusion, to cause mistake, or to deceive;

(ii)     passing off, inducing, or enabling others to sell or pass off any product as and for products produced by Tiffany, which are not in fact Tiffany's products, or not produced under the control and supervision of Tiffany and approved by Tiffany for sale under the Tiffany Trademarks;

(iii)     diluting and infringing the Tiffany Trademarks and damaging Tiffany's reputation and their goodwill in the Tiffany Trademarks;

(iv)     engaging in any other act likely to cause the mistaken belief that Costco and the goods it sells or offers to sell are in any way endorsed or sponsored by, or otherwise affiliated, connected, or associated with Tiffany;

(v)     using the *Tiffany* name or the Tiffany Trademarks on or in connection with any products, or any false designations of origin, false descriptions, or false representations which may imply or lead the trade or public to believe that a product not originating with Tiffany is Tiffany's product or that Costco or Costco's business is Tiffany's business or is otherwise approved or sponsored or affiliated with Tiffany; and

DOCSNY-529496v3

(vi)     otherwise competing unfairly with Tiffany in any manner.

C.     For an order directing (i) the destruction of all packaging and any printed material, including advertising materials and POS displays, bearing the Tiffany Trademarks in Costco's possession or control, and all plates, molds, matrices and other means of making the aforesaid printed materials, publicly acknowledging the wrongful activities alleged herein, and (i) that Costco inform all purchasers of affected items that they did not purchase from Costco and do not own *Tiffany* products.

D.     For an order directing Costco to file with the Court and serve upon plaintiffs within thirty (30) days after service of the injunction upon Costco, a report in writing and under oath setting forth in detail the manner and form in which Costco has complied with the injunction.

E.     For an order that: (i) Costco account for and pay over to the amount of any profits realized by Costco by reason of Costco's unlawful and willful acts as alleged herein; (ii) plaintiffs be awarded statutory damages in the amount of $2,000,000 per infringement pursuant to 15 U.S.C. § 1117(c); (iii) the damages for infringement and dilution of the Tiffany Trademarks, including but not limited to the profits realized by Costco by reason of Costco's unlawful and willful acts alleged herein, be increased by a sum equal to three times the amount thereof as provided by law; (iv) plaintiffs be awarded interest, including pre-judgment interest, on all damages sums; (v) plaintiffs be awarded their costs and reasonable attorneys' fees and have such other and further relief as the Court may deem equitable, including, but not limited to, any relief set forth under 15 U.S.C. §§ 1116-1118 and N.Y. Gen. Bus. Law §§ 349 and 360(L); and (vi) plaintiffs be awarded actual and punitive damages as provided for under applicable federal law and state law.

F.      For such other and further relief as the Court shall deem appropriate.

## DEMAND FOR TRIAL BY JURY

Tiffany hereby demands trial by jury of all issues so triable.

Dated:      New York, New York
            February 14, 2013

DICKSTEIN SHAPIRO LLP

By: _____
            Jeffrey A. Mitchell
        1633 Broadway
        New York, New York  10019-6708
        Telephone: (212) 277-6500
        Facsimile: (212) 277-6501
        mitchellj@dicksteinshapiro.com
        Attorneys for Plaintiffs
        Tiffany and Company and Tiffany (NJ) LLC

DOCSNY-529496v3