DICKSTEIN SHAPIRO LLP
Jeffrey A. Mitchell
Don Abraham
Judith Cohen
1633 Broadway
New York, New York  10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501
mitchellj@dicksteinshapiro.com
abrahamd@dicksteinshapiro.com
cohenj@dicksteinshapiro.com
Attorneys for Plaintiffs
Tiffany and Company and Tiffany (NJ) LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIFFANY AND COMPANY and TIFFANY (NJ) LLC,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>　　　　　　　Defendant. | No. 13 CV 1041 (LTS)(DCF)<br>ECF Case |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 FOR SUMMARY JUDGMENT DISMISSING COUNTERCLAIM OR, IN THE ALTERNATIVE, TO DISMISS COUNTERCLAIM PURSUANT TO <u>FEDERAL RULE OF CIVIL PROCEDURE 12(c)</u>**

## **TABLE OF CONTENTS**

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 4 |
| A. The Primary Significance of the Word Tiffany | 4 |
| B. Costco Did Not Use the Term "Tiffany" to Describe its Rings Online | 7 |
| C. Dictionary References | 8 |
| D. The Evidence | 9 |
| CONCLUSION | 11 |

# **TABLE OF AUTHORITIES**

CASES                                                                                                                     Page(s)

*B.V.D. Licensing Corp. v. Body Action Design, Inc.*, 846 F.2d 727 (Fed. Cir. 1988) ................ 4, 8

*Berner Int'l Corp. v. Mars Sales Co.*, 987 F.2d 975 (3d Cir. 1993) ................................................ 9

*Bos. Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1 (1st Cir. 2008) ................................ 9

*Dixi-Cola Labs., Inc. v. Coca-Cola Co.*, 117 F.2d 352 (4th Cir. 1941) ......................................... 5

*Duluth News-Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093 (8th Cir. 1996) ................................. 10

*Golotrade Shipping & Chartering, Inc. v. Travelers Indem. Co.*,
    706 F. Supp. 214 (S.D.N.Y. 1989) ............................................................................................ 9

*In re Minnetonka, Inc.*, 212 U.S.P.Q. 772 (T.T.A.B. 1981) ........................................................... 9

*In re Vasco Metals Corp.*, 154 U.S.P.Q. 191 (T.T.A.B. 1967) ...................................................... 9

*IP Lund Trading ApS v. Kohler Co.*, 163 F.3d 27 (1st Cir. 1998) .................................................. 4

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257 (2d Cir. 2005) .......... 10

*John Hancock Prop. & Cas. Ins. Co. v. Universal Reinsurance Co.*,
    147 F.R.D. 40 (S.D.N.Y. 1993) ................................................................................................ 9

*Kraft Foods Holdings, Inc. v. Helm*, 205 F. Supp. 2d 942 (N.D. Ill. 2002) ................................... 8

*Park'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189 (1985) ................................................. 1

*Tiffany & Broadway, Inc. v. Comm'r of Patents & Trademarks*,
    167 F. Supp. 2d 949 (S.D. Texas 2001) .................................................................................... 5

*Tiffany & Co. v. Bos. Club, Inc.*, 231 F. Supp. 836 (D. Mass. 1964) ............................................. 5

*Tiffany & Co. v. L'Argene Prods. Co.*, 67 Misc. 2d 384 (Sup. Ct. N.Y. County),
    *aff'd*, 37 A.D.2d 699 (1971) ..................................................................................................... 5

*Tiffany & Co. v. Parfums Lamborghini*, No. 81 Civ. 0569, 1981 U.S. Dist. LEXIS 10878
    (S.D.N.Y. Feb. 13, 1981) ........................................................................................................... 5

*Tiffany & Co. v. Tiffany Prods., Inc.*, 147 Misc. 679 (Sup. Ct. N.Y. County),
    *aff'd*, 237 A.D. 801 (1st Dep't 1932), *aff'd*, 262 N.Y. 482 (1933) ............................................ 5

*Tokio Marine Mgmt. v. M/V Zim Tokyo*, No. 91 Civ. 0063 (PKL),
    1993 U.S. Dist. LEXIS 11487 (S.D.N.Y. Aug. 17, 1993) ......................................................... 9

DOCSNY-536976

| CASES (cont.) | Page(s) |
|---|---|

*Ty Inc. v. Perryman*, 306 F.3d 509 (7th Cir. 2002)............................................................................4

*Ty Inc. v. Softbelly's, Inc.*, 353 F.3d 528 (7th Cir. 2003)..................................................................1

*Wallpaper Mfrs., Ltd. v. Crown Wallcovering Corp.*, 680 F.2d 755 (C.C.P.A. 1982) ....................6

STATUTES

15 U.S.C. § 1064(3) ..........................................................................................................................4

RULES

Fed. R. Evid. 201(b)..........................................................................................................................6

OTHER AUTHORITIES

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (4th ed.) ..................4, 5

**PRELIMINARY STATEMENT**

Costco's opposition papers are artfully misleading. They refer to a "Tiffany setting" as generally used to describe a particular type of ring setting, but their claim is that the mark TIFFANY itself should be invalidated as generic. This case is not about "Tiffany setting"; it is about TIFFANY. TIFFANY is no more generic than is JEEP, LEVI'S, BAND-AID, JELL-O, or countless other marks with colloquial uses that appear in dictionaries. TIFFANY's significance, referring to the famed jewelry manufacturer that has built a reputation for unmatched quality and service over more than 175 years, cannot be in dispute; the strength of the TIFFANY mark is a historical fact acknowledged by many courts throughout the United States in all sorts of circumstances where this mark has been uniformly protected. Despite this long and irrefutable history of enforcement and judicial precedent, Costco brazenly sold its own engagement rings – a core Tiffany product – next to signs saying TIFFANY, and now seeks to creatively defend the indefensible by its counterclaim.

To find any mark generic, let alone one so famous and strong as TIFFANY, is an extraordinary remedy, and one that is not taken "until the trademark has gone so far toward becoming the *exclusive descriptor* of the product that sellers of competing brands cannot compete effectively without using the name to designate the product they are selling." *Ty Inc. v. Softbelly's, Inc.*, 353 F.3d 528, 531 (7th Cir. 2003) (emphasis added); *see also Park'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985) ("A generic term is one that refers to the genus of which the particular product is a species."). Costco's counterclaim nowhere even alleges that the *primary significance* of the word TIFFANY is as a generic name for a type of ring setting, and its opposition proves this is not the case. Though Costco purports to dispute Tiffany's assertion that Costco did not use "TIFFANY" online to describe the very same engagement rings, its proof (over more than a decade) of just two isolated examples says

otherwise. In those two instances, one in 2001 and the other in 2006, Costco did not use TIFFANY as it did in the POS Signs. Rather, it buried the phrase "tiffany setting" in a fine print product description. Costco's 2012 online magazine advertising – used <u>at</u> <u>the</u> <u>same</u> <u>time</u> as it was selling rings in stores as TIFFANY – is and remains unassailable proof that TIFFANY was neither the genus for these kinds of rings, nor even the primary descriptor used by Costco.

What this unmasks is that Costco simply *prefers* to call its engagement rings TIFFANY because of the fame and consumer recognition of the TIFFANY brand, and not because it *needs* to do so. Preference certainly is not a ground to invalidate a trademark as generic. If it was, then BAND-AID, COKE, KLEENEX and many others, including TIFFANY, would have lost their protection long ago. That TIFFANY continues to be protected by court after court is a testament to its strength. Costco cannot eradicate this history by its clever claims.

Costco did not even qualify its use of TIFFANY with a word like "style"; it used the trademark itself as if there was no protection whatsoever. Now it proudly boasts it did so intentionally, claiming the use was privileged, and its intended meaning so clear that ordinary consumers knew and appreciated the nuanced distinctions Costco is now making. (If that is how Costco really views the intellectual property rights of others, then punitive damages are likely to be the only way this misconduct will ever stop.) However, not only did these ordinary consumers not have the benefit of the convoluted explanatory diagram which Costco has given the Court, the diagram itself is misleading. Looking at the POS Sign to which the consumer had access, it does <u>not</u> say what Costco claims by its diagram. The sign just says, without embellishment, "PLATINUM TIFFANY VS2, I 1.00.CT ROUND BRILLIANT DIAMOND SOLITAIRE RING." Given Tiffany's renown for its diamonds and rings, but for this created-for-litigation diagram, why would anyone read the TIFFANY reference in this sign as referring to a setting, as opposed to the diamond, the ring, or the TIFFANY brand? (*Compare* Mitchell

2

Decl. Ex. D *with* Grewall Decl. ¶ 5.) Indeed, that the consumer likely reads the sign as referring to the TIFFANY brand follows both from the strength of the TIFFANY mark and from Costco's own advertising. It boasts on its website, "We are a membership warehouse club, dedicated to bringing our members the best possible prices *on quality brand-name merchandise*." http://t.costco.com/membership-information.html (last visited May 15, 2013) (emphasis added). Under these circumstances, if it takes an explanation like the Costco diagram to rewrite the obvious import of this POS Sign, then that is conclusive proof that TIFFANY is not generic.

Unlike the phrases FERRIS WHEEL, MURPHY BED or PHILLIPS HEAD, which instantaneously bring to mind a generic product rather than its source, seeing "TIFFANY" next to jewelry brings to mind Tiffany, the iconic Fifth Avenue store and high-end jewelry manufacturer. Tiffany has superior and longstanding rights to this most valuable trademark, which is so plainly NOT generic that the counterclaim does not deserve to survive as a vehicle for burdensome discovery. Any other result would reward creative pleading beyond reason.

Even Costco acknowledges that TIFFANY continues to have significance as a brand – just not for one particular jewelry design of the thousands made and sold by Tiffany. And, therein lies the rub. A mark cannot be generic unless its *primary significance* is as a generic descriptor. Costco does not nor could it honestly allege in the Counterclaim that the primary significance of "Tiffany" (standing alone) is a generic name for a particular type of ring setting, because it knows that to accept this proposition would allow any seller to put up a store sign that reads "Tiffany engagement rings for sale" with impunity. Consumers could never know whether a reference was to "Tiffany" the brand, or to a type of setting. Thus, through its own submissions Costco concedes, as it must, that TIFFANY's primary significance is not as a generic reference to a pronged ring setting. Accordingly, its counterclaim seeking to cancel the registration of the TIFFANY mark as a generic reference should be dismissed as a matter of law.

**ARGUMENT**

One well-established purpose for a summary judgment motion is to pierce the pleadings and force the non-moving party to come forward with its evidence. While notice pleading permits largely conclusory accusations, the summary judgment process forces a party to back up its claims with proof. Here, although this motion is made at the outset of the case, Costco's own opposition papers concede that TIFFANY is not generic.

A.   **The Primary Significance of the Word Tiffany**

Congress has specifically stated that under the primary significance test, a registered trademark shall *not* be deemed generic solely because such mark is also used as a name of or to identify a unique product or service. 15 U.S.C. § 1064(3); *see also* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 12:6 (4th ed.) ("The standard to be applied to determine whether a term is a generic name or is a mark is not whether the term has *some* significance to the public as the generic name of an article, but whether its generic meaning is its *principal* significance." (emphasis added)).

Here, there can be no genuine dispute that the primary significance of the word TIFFANY (standing alone) to the consuming public is that of the iconic jewelry company.[1] Some trademarks, like TIFFANY, are so famous that a court is able to take judicial notice of their fame and brand strength. *See IP Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 47 (1st Cir. 1998) (court observed that some marks like Coca-Cola may be so famous as to be judicially noticed); *B.V.D. Licensing Corp. v. Body Action Design, Inc.*, 846 F.2d 727, 728 (Fed. Cir. 1988) (court held that it may take judicial notice of facts of universal notoriety, which need not be proved, and it took judicial notice of the fact that the trademark B.V.D. is widely, if not

---

[1]   *See e.g., Ty Inc. v. Perryman*, 306 F.3d 509, 511 (7th Cir. 2002) ("Tiffany" cited as example – company's famous image as a "fancy jewelry store" would be tarnished by association if used by others).

4

universally, known in the United States and its fame will be assumed).[2]

The many prior decisions involving Tiffany establish the historical consumer recognition of the Tiffany marks and Tiffany's reputation for superlative quality over a century and three-quarters. (*See* Pls.' Mem. Law Supp. Mot. 14-16.) Costco's attack on these decisions as hearsay is inapposite. Courts routinely cite prior decisions to establish well known historical information whose accuracy cannot be questioned and that should not be subject to reasonable dispute. *See, e.g.*, *Dixi-Cola Labs., Inc. v. Coca-Cola Co.*, 117 F.2d 352, 354 (4th Cir. 1941); *see also Tiffany & Broadway, Inc. v. Comm'r of Patents & Trademarks*, 167 F. Supp. 2d 949, 953 (S.D. Texas 2001) (citing *Tiffany & Co. v. Tiffany Prods., Inc.*, 147 Misc. 679 (Sup. Ct. N.Y. County), *aff'd*, 237 A.D. 801 (1st Dep't 1932), *aff'd*, 262 N.Y. 482 (1933)); *Tiffany & Co. v. Parfums Lamborghini*, No. 81 Civ. 0569, 1981 U.S. Dist. LEXIS 10878, at *3 (S.D.N.Y. Feb. 13, 1981) ("Courts have consistently recognized the strength of plaintiff's mark, i.e., the identification of the name 'Tiffany' with the store located at Fifth Avenue and 57th Street." (citing *Tiffany & Co. v. L'Argene Prods. Co.*, 67 Misc. 2d 384 (Sup. Ct. N.Y. County), *aff'd*, 37 A.D.2d 699 (1971); *Tiffany Prods.*, 147 Misc. 679)); *L'Argene Prods.*, 67 Misc. 2d at 387 ("The trade name and mark 'Tiffany' have acquired a unique status which has been recognized by this and other courts." (citing *Tiffany Prods.*, 147 Misc. 679; *Tiffany & Co. v. Bos. Club, Inc.*, 231 F. Supp. 836 (D. Mass. 1964)).[3] This Court can take judicial notice of the fact that the historic consumer

---

[2] Tiffany's fame is a fact of universal notoriety. McCarthy, an acknowledged expert on trademarks, includes TIFFANY in the pantheon of nationally famous marks (along with CARTIER, COCA-COLA, KODAK, and POLAROID), given as examples of marks which have the strong distinctive quality of fame deserving of protection from dilution. 4 McCarthy, *supra*, § 24:87.

[3] It also means something that Tiffany has enforced its famous and distinctive marks before the courts for years, and no one has ever complained that the mark was not entitled to trademark protection. Here, not only does Costco blatantly use Tiffany's famous mark to sell diamond engagement rings, it brazenly comes to court and portrays itself as the aggrieved party seeking an award of costs and attorneys' fees for Tiffany having done nothing more than seek to enforce its exclusive right to the use of its incontestable famous marks.

recognition of Tiffany's unique status as a strong and famous brand persists today. *See* Fed. R. Evid. 201(b).

Obviously recognizing the "unique status" and unquestionable strength of the TIFFANY mark, Costco attempts to make this case about the phrase "Tiffany setting."[4] However, that is not Tiffany's claim here, and it is undisputed that Costco did not use "Tiffany setting" in its store signs. (*See* Mitchell Decl. Ex. D; Costco's 56.1 Statement, Def.'s Resps. to Pls.' Assertions Nos. 23-24.) Thus, Costco has been forced to create a diagram to explain that the use of TIFFANY in its POS Signs was meant as a reference to the ring setting, and not the diamond within the ring, the ring itself, or the TIFFANY brand (*See* diagram, Costco Br. 2.) If, as Costco contends, the primary significance of the word TIFFANY standing alone was the generic name for a pronged ring setting, no explanation would be necessary.[5] Indeed, Costco omits the essential allegation that the "primary significance" of TIFFANY is as a generic reference to a type of setting; Costco instead just claims, in a conclusory manner, that the word "Tiffany" is a generic term for pronged settings and then cites some examples of the colloquial use of the phrase "Tiffany setting." (Countercl. ¶¶ 9-10.)[6] That is not enough to establish a right to cancel the registration of the TIFFANY mark as a matter of law.

---

[4] As can be readily gleaned from the Complaint and the registrations of it marks, Tiffany does not claim a registered trademark on the phrase "Tiffany setting." (Mitchell Decl. Ex. A ¶¶ 15-21, Exs. G-H.) Thus, Costco cannot be seeking to cancel that mark. No matter how many ways Costco tries to spin its claim, it is plain that this is a meritless attack on the brand name TIFFANY.

[5] Likewise, there would have been no need for Costco to send a letter on April 5, 2013 to the purchasers of its rings explaining that its "signs used the word 'Tiffany' to indicate that a ring had a Tiffany-style pronged setting holding the diamond" and offering them a full refund. (Mitchell Reply Decl. Ex. N.) Indeed, by even saying "Tiffany-*style* pronged setting" in that letter, Costco admits and illustrates the significance of the Tiffany mark as a brand name.

[6] The examples of improper and infringing use of the Tiffany mark in the counterclaim do not prove that the word "Tiffany" is generic. A trademark owner is not required to immediately act against every possible infringing use, especially when it may not have known about it. Such a requirement would also unnecessarily clutter the courts. *See, e.g.*, *Wallpaper Mfrs., Ltd. v. Crown Wallcovering Corp.*, 680 F.2d 755, 766 (C.C.P.A. 1982). Indeed, upon review of Costco's counterclaim, Tiffany

6

B.   **Costco Did Not Use the Term "Tiffany" to Describe its Rings Online**

Further undermining its claim that TIFFANY alone is generic, Costco has dishonestly responded to Tiffany's Rule 56.1 Statement by disputing Tiffany's factual assertion that Costco did not use the term "TIFFANY" standing alone to describe its pronged diamond rings in its online advertising.  (*See* Costco Rule 56.1 Statement, Def.'s Resp. to Pls.' Assertion No. 29.) Costco instead has "disputed" that assertion by contending it "has from time to time" used the phrase "Tiffany setting" in online advertising.  (*Id.* (citing Grewall Decl. ¶ 8, Ex. 10).)  Not only does this <u>not</u> respond to Tiffany's assertion regarding TIFFANY, the only evidence Costco cites are two product listings; one from 2001 and the other from 2006, in which the phrase "tiffany setting" (all lower case/no capital "T") and not "TIFFANY" alone was used, and then only within a small-type product description, and not in the larger bold-type heading.   Indeed, Costco has offered no evidence that it ever used online the word "TIFFANY" alone in a headline as it did in the POS Signs in its stores.  Costco's failure to counter this factual assertion <u>with evidence</u> establishes that it is true and undisputed, and its misrepresentation of document content cannot raise a triable issue of fact.

Even worse, Costco also tries to mislead the Court by suggesting its online advertising did not contain TIFFANY because it voluntarily removed it after this dispute arose.  (Costco's Rule 56.1 Statement, Def.'s Resp. to Pls.' Assertion No. 30.)[7]   However, the exhibit to which Costco refers (Mitchell Decl. Ex. J) is from the *November 2012* online edition of *The Costco*

---

communicated with the sellers cited by Costco and asked that the improper references be removed. Several have already complied and removed the infringing references to Tiffany from their websites. (Mitchell Reply Decl. Exs. O-P.)

[7]   If Costco truly believed that the primary significance of the word "Tiffany" was a generic reference to a type of ring setting, the President and CEO of Costco would not have written an email to all Costco employees that the use of the word "Tiffany" was intended to describe a setting style, but "[i]n retrospect, it would have been better had we not used that description the way we did."  (Mitchell Decl. Ex. E (quoting the email in its entirety).)

*Connection* magazine, which defendant well knows was published <u>before</u> Tiffany wrote to Costco on December 10, 2012 demanding that its mark be removed from Costco's store signs. (Mitchell Decl. Ex. J; Mitchell Reply Decl. Exs. Q-R.)  Further proof is shown by a similar advertisement <u>from 2005</u> of the same ring design, which advertisement also omits "TIFFANY" (Mitchell Reply Decl. Ex. S) a full seven years before notice of claim was given.  The truth, as shown by the foregoing, is that even Costco consistently used other non-infringing ways to describe the rings at issue outside its stores, unassailable proof that "TIFFANY" cannot qualify as a generic descriptor under the law.

C.     **Dictionary References**

As established above, a term is not deemed generic simply because it may have *some* significance to the public as the name of an article.  The dictionary is filled with examples of trademarks that have entered the lexicon of the English language:  JEEP, POLAROID, BAND-AID, KLEENEX, COKE, JACUZZI, JET SKI, Q-TIPS, VASELINE, XEROX.[8]   Merriam-Webster Dictionary Online, www.merriam-webster.com (last visited May 14, 2013). Yet, no one can use the name of any of these brands to sell their products other than the owners of those famous marks.  The colloquial use of the marks and dictionary references do not make them generic.  Indeed, it has been held that when a trademark attains dictionary recognition as part of the language, it can be used by a court to presume the mark is reasonably famous, not that it has lost its value as a trademark.  *See, e.g.*, *B.V.D. Licensing Corp.*, 846 F.2d at 728.

It also is well established that dictionary definitions are not conclusive indicators of

---

[8]     In *Kraft Foods Holdings, Inc. v. Helm*, 205 F. Supp. 2d 942, 946-47 (N.D. Ill. 2002), the defendant tried to argue that Kraft's famous Velveeta® brand of cheese, first registered in 1923, had developed an alternate meaning and entered the English language as a generic term.  The court rejected this argument and held that "Velveeta®, like Polaroid®, Coca-Cola® and Kodak® are coined words in the English language that conjure up nothing less than images of the respective products associated with each mark."  *Id.* at 947 (footnote call numbers omitted).

overall public perception (*Bos. Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 23 (1st Cir. 2008)), if for no other reason than this would endow editors of such works with the power to destroy trademarks merely by defining them generically. *In re Minnetonka, Inc.*, 212 U.S.P.Q. 772 (T.T.A.B. 1981); *In re Vasco Metals Corp.*, 154 U.S.P.Q. 191 (T.T.A.B. 1967); *Berner Int'l Corp. v. Mars Sales Co.*, 987 F.2d 975, 983 (3d Cir. 1993) ("Dictionary entries also reflect lexicographical judgment and editing which may distort a word's meaning and importance."). Significantly here as well, virtually all of the dictionary references submitted by Costco are to the phrase "Tiffany setting" (capital "T") and not TIFFANY alone.[9]

**D.    The Evidence**

As yet another diversionary tactic, Costco attacks the competence of Tiffany's evidence. This argument too provides no basis for denial of Tiffany's motion. Other than pot-shots about the "unidentified authorship" of certain photos (the accuracy of which Costco admits) and similar baseless criticism of some of the other documents submitted by Tiffany, Costco does not set forth any valid basis to reject these exhibits. (Costco Br. 13-14.) Its primary argument is that they were submitted through the declaration of Tiffany's attorney, which does not include a statement of personal knowledge. That is no reason to disregard the Tiffany exhibits.[10]

---

[9]    Even the Declaration of Charles M. Levine, Costco's lexicographer, opines while lexicographers agree on the use of the term "Tiffany setting," they "make no assertions whatsoever about using the name 'Tiffany' to describe a piece of jewelry *as a whole*." (Levine Decl. Ex. 1, at 8-9.) But, this case is not about Costco's use of the term "Tiffany setting"; it is about Costco's undisputed use of the brand-name "TIFFANY" in signs describing rings *as a whole*, precisely what Mr. Levine declines to opine on.

[10]   This initial Declaration submitted by Tiffany's attorney merely put before the Court true and correct copies of several documents, including the Complaint and Answer. *See* Mitchell Decl. Mr. Mitchell had personal knowledge of these exhibits in his role as litigation counsel, and each cannot be legitimately disputed (i.e. – compilation of registered trademarks, photographs of POS Signs taken in Costco store, contents of statement from Costco CEO, etc.). Mitchell Reply Decl. ¶ 4. However, even if the Court were to disregard the first Mitchell Declaration, it is well settled that it can consider the exhibits attached thereto. *See, e.g.*, *Tokio Marine Mgmt. v. M/V Zim Tokyo*, No. 91 Civ. 0063 (PKL), 1993 U.S. Dist. LEXIS 11487, at *28-29 (S.D.N.Y. Aug. 17, 1993); *John Hancock Prop. & Cas. Ins. Co. v. Universal Reinsurance Co.*, 147 F.R.D. 40, 45 (S.D.N.Y. 1993); *Golotrade Shipping & Chartering, Inc. v. Travelers Indem. Co.*, 706 F. Supp. 214, 217 n.3 (S.D.N.Y. 1989).

In any case, those documents directly necessary for a determination of the motion are admissible and can be considered on this motion. Costco has not shown otherwise. As examples, it is basic that the Court can take judicial notice of Tiffany's trademark registrations (Mitchell Decl. Exs. G-I) on summary judgment. *See Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) (judicial notice of copyright registrations) (citing *Duluth News-Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1096 n.2 (8th Cir. 1996) (judicial notice of trademark registration)). Costco has admitted that the photographs of its POS Signs (Mitchell Decl. Ex. D) are accurate depictions of the signage by which it offered its rings for sale and thus, there cannot be any issue with them (Costco 56.1 Statement, Def.'s Resp. to Pls.' Assertion Nos. 23-24; Grewall Decl. ¶ 5; Costco Br. 2).[11] Similarly, Costco does not dispute the authenticity of the page from its November 2012 online publication, *The Costco Connection* (Mitchell Decl. Ex. J; Mitchell Reply Decl. Ex. Q), in which it does not use "TIFFANY" to describe a ring it called "TIFFANY" in its stores.[12] Instead, Costco misrepresents the date of this exhibit (Mitchell Reply Decl. ¶ 6, Ex. Q) and points to two rings it sold years ago (in 2006 and 2001) in a bad faith attempt to counter the admission which this exhibit constitutes: other than in its stores, TIFFANY was not even the primary descriptor used by Costco for these rings, so it can obviously compete effectively without using the famed TIFFANY mark. (*See supra* pp. 7-8.) Costco's comments that other exhibits are the subject of discovery requests (Costco Br. 14 ¶ (iv)) or are being challenged for their validity (*id.* ¶ (v)) are likewise unavailing. Therefore, Tiffany respectfully submits that its motion for summary judgment or judgment on the pleadings should be granted.

---

[11]   Costco uses the signs depicted by these photographs as the basis for the elaborate explanatory diagram on which it relies for much of its argument. (*See* Costco Br. 2; Grewall Decl. ¶ 5.)

[12]   Costco proudly posts online at http://www.costcoconnection.com/connection/201305#pg1, back issues of *The Costco Connection* to September 2004. (Last visited May 16, 2013.)

**CONCLUSION**

For all the foregoing reasons and those set forth in Tiffany's prior submissions, Tiffany's motion should be granted in all respects.

Dated: New York, New York
       May 16, 2013

Respectfully submitted,

DICKSTEIN SHAPIRO LLP

By:   s/Jeffrey A. Mitchell
      Jeffrey A. Mitchell
      Judith R. Cohen
      Don Abraham
1633 Broadway
New York, New York  10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501
mitchellj@dicksteinshapiro.com
cohenj@dicksteinshapiro.com
abrahamd@dicksteinshapiro.com
Attorneys for Plaintiffs
Tiffany and Company and Tiffany (NJ) LLC

11