**DICKSTEIN**SHAPIRO LLP

1633 Broadway  |  New York, NY 10019-6708
TEL (212) 277-6500  |  FAX (212) 277-6501  |  dicksteinshapiro.com

August 5, 2013

BY HAND

Hon. Debra Freeman
U.S. Magistrate Judge
United States District Court, S.D.N.Y.
500 Pearl Street
New York, New York 10007-1312

[Stamp: RECEIVED AUG 06 2013 CHAMBERS OF DEBRA FREEMAN U.S.M.J.]

[Stamp: USDC SDNY DOCUMENT ELECTRONICALLY FILED DOC #: _____ DATE FILED: 8/23/13]

     Re:    *Tiffany and Company, et ano v. Costco Wholesale Corporation*
                *Case No. 13 Civ. 1041 (LTS)(DCF)*

Dear Judge Freeman:

We represent plaintiffs Tiffany and Company and Tiffany (NJ) LLC (collectively, "Tiffany") in the above-referenced action, and write in opposition to the motion for a protective order made by defendant Costco Wholesale Corp. ("Costco") by letter dated July 31, 2013.

Costco misstates the purpose of Tiffany's request for the identity and contact information of each purchaser of a ring at issue in this case. We do not seek that information to conduct a survey. Each purchaser is a material witness. Engagement rings were kept by Costco under lock and key in a glass display case in each store, and required the assistance of a Costco employee to access them. (A photograph of what we understand to be a typical Costco jewelry counter is annexed hereto as Exhibit A.) Tiffany's own investigator spoke with two Costco employees (on November 28 and 30, 2013) in the Huntington Beach, California Costco before making a purchase, and each sales person, like the point of sale signs, called the rings "Tiffany." One (Jean) was quoted by the investigator as having said, "Oh, that Tiffany ring is gorgeous" and, "For right now, that is the only Tiffany ring I've seen." The other (Emily) said at the time of purchase, "Alright so you're going to get the smaller Tiffany ring?" Tiffany is plainly entitled to communicate with ring purchasers to learn whether they had similar purchasing experiences.

Costco's counsel tries to deflect attention from his clients' misconduct by casting aspersions on the motives of Tiffany and its counsel even though suit over Costco's usage was essential to protect the TIFFANY mark. Despite countless cases over the last century which have found the TIFFANY mark famous, incontestable, and entitled to the highest degree of protection, Costco's defense is that it was privileged to use it with impunity to describe Tiffany lookalike rings simply because the design itself has become famous, and the phrase "Tiffany Setting" and the mark TIFFANY appear in dictionaries, much like GOOGLE, JEEP, and BAND AID. To everyone other than, perhaps, Costco's counsel, TIFFANY stands for one of the most iconic jewelry manufacturers and retailers in the world, and not a particular setting. The usage here by Costco infringed the TIFFANY mark, and precipitated the legal action that was taken.

**DICKSTEIN**SHAPIRO**LLP**

Hon. Debra Freeman
August 5, 2013
Page 2

Costco's charges that Tiffany and its counsel made willfully false statements about this case are a red herring and without basis. Before suit was commenced, Costco's prior counsel admitted to Tiffany in a letter that usage of the TIFFANY mark in point of sales signs was not some rogue event in Huntington Beach; it was nationwide, with sales of 705 rings during 2012 and a small portion of 2013 alone for over $3.3 million. We now know from counsel's letter to the Court that the real number of purchasers is more than 2,500. "Hundreds if not thousands" of Costco members purchased rings just as the Complaint alleges, and were misled if their purchasing experiences were anything like those of Tiffany's investigator. Disclosure of this customer information is routinely required, as "relevant to actual confusion, which in turn, is compelling proof of likelihood of confusion." *E.g., Tory Burch LLC v. Creative Eyewear, Inc.* 12 Civ. 7422(HB)(JCF), 2013 U.S. Dist. Lexis 47521 at *3 (S.D.N.Y. April 1, 2013).[1] Indeed, the identity of purchasers should have been automatically provided under Fed.R.Civ.P. 26(a)(1)(A)(i), as individuals likely to have discoverable information.

A. **Each Purchaser is a Material Fact Witness**

Costco describes itself on its website as "a membership warehouse club, dedicated to bringing our members the best possible prices on *quality brand-name* merchandise." (emphasis added)(http://www.costco.com/membership-information.html.) It admits that its use of the TIFFANY mark was intentional and extensive, on point of sale signs alongside a style of engagement ring that was a virtual replica of a famous Tiffany design. The rings themselves, and packaging they were delivered in, did not display the COSTCO or KIRKLAND SIGNATURE (Costco's house brand) trademarks, so there was no brand identification other than TIFFANY in the signs.[2] Similar to thousands of other point of sale signs in every Costco warehouse displaying the brand name of the product, these signs said TIFFANY, yet Costco would have the Court find that these alone did not refer to *brand name merchandise*, but a type of ring setting instead. (Examples of Costco point of sale signage are annexed as Exhibit C hereto.) Purchasers, as Costco members, are familiar with Costco in-store signage, and asking them about their familiarity with Costco's business methods and signage is also appropriate.

---

[1] Costco does not even raise an issue about economic harm from such disclosure, other than to assert unfounded concerns about interference with customer relations. In any case, any valid concerns about use of the names other than in this litigation will be protected by the parties' Confidentiality Stipulation and Order, and not by restricting Tiffany's investigation.

[2] Costco claims the rings were stamped on the inside with the manufacturer's trademarks. However, the marking inside plainly does not show a brand name, nor did it say COSTCO or KIRKLAND SIGNATURE, Costco's house brand. Rather, in the specimen marked at the deposition of Tiffany Senior Vice President Andrew Hart (Dabney Ltr., Ex. 2), the stamp was of a generic diamond shape, an illegible character next to the diamond shape, and the letters "PLAT." The ring purchased by Tiffany's investigator in Huntington Beach, California had a different marking entirely (a backwards "R" and a forwards "B" inside a diamond shape, and the marking "PT950), but again, did not show the COSTCO or KIRKLAND SIGNATURE brands. (Exhibit B hereto.)

**DICKSTEIN**SHAPIRO LLP

1633 Broadway | New York, NY 10019-6708
TEL (212) 277-6500 | FAX (212) 277-6501 | dicksteinshapiro.com

August 5, 2013

R E C E I V E D
AUG 06 2013
CHAMBERS OF
DEBRA FREEMAN
U.S.M.J.

BY HAND

Hon. Debra Freeman
U.S. Magistrate Judge
United States District Court, S.D.N.Y.
500 Pearl Street
New York, New York 10007-1312

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

> Re:   *Tiffany and Company, et ano v. Costco Wholesale Corporation*
>        *Case No. 13 Civ. 1041 (LTS)(DCF)*

Dear Judge Freeman:

We represent plaintiffs Tiffany and Company and Tiffany (NJ) LLC (collectively, "Tiffany") in the above-referenced action, and write in opposition to the motion for a protective order made by defendant Costco Wholesale Corp. ("Costco") by letter dated July 31, 2013.

Costco misstates the purpose of Tiffany's request for the identity and contact information of each purchaser of a ring at issue in this case. We do not seek that information to conduct a survey. Each purchaser is a material witness. Engagement rings were kept by Costco under lock and key in a glass display case in each store, and required the assistance of a Costco employee to access them. (A photograph of what we understand to be a typical Costco jewelry counter is annexed hereto as Exhibit A.) Tiffany's own investigator spoke with two Costco employees (on November 28 and 30, 2013) in the Huntington Beach, California Costco before making a purchase, and each sales person, like the point of sale signs, called the rings "Tiffany." One (Jean) was quoted by the investigator as having said, "Oh, that Tiffany ring is gorgeous" and, "For right now, that is the only Tiffany ring I've seen." The other (Emily) said at the time of purchase, "Alright so you're going to get the smaller Tiffany ring?" Tiffany is plainly entitled to communicate with ring purchasers to learn whether they had similar purchasing experiences.

Costco's counsel tries to deflect attention from his clients' misconduct by casting aspersions on the motives of Tiffany and its counsel even though suit over Costco's usage was essential to protect the TIFFANY mark. Despite countless cases over the last century which have found the TIFFANY mark famous, incontestable, and entitled to the highest degree of protection, Costco's defense is that it was privileged to use it with impunity to describe Tiffany lookalike rings simply because the design itself has become famous, and the phrase "Tiffany Setting" and the mark TIFFANY appear in dictionaries, much like GOOGLE, JEEP, and BAND AID. To everyone other than, perhaps, Costco's counsel, TIFFANY stands for one of the most iconic jewelry manufacturers and retailers in the world, and not a particular setting. The usage here by Costco infringed the TIFFANY mark, and precipitated the legal action that was taken.

**DICKSTEIN**SHAPIRO LLP

Hon. Debra Freeman
August 5, 2013
Page 2

Costco's charges that Tiffany and its counsel made willfully false statements about this case are a red herring and without basis. Before suit was commenced, Costco's prior counsel admitted to Tiffany in a letter that usage of the TIFFANY mark in point of sales signs was not some rogue event in Huntington Beach; it was nationwide, with sales of 705 rings during 2012 and a small portion of 2013 alone for over $3.3 million. We now know from counsel's letter to the Court that the real number of purchasers is more than 2,500. "Hundreds if not thousands" of Costco members purchased rings just as the Complaint alleges, and were misled if their purchasing experiences were anything like those of Tiffany's investigator. Disclosure of this customer information is routinely required, as "relevant to actual confusion, which in turn, is compelling proof of likelihood of confusion." *E.g., Tory Burch LLC v. Creative Eyewear, Inc.* 12 Civ. 7422(HB)(JCF), 2013 U.S. Dist. Lexis 47521 at *3 (S.D.N.Y. April 1, 2013).[1] Indeed, the identity of purchasers should have been automatically provided under Fed.R.Civ.P. 26(a)(1)(A)(i), as individuals likely to have discoverable information.

## A.    Each Purchaser is a Material Fact Witness

Costco describes itself on its website as "a membership warehouse club, dedicated to bringing our members the best possible prices on *quality brand-name* merchandise." (emphasis added)(http://www.costco.com/membership-information.html.) It admits that its use of the TIFFANY mark was intentional and extensive, on point of sale signs alongside a style of engagement ring that was a virtual replica of a famous Tiffany design. The rings themselves, and packaging they were delivered in, did not display the COSTCO or KIRKLAND SIGNATURE (Costco's house brand) trademarks, so there was no brand identification other than TIFFANY in the signs.[2] Similar to thousands of other point of sale signs in every Costco warehouse displaying the brand name of the product, these signs said TIFFANY, yet Costco would have the Court find that these alone did not refer to *brand name merchandise*, but a type of ring setting instead. (Examples of Costco point of sale signage are annexed as Exhibit C hereto.) Purchasers, as Costco members, are familiar with Costco in-store signage, and asking them about their familiarity with Costco's business methods and signage is also appropriate.

---

[1] Costco does not even raise an issue about economic harm from such disclosure, other than to assert unfounded concerns about interference with customer relations. In any case, any valid concerns about use of the names other than in this litigation will be protected by the parties' Confidentiality Stipulation and Order, and not by restricting Tiffany's investigation.

[2] Costco claims the rings were stamped on the inside with the manufacturer's trademarks. However, the marking inside plainly does not show a brand name, nor did it say COSTCO or KIRKLAND SIGNATURE, Costco's house brand. Rather, in the specimen marked at the deposition of Tiffany Senior Vice President Andrew Hart (Dabney Ltr., Ex. 2), the stamp was of a generic diamond shape, an illegible character next to the diamond shape, and the letters "PLAT." The ring purchased by Tiffany's investigator in Huntington Beach, California had a different marking entirely (a backwards "R" and a forwards "B" inside a diamond shape, and the marking "PT950), but again, did not show the COSTCO or KIRKLAND SIGNATURE brands. (Exhibit B hereto.)

**DICKSTEIN**SHAPIROLLP

Hon. Debra Freeman
August 5, 2013
Page 3

The universe and contact information of actual purchasers is known to Costco since every one of them was a Costco member and Costco has already contacted them. Since each has direct evidence about his or her purchasing experience, disclosure of purchaser contact information is appropriate. Costco's concern about customer relations and business disruption is disingenuous. It publicly reports having more than 67-million members, of which 2,500 purchasers represents just .004%. No different than any other case where the identity of material fact witnesses is known, Tiffany should be provided purchaser names and contact information. It will then be up to the purchasers to decide for themselves whether and how to respond to any inquiry. Regardless, this cannot have a material effect on Costco's business.

**B.    Costco has Already Communicated Directly with Each Purchaser**

Costco has also opened the door to disclosure of the identity of purchasers by writing directly to them on April 5, 2013 (Dabney Ltr., Ex. 4) and, *inter alia*, discussing the case and offering a refund if any were not satisfied.[3] Counsel's claim that purchasers have given "absolutely no indication of confusion or dissatisfaction…" (Dabney Ltr., p. 2) is the proper subject of discovery. The reasons why a customer might not seek a refund are many, and may have nothing to do with confusion, or lack thereof. For example, the sentimental value of an engagement ring may outweigh any customer dissatisfaction. The terms for return may be too onerous, as they apparently included sending the ring to Washington, followed by as long as a 30 day wait for refund authorization. Lastly, only the original purchase price was offered for a return. A refund at yesterday's purchase price, given the rise in price of platinum and diamonds, does not buy an equivalent ring today, neither at Costco nor Tiffany. These and other similar topics are all the proper subject of inquiry from actual purchasers. Costco obviously already has this contact information, and can and has used it without restriction. Tiffany should be entitled to the same access.

**C.    Tiffany is not Looking to Conduct a Survey**

Costco's submission of an affidavit from an NYU professor is irrelevant (and exceeds the spirit of the three page limitation imposed by the Pilot Project rules). Tiffany is looking to gather direct evidence from purchasers, not survey them. Who said what to whom, when and where, is fact discovery, and not the subject of a survey. The professor does not claim to the contrary.

There is simply no reason to protect Costco from disclosing the names of material witnesses in its possession and control, as Tiffany is entitled to hear directly from them about the facts surrounding their respective purchases, without interference from Costco of any kind. If, as

---

[3] Here too the concern expressed by Costco's professor about purchaser "taint" or "fatigue" (Winer Decl. ¶¶17, 18) is ironic given Costco's own prior contact. Tiffany protested about this in its April 25, 2013 letter to Costco's counsel, annexed hereto as Exhibit D.

**DICKSTEIN**SHAPIRO LLP

Hon. Debra Freeman
August 5, 2013
Page 3

The universe and contact information of actual purchasers is known to Costco since every one of them was a Costco member and Costco has already contacted them. Since each has direct evidence about his or her purchasing experience, disclosure of purchaser contact information is appropriate. Costco's concern about customer relations and business disruption is disingenuous. It publicly reports having more than 67-million members, of which 2,500 purchasers represents just .004%. No different than any other case where the identity of material fact witnesses is known, Tiffany should be provided purchaser names and contact information. It will then be up to the purchasers to decide for themselves whether and how to respond to any inquiry. Regardless, this cannot have a material effect on Costco's business.

**B.      Costco has Already Communicated Directly with Each Purchaser**

Costco has also opened the door to disclosure of the identity of purchasers by writing directly to them on April 5, 2013 (Dabney Ltr., Ex. 4) and, *inter alia*, discussing the case and offering a refund if any were not satisfied.[3]  Counsel's claim that purchasers have given "absolutely no indication of confusion or dissatisfaction…" (Dabney Ltr., p. 2) is the proper subject of discovery. The reasons why a customer might not seek a refund are many, and may have nothing to do with confusion, or lack thereof. For example, the sentimental value of an engagement ring may outweigh any customer dissatisfaction. The terms for return may be too onerous, as they apparently included sending the ring to Washington, followed by as long as a 30 day wait for refund authorization. Lastly, only the original purchase price was offered for a return. A refund at yesterday's purchase price, given the rise in price of platinum and diamonds, does not buy an equivalent ring today, neither at Costco nor Tiffany. These and other similar topics are all the proper subject of inquiry from actual purchasers. Costco obviously already has this contact information, and can and has used it without restriction. Tiffany should be entitled to the same access.

**C.      Tiffany is not Looking to Conduct a Survey**

Costco's submission of an affidavit from an NYU professor is irrelevant (and exceeds the spirit of the three page limitation imposed by the Pilot Project rules). Tiffany is looking to gather direct evidence from purchasers, not survey them. Who said what to whom, when and where, is fact discovery, and not the subject of a survey. The professor does not claim to the contrary.

There is simply no reason to protect Costco from disclosing the names of material witnesses in its possession and control, as Tiffany is entitled to hear directly from them about the facts surrounding their respective purchases, without interference from Costco of any kind. If, as

---

[3] Here too the concern expressed by Costco's professor about purchaser "taint" or "fatigue" (Winer Decl. ¶¶17, 18) is ironic given Costco's own prior contact. Tiffany protested about this in its April 25, 2013 letter to Costco's counsel, annexed hereto as Exhibit D.

**DICKSTEIN**SHAPIRO**LLP**

Hon. Debra Freeman
August 5, 2013
Page 4

Costco threatens by its cries of defamation, no one was confused, then it has nothing to fear from such disclosure.

Respectfully submitted,

Jeffrey A. Mitchell

cc:    James W. Dabney, Esq. (via e-mail)
       Victoria J. B. Doyle, Esq. (via e-mail)
       Richard Koehl, Esq. (via e-mail)
       Judith R. Cohen, Esq.
       Don Abraham, Esq.

Exhibit A

Exhibit B



Exhibit C

520675

# KEURIG SINGLE SE...
# BREWING SYSTEM
# INCLUDES 60 K-CUPS

- Auto On and Off
- My Personal K-Cup Filter
- 72 oz Water Reservoir
- Removeable Drip Tray

- Brews 4,6,8,10 & 12 oz
- Iced Beverage Setting!
- Additional K-Cup Vari...
- on Costco.com

# 149



# 808063

0 000008 080639

SHARP      LC-80LE633U
80" CLASS (80.0" DIAG)
1080P FULL-ARRAY LED

3499.99
**Mfr's Instant Rebate**      EXP.  06/30/13      -200.00

PRICE AT REGISTER

NO
REBATE LIMIT

# 3299.99

Sales Tax on the pre-rebate price

# 970550



0 000009 705500

SONY     KDL-70R550A
70" CLASS (69.5" DIAG)
1080P SMART 3D LED LCD

2599.99
**Mfr's Instant Rebate**     EXP. 06/29/13     -100.00

PRICE AT REGISTER

NO
**REBATE LIMIT**

# 2499.99

Sales Tax on the pre-rebate price     6/02/13

TAGHeuer

768991

TAG HEUER LINK
LADIES DIAMONDS
STAINLESS STEEL WATCH

4899.99

6/12/13



RAYMOND WEIL

560987

RAYMOND WEIL PARSIFAL
MENS WHITE DIAL 18KT
GOLD & STEEL WATCH

729.99

Motrin
Ibuprofen

2 x 500
TABLETS

KIRKLAND

IBUPROFEN

504443
TYLENOL EXTRA STRENGTH
500MG CAPLETS
325 COUNT

0 000005 044436

UNIT PRICE PER 100 COUNT
4.920

SELL PRICE
15.99





Exhibit D

**DICKSTEIN**SHAPIRO<sub>LLP</sub>

1633 Broadway | New York, NY 10019-6708
TEL (212) 277-6500 | FAX (212) 277-6501 | dicksteinshapiro.com

April 25, 2013

**VIA E-MAIL (james.dabney@friedfrank.com)**

James W. Dabney, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004-1980

Re:   *Tiffany and Company, et ano. v. Costco Wholesale Corporation*, USDC-SDNY (Civil
      Case No. 13 Civ. 1041 (LTS)(the "Action")

Dear Mr. Dabney:

We write to demand that Costco cease and desist from its continued use of our clients'
trademarks to describe rings and other items of jewelry not manufactured by Tiffany.  It has just
come to our attention that Costco sent a letter dated April 5, 2013 to people who purchased
diamond rings at a Costco warehouse, regardless of date.  The letter admits to them that Costco
used the mark "TIFFANY" to describe rings offered for sale, but conspicuously omits any
statement that none was actually made by Tiffany.  Instead, Costco tells purchasers of rings that
"[w]e do not believe that our signs were inaccurate..."

If so, we see no reason for the letter.  However, having decided to send one to purchasers, Costco
assumed the obligation to communicate truthfully.  Your client's failure to tell recipients that
rings described to them as "TIFFANY" were not made by Tiffany, and instead protesting to them
in the letter that its signs were truthful, serves to reinforce, renew and continue the very claims of
counterfeiting made in the Action, even as it relates to rings purchased outside of any statute of
limitations period.  Offering purchasers the opportunity to return rings if they were "not
satisfied" cannot serve to obscure the admission by Costco in sending this letter that there was
likely confusion caused by its conduct, or that returns made by customers willing to part with
their engagement rings in response to the letter constitute evidence of actual confusion.  If a
customer was "not satisfied," that was precisely because Costco confused the customer into
thinking that a Tiffany ring had been purchased.

The explanation offered by Costco in the letter of its intended meaning is not only self-serving, it
is further unassailable proof that the mark "TIFFANY" is not generic.  If the mark was truly
generic, no explanation would be necessary, as purchasers would have known and understood

**DICKSTEIN**SHAPIRO<sub>LLP</sub>

James W. Dabney, Esq.
April 25, 2013
Page 2

what the Costco signs meant, and would have had no basis to be dissatisfied; *they got precisely what they paid for.* Accordingly, in light of this plain factual admission by your client that it was reasonable for purchasers to be dissatisfied because they thought "TIFFANY" on signs meant their rings were made by Tiffany, we ask that you promptly withdraw the Counterclaim, with prejudice, to avoid further costs, fees and Court attention to our motion. If there ever was a good faith basis to assert the Counterclaim (which we dispute), there is certainly none now.

Finally, we direct your attention to Request No. 15 in Tiffany's First Request for Production of Documents. The word "concerning" in that request should be construed in the broadest sense to include all rings, communications, documentation and other materials received from or tendered by customers in response to the foregoing letter. It should also be read to cover (i) all communications about the foregoing letter, including the decision to send it and to whom, (ii) any scripts or talking points prepared to respond to inquiries, (iii) the terms and method for making a return, including special arrangements made or accommodations offered on account of the sentimental nature of an engagement ring, (iv) any discounts, credits or other benefits offered to purchasers, whether or not they returned their rings, and (v) any notes taken or tapes of conversations with purchasers. For safekeeping, any rings returned should be forwarded to and retained by you so Tiffany representatives can inspect them during discovery, and so they will be available for admission into evidence at trial. The same interpretation of our Request No. 15 should apply to rings returned by purchasers before the letter was sent.

Very truly yours,

Jeffrey A. Mitchell
(212) 277-6691 direct dial
(917) 591-0941 direct fax
mitchellj@dicksteinshapiro.com

JAM/

cc:     Victoria J.B. Doyle, Esq. (by e-mail only)
        Richard M. Koehl, Esq. (by e-mail only)