UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
TIFFANY AND COMPANY and
TIFFANY (NJ) LLC,

        Plaintiffs and Counter-Defendants,

– against –

COSTCO WHOLESALE CORPORATION,

        Defendant and Counter-Plaintiff.
------------------------------------------------------------------ x

ECF CASE

13 Civ. 1041 (LTS) (DCF)

## RULE 72 OBJECTIONS TO THE ORDER ISSUED AUGUST 23, 2013, DENYING COSTCO'S MOTION FOR A PROTECTIVE ORDER

      Pursuant to Federal Rule of Civil Procedure 72(a), Costco respectfully submits these objections to the Order of United States Magistrate Judge Debra Freeman issued August 23, 2013.

**Factual Background**

      As the Court is aware, this case concerns certain diamond rings that were sold in Costco retail stores between 2007 and 2012. The rings at issue were stamped on their inner surfaces with their manufacturers' trademarks (*see* Exhibit 1); the rings were delivered to purchasers with Costco paperwork in beige gift boxes (*see* Exhibit 2); the rings were backed by a time-unlimited Costco return policy (*see* Exhibit 3); and the rings were made with a type of pronged setting that is commonly known as a "Tiffany" setting. *See, e.g., Webster's Third New Int'l Dictionary* 2392 (2002) (defining "tiffany" as meaning "*of a jewelry setting*: having long prongs to hold a gem"). *See also* Declaration of Harjit Grewall, sworn to May 3, 2013 ("Grewall Decl.") ¶¶ 2-9 & Exs. 1-11 ("Tiffany" is a ge-

1

neric term for a particular style of pronged jewelry setting); Declaration of Charles M. Levine, sworn to May 6, 2013 ("Levine Decl.") ¶ 2 & Ex. 1 at 7, 11-12 (same); Declaration of Robert Newell, sworn to May 3, 2013 ("Newell Decl.") ¶¶ 1-4 & Exs. 1-2 (same).

Costco in-store jewelry case display signage has long included setting style names (*e.g.*, "Bezel"; "Cathedral"; "Halo"; "Tiffany") in descriptions of jewelry items. Grewell Decl. ¶ 9 & Ex. 12. For example, the sign reproduced in Exhibit 4 refers to a diamond clarity grade ("VS2"), a diamond color grade ("I"), a diamond shape ("ROUND"), a diamond cut ("BRILLIANT"), and a setting type ("TIFFANY"). *Id*. ¶ 5. Tiffany and Co. has admitted through a senior officer that the diamond ring depicted in Exhibit 4 has what multiple dictionaries define as a "Tiffany" setting. *See* Exhibit 5 at 131:18-25.

Plaintiffs theorize, however, that signs like the one depicted in Exhibit 4 were misinterpreted by Costco members as indicating, not that a ring had a "Tiffany"-style pronged setting, but that a ring was *manufactured* by Tiffany and Co. Plaintiffs press this theory notwithstanding that the word "Tiffany" was nowhere to be found on the rings themselves, the rings' inner or outer packaging, or their accompanying documentation.

A central disputed factual issue in this case, thus, is whether signs like the one depicted in Exhibit 4 had the actual effect of deceiving "numerous" Costco members who were "ordinarily prudent" when they made their (expensive) diamond ring purchases. *Savin Corp. v. Savin Group, P.C.*, 391 F.3d 439, 458 (2d Cir. 2004). In a press release issued on the day this action was commenced, Plaintiffs' counsel asserted to news media: "We now know there are at least hundreds if not thousands of Costco members who think they bought a Tiffany engagement ring at Costco, which they didn't." *See* Exhibit 6. In that same press release, Plaintiffs asserted that Costco had purportedly sold "*counterfeit*

2

diamond rings," *id*. (emphasis added), referring to rings like the one depicted in Exhibits 1 and 2 hereto.

Costco contends that Plaintiffs' statements quoted above were willfully false and support a conclusion that this is an "exceptional" case for purposes of an award of attorneys' fees under 15 U.S.C. § 1117(a).  Costco thus fully supports appropriate discovery into the factors (e.g., price, Costco's reputation, Costco's return policy, a word in a sign) that prompted Costco members to purchase diamond rings from Costco.  The issue is not **whether**, but **how**, discovery of approximately 2,500 individual retail purchase decisions should be conducted *in the first instance* in this case.

**Costco's Motion for a Protective Order**

On July 31, 2013, Costco moved for a protective order with respect to Plaintiffs' document request 15a (*see* Exhibit 7) seeking disclosure of the personal identities of all of the approximately 2,500 Costco members who purchased the subject diamond rings in Costco retail stores between 2007 and 2012.  Plaintiffs had stated that they wanted this information so that they could, through counsel, conduct private telephonic interviews of Costco members with respect to their purchase decisions.  Plaintiffs had rejected a suggestion that a protocol be established for surveying a random sample of Costco members in the first instance.

Costco argued to Magistrate Judge Freeman that: (1) the private telephonic interviews that Plaintiffs' counsel proposed to conduct would expose Costco to extreme risk of commercial prejudice; (2) the private telephonic interviews that Plaintiffs' counsel proposed to conduct would not yield evidence from which any conclusion as to the subject population as a whole could be drawn (Declaration of Russell S. Winer, sworn to July 31, 2013 ["Winer Decl."] ¶ 16; *see* Exhibit 8); and (3) the private telephonic interviews

3

that Plaintiffs' counsel proposed to conduct would likely make it difficult or impossible for either party to conduct a valid scientific survey of the subject population. *Id*. ¶ 17.

Costco proposed, instead, that *in the first instance*, purchaser identities be provided to an independent neutral third party who could administer a Court-approved questionnaire utilizing the generally accepted polling techniques set forth in § 11.493 of the *Manual for Complex Litigation, Fourth* (2004) ("MCL"). Unlike the approach proposed by Plaintiffs, a neutral survey would at once (i) protect Costco against commercial harm, (ii) yield data that would be representative of the purchaser population as a whole, and (iii) provide a basis on which the Court could decide whether further direct inteviews were justified. *Cf. Pacing Techs., LLC v. Garmin Int'l, Inc.*, No. 12-cv-1067 BEN (WMc), 2013 WL 3288161 at *4 (S.D. Cal. June 28, 2013) (ordering court-supervised survey of customers to seek evidence of customers' activities).

In response to Costco's motion, Plaintiffs submitted no evidence whatsoever. Instead, Plaintiffs stated that they were "looking to gather direct evidence from purchasers, not to survey them." Letter dated August 5, 2013, from Jeffrey A. Mitchell to Hon. Debra Freeman ("Aug. 5 letter") at 3. Plaintiffs further asserted that "[i]f . . . no one was confused, then [Costco] has nothing to fear" from Plaintiffs directly interviewing Costco members. *Id*. at 3-4.

**The Magistrate Judge's Oral Ruling**

In an oral ruling issued August 23, 2013 (the "August 23 Ruling"), Magistrate Judge Freeman rejected Costco's motion in its entirety. The Court stated:

> I am not persuaded by the arguments put forward which seem to me to relate more to the quality of a survey when produced at trial than to whether evidence is discoverable in litigation for potentially more reasons than solely producing a survey. I'm going to rule that the list should be provided. I don't even see a huge competitive disadvantage here to producing

4

the list because since Tiffany and Costco are such different sorts of retailers I don't see them as in direct competition the way you sometimes see in cases and as was noted in the case law that was cited when customer lists were at issue.  Sometimes you have two parties that are trying to steal each other's customers and there becomes real sensitivity there.  So I'm not even seeing that as the issue here.

Costco now respectfully seeks review and reversal of the above-quoted ruling as being both "clearly erroneous" and "contrary to law."  Fed. R. Civ. P. 72(a).

**The Extreme Risk of Commercial Prejudice to Costco**

It is certainly true that Costco and Tiffany & Co. are "different sorts of retailers," as Magistrate Judge Freeman stated.  But this fact does not obviate the extreme and potentially unnecessary prejudice to Costco that will inevitably flow from the August 23 Ruling if it is allowed to stand.  The issue is whether, *in the first instance*, the hypothesis of Plaintiffs' claims should be tested by a neutral survey *before* partisan counsel for Plaintiffs are permitted to contact Costco members and attempt to convince them that they were victims of so-called "counterfeiting."

There are many things that these Plaintiffs might have said, in good faith, about the use of the word "Tiffany" on small in-store display signs describing diamond rings that had a style of pronged setting that, overwhelming evidence shows, is commonly known as a "Tiffany" setting.  But one thing that could not possibly have been said, except maliciously and in bad faith, was that Costco had sold "*counterfeit* diamond rings" to its members.  *See* Exhibit 6 (emphasis added).  When asked to identify a single prior case in which any court, anywhere, had *ever* held that an *unbranded* product was a "counterfeit" of a branded product, the Plaintiffs' Rule 30(b)(6) designee on this topic (an attorney by training) was unable to do so.  *See* Exhibit 9.  Selling "counterfeit" goods is a crime punishable by up to ten years of imprisonment.  18 U.S.C. § 2320.

5

In letters and papers filed with this Court, Plaintiffs have persisted in making the frivolous and insupportable assertion that this case somehow involves "counterfeiting." It must be assumed that, if given the chance to do so, Plaintiffs will try and convince Costco members that they were sold "counterfeit diamond rings" and were otherwise "damaged" by Costco.  Exhibit 6.

Several cases hold that when there is any substantial risk of commercial interference that can "poison a competitor's reputation with its clients," customer lists should not be disclosed, even in the presence of a confidentiality order limiting disclosure of the lists to counsel.  See 3-8 Gilson on Trademarks § 8.03[2][d] (2013) (reviewing cases).  In the leading case, *Volkswagenwerk A.G. v. Westberg*, 260 F. Supp. 636 (E.D. Pa. 1966), a plaintiff's outside counsel's employees began telephoning the defendant's customers, purporting to interview them as witnesses and all the while spinning the plaintiff's party line about the lawsuit.  The plaintiff there argued that this was "merely discovery," but the court ordered it to stop "stirring up the customers" and "refrain from initiating, directly or indirectly, any contact or communication with the customers or former customers of the defendant." *Id.* at 637-38.

Costco respectfully submits that the facts here cry out for the type of protection that was ordered in the *Volkswagenwerk* case, at least unless and until a *neutral* test of Costco member beliefs reveals whether further partisan interrogation of members is justified.  Exclusion of inadmissible evidence at trial is not a remedy for the type of prejudice and injury with which Costco is threatened.  For Plaintiffs' counsel to tell Costco members that they were sold "counterfeit diamond rings" (Exhibit 6) is to inflict an injury for which Costco will have no effective remedy.  Costco will not even know who, from

among the 2,500+ members, Plaintiffs' counsel may choose to call.  Plaintiffs presumably will suppress all contacts in which members do not provide the answer they want to hear.

**The Non-Probative Character of the Evidence**
**That Plaintiffs Purportedly Seek to Generate**

Besides exposing Costco to extreme risk of commercial prejudice, the record evidence shows that the private telephonic interviews that Plaintiffs propose to conduct would not yield relevant or probative evidence as to the beliefs of the subject population as a whole.  Winer Decl. ¶ 16.  The evidence on this point is *uncontroverted*.

As noted above, the subject population in this case consists of approximately 2,500 Costco members who purchased certain diamond rings in Costco retail stores between 2007 and 2012.  To establish any basis of liability in this case, Plaintiffs must prove confusion on the part of "*numerous*" Costco members who were "*ordinarily prudent*" when they made the subject diamond ring purchases.  *Savin*, 391 F.3d at 458 (emphasis added).  "Numerous" in this context means a significant *proportion* of the subject population.  *Cf. Brockmeyer v. Hearst Corp.*, 248 F. Supp. 2d 281, 298 (S.D.N.Y. 2003) (Koeltl, J.) (3% confusion rate held "not sufficient" to establish infringement).

In the context of a population of 2,500 purchasers, the Plaintiffs would have to locate and depose or bring to trial more than 75 (3%) "confused" persons in order to try and establish infringement liability in the direct manner they supposedly propose to do, and likely more than 250 such individuals.  *See 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1249 (10th Cir. 2013) (noting that confusion rates of less than 10% generally do not establish infringement).  Even if Plaintiffs could manage, through direct interrogation of Costco members, to convince a handful of them that they were deceived and sold

7

a "counterfeit" diamond ring, such evidence would have minimal if any probative value in this case.

If Plaintiffs had any *genuine* interest in testing the truth or falsity of their litigation theory, they would not object to a *scientific* test of that theory utilizing generally accepted *scientific* techniques.  Such a test would not prevent Plaintiffs, in the future, from conducting the kind of direct interrogation of Costco members that they say they want to do, purportedly to generate evidence for use in this lawsuit.  But it would provide a basis on which the Court could make an informed decision on whether such direct interrogation, by interested partisan actors, should be permitted.

The protective order sought by Costco would not bar, for all time, the type of partisan interrogation that Plaintiffs seek to do.  It would merely require that, *in the first instance*, a neutral and scientific approach be utilized to determine if there is substantial justification for exposing Costco to the prejudice that such partisan interrogation would necessarily and inevitably cause.

**The Irreparable Loss of Opportunity to Conduct
a Scientific Study of Costco Member Beliefs**

The uncontroverted evidence of record also shows that, given the relatively small size of the subject population, there can be only one valid poll of that population as a practical matter.  Professor Winer, currently the Chair of the Department of Marketing at the Stern School of Business, New York University, has stated:  "If Subject Costco Purchasers were polled by one party to this litigation with respect to their diamond ring purchases, that poll would likely make it difficult or impossible for the other party to conduct its own poll."  Winer Decl. ¶ 17.

Although Professor Winer's expert testimony on the point was unrebutted and uncontroverted, Magistrate Judge Freeman rejected it seemingly on the basis of her own prior practice experience, saying: "Well, I do know a little bit about surveying." Aug. 23 Tr. 20.  Costco respectfully submits that such asserted background knowledge is not rightly relied on as a basis for rejected unrebutted expert testimony on an issue like whether a population of 2,500 purchasers can be reliably surveyed if, prior to the survey being conducted, an unknown selected number of the survey population is contacted and interrogated with respect to the subject matter of the survey.  It is entirely unclear whether Magistrate Judge Freeman contemplated that such purchasers would be excluded from the survey, or would participate despite the prior contact, or what.

At all events, the Magistrate Judge had before her no *evidence* which controverted Costco's evidence that denial of the requested protective order would result in an irretrievable loss of relevant evidence.  On this record, the Court can only conclude that the August 23 Ruling *will* result in the loss of evidence that Professor Winer identified.

## CONCLUSION

Costco respectfully submits that, in the unusual circumstances of this case, the Court should issue a protective order prohibiting direct interviews of Costco diamond ring purchasers *in the first instance* except by an independent, neutral third party utilizing a court-approved questionnaire and following the generally accepted survey techniques set forth in MCL § 11.493.  The record contains substantial evidence that the word "Tiffany," as used in the context of signs like the one depicted in Exhibit 4, was descriptive of the settings of the rings being described and as such was unlikely to mislead or confuse purchasers who were "ordinarily prudent" when spending thousands of dollars on a diamond ring.

The protective order sought by Costco would not prevent, for all time, the type of direct interrogation that the Plaintiffs claim to want to conduct, but would require merely that a neutral inquiry *first* be conducted so that the Court could make a fully informed decision whether such prejudicial, partisan direct interrogation were justified. The relief sought by Costco would also prevent an irretrievable loss of evidence.

Plaintiffs have every natural reason and incentive to try and undermine Costco's relations with its customers and convince them that they were deceived, whether they were or not. Such prejudice to Costco ought not be inflicted in the absence of strong justification for doing so. On this record, there is none. The protective order sought by Costco should have been granted, and such relief is respectfully requested.

Respectfully submitted,

Dated: New York, New York
September 6, 2013

FRIED, FRANK, HARRIS,
  SHRIVER & JACOBSON LLP

By: *s/ James W. Dabney*
   James W. Dabney
   Victoria J.B. Doyle
   Richard M. Koehl

One New York Plaza
New York, New York 10004-1980
(212) 859-8000

*Attorneys for Defendant/Counter-Plaintiff Costco Wholesale Corporation*

9111558

10

9111558.2