DICKSTEIN SHAPIRO LLP
Jeffrey A. Mitchell
Don Abraham
Judith R. Cohen
1633 Broadway
New York, New York 10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501
mitchellj@dicksteinshapiro.com
abrahamd@dicksteinshapiro.com
cohenjudith@dicksteinshapiro.com

Attorneys for Plaintiffs
Tiffany and Company and Tiffany (NJ) LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIFFANY AND COMPANY and TIFFANY (NJ) LLC, <br><br> Plaintiffs, <br><br> v. <br><br> COSTCO WHOLESALE CORPORATION, <br><br> Defendant. | No. 13 CV 1041 (LTS)(DCF) <br> ECF Case |

**PLAINTIFFS' RESPONSE TO RULE 72 OBJECTIONS TO THE ORDER ISSUED AUGUST 23, 2013, DENYING COSTCO'S MOTION FOR A PROTECTIVE ORDER**

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| PRELIMINARY STATEMENT | | 1 |
| A. | Costco Has Not Established Any Basis To Overturn The August 23 Order | 3 |
| B. | Costco Has Not Established Extreme Risk Of Commercial Prejudice | 5 |
| C. | Costco Has Not Established That The Customer Evidence Is Not Probative | 7 |
| D. | Costco Has Not Established That Disclosure To Tiffany Will Prevent A Scientific Study | 9 |
| CONCLUSION | | 11 |

DOCSNY-547007

**TABLE OF AUTHORITIES**

CASES                                                                                                                    Page(s)

1-800 Contacts, Inc. v. Lens.com, Inc., 722 F.3d 1229 (10th Cir. 2013) ........................................8

Borghese Trademarks Inc. v. Borghese, No. 10 Civ. 5552 (JPO) (AJP),
    2013 U.S. Dist. LEXIS 39827 (S.D.N.Y. Jan. 14, 2013) ............................................8

Brockmeyer v. Hearst Corp., 248 F. Supp. 2d 281 (S.D.N.Y. 2003) .............................................8

Cadbury Beverages, Inc. v. Cott Corp., 73 F.3d 474 (2d Cir. 1996) ................................8

Cedar Petrochems., Inc. v. Dongbu Hannong Chem. Co., No. 06 Civ. 3972 (LTS)(JCF),
    2011 U.S. Dist. LEXIS 110715 (S.D.N.Y. Sept. 28, 2011)................................................3

Edmonds v. Seavey, No. 08 Civ. 5646(HB), 2009 WL 2150971 (S.D.N.Y. July 20, 2009)...........3

Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993 (2d Cir. 1997)............................8

McKenzie v. Fishko, 12 Civ. 7297 (LTS)(KNF), 2013 U.S. Dist. LEXIS 114303
    (S.D.N.Y. Aug. 13, 2013) ................................................................3, 5

Minn. Mining & Mfg. Co. v. Graham-Field, Inc., 96 Civ. 3839, 1997 U.S. Dist. LEXIS 2022
    (S.D.N.Y. Feb. 26, 1997) ................................................................6

Savin Corp. v. Savin Group, 391 F.3d 439 (2d Cir. 2004) ........................................7, 8

Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197 (2d Cir. 1970) ........................................7

Shepherd v. Powers, No. 11 Civ. 6860 (LTS)(RLE), 2013 U.S. Dist. LEXIS 69403
    (S.D.N.Y. May 14, 2013)................................................................3

Surles v. Air France, 210 F. Supp. 2d 501 (S.D.N.Y. 2002) .............................................5

Thai Lao Lignite (Thai.) Co. v. Government of Lao People's Democratic Republic,
    924 F. Supp. 2d 508 (S.D.N.Y. 2013).................................................................3

Tory Burch LLC v. Creative Eyewear, Inc., No. 12 Civ. 7422 (HB) (JCF),
    2013 U.S. Dist. LEXIS 47521 (S.D.N.Y. Apr. 1, 2013)...........................................8

Volkswagenwerk Aktiengesellschaft v. Westburg, 260 F. Supp. 636 (E.D. Pa. 1966)...................6

Pursuant to the Court's order dated September 12, 2013, Plaintiffs Tiffany and Company and Tiffany (NJ) LLC (collectively "Tiffany"), respectfully submit this response to Costco's Rule 72 Objections (the "Objections") to the Order of United States Magistrate Judge Debra Freeman, dated August 23, 2013, denying Costco's motion for a protective order (the "August 23 Order").[1]

## PRELIMINARY STATEMENT

It is undisputed that Costco used the TIFFANY mark in point-of-sale signage to describe Tiffany look-a-like rings displayed in locked glass cases. Costco also admits that it did not put any of its own branding on the rings themselves or on the boxes in which they were ultimately delivered to purchasers after the purchase was completed. Thousands of other point of sale signs in every Costco warehouse displayed a brand name (including its house brand KIRKLAND SIGNATURE) in the same place where TIFFANY appeared on the point of sale signs at issue here. See Tiffany Opp'n Ex. C. Nevertheless, Costco brazenly contends that Tiffany only "theorize[s]" that members misinterpreted its signage because the company intended in these signs only – unlike all others – that its use of the mark TIFFANY connoted a "style" and not a brand. Objections 2. This defense brings to mind the great line from Chico Marx to Margaret Dumont in the 1933 classic, *Duck Soup*: "Well, who you gonna believe, me or your own eyes?" Tiffany wants to speak directly to the purchasers of rings who saw these signs, to gather evidence in support of its claims, as each purchaser is a potential fact witness in this case. Indeed, each purchaser was a Costco member, and Costco already has compiled a list of these

---

[1] The August 23 Order is endorsed on the first page of Costco's July 31, 2013 motion for a protective order (the "Costco Motion"), ECF No. 36, a copy of which is annexed hereto as Exhibit A. The order was denied for the reasons stated on the record of the telephone conference held on August 23, 2013, and a copy of the transcript of that telephone conference (the "August 23 Transcript") is annexed hereto as Exhibit B. (Exhibit B includes a preliminary list of corrections to the transcript compiled by counsel.) A copy of Tiffany's August 5, 2013 letter in opposition to the Costco Motion is annexed hereto as Exhibit C ("Tiffany Opposition"), ECF No. 35.

purchasers, as it has sent to each its letter dated April 5, 2013, in which it discusses this case, sets forth its defense, and provides a reminder of Costco's return policy. Objections Ex. 3.

Tiffany is entitled to disclosure of the identity and contact information of these purchasers and Costco's effort to impose conditions on the release or use of this information was properly rejected by Magistrate Judge Freeman. As Tiffany argued and as the Court found, nothing in Costco's submissions (or now, in the Costco Objections) justifies the interference with Tiffany's discovery which Costco seeks to impose. As the Court stated, "these are names of witnesses to facts that are essential to the case and should be disclosed." Aug. 23 Tr. 21:23-25. Costco's extensive discussion of scientific survey techniques (and the Manual for Complex Litigation) is beside the point.[2] Tiffany made it clear that it was not seeking to do a survey of these purchasers; rather, the purchasers are fact witnesses who can provide critical information about their purchasing experiences. Id. at 12:7-15:17, 17:22-24.[3] Costco's employees told Tiffany's own investigator "'that Tiffany ring is gorgeous'" and "'[f]or right now, that is the only Tiffany ring I've seen'" (Ex. C, at 1), and, among other things, Tiffany is entitled to communicate with ring purchasers to learn whether they had similar experiences and how the purchasing process unfolded from store to store. The Court agreed that nothing precluded Tiffany from talking to witnesses and trying an alternative approach other than a survey. Aug. 23 Tr. 11:15-17. Moreover, nothing has prevented Costco from conducting its own survey at any time in the months preceding the August 23 Order, id. at 20:17-21:6, or in the period since the August 23 Order (during which Costco has not turned over these names while it pursues these objections). Magistrate Judge Freeman's August 23 Order was correct.

---

[2] The Declaration of Russell S. Winer submitted by Costco (the "Winer Declaration") (Objections Ex. 8), was an improper end run around the Pilot Project's rule limiting a movant's submission of a discovery dispute to 3 single spaced pages (Pilot Project II.B.1) and should be disregarded.

[3] As set forth in the proposed corrections, Tiffany's counsel made the statement on page 17.

A.      **Costco Has Not Established Any Basis To Overturn The August 23 Order**

As this Court has frequently stated, on a nondispositive motion like Costco's, a district judge may set aside an order only if it is clearly erroneous or is contrary to law. "'Under this highly deferential standard, magistrate judges "are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused."'" McKenzie v. Fishko, 12 Civ. 7297 (LTS)(KNF), 2013 U.S. Dist. LEXIS 114303, at *5 (S.D.N.Y. Aug. 13, 2013) (quoting Thai Lao Lignite (Thai.) Co. v. Government of Lao People's Democratic Republic, 924 F. Supp. 2d 508, 511 (S.D.N.Y. 2013)). The party seeking to overturn a magistrate judge bears a "heavy burden." Id. at *6. See also Shepherd v. Powers, No. 11 Civ. 6860 (LTS)(RLE), 2013 U.S. Dist. LEXIS 69403, at *2 (S.D.N.Y. May 14, 2013); Cedar Petrochems., Inc. v. Dongbu Hannong Chem. Co., No. 06 Civ. 3972 (LTS)(JCF), 2011 U.S. Dist. LEXIS 110715, at *2-3 (S.D.N.Y. Sept. 28, 2011). The fact that "'reasonable minds may differ on the wisdom of granting [a party's] motion is not sufficient to overturn a magistrate judge's decision.'" Thai Lao, 924 F. Supp. 2d at 512 (alteration in original) (quoting Edmonds v. Seavey, No. 08 Civ. 5646(HB), 2009 WL 2150971, at *2 (S.D.N.Y. July 20, 2009)). In addition, "'Rule 72(a) precludes the district court from considering factual evidence that was not presented to the magistrate judge.'" McKenzie, 2013 U.S. Dist. LEXIS 114303, at *6 (quoting Thai Lao, 924 F. Supp. 2d at 512).[4]

---

[4]     In its Objections Costco has referred this Court to a number of its submissions from its opposition to Tiffany's pending summary judgment motion (Objections 1-2 (references to Grewall, Levine and Newell Declarations and exhibits)), none of which were presented to Magistrate Judge Freeman. (Compare Objections 1-2 with Costco Motion.) Costco also has included as its Exhibit 9 an excerpt from a deposition of Tiffany's Rule 30(b)(6) designee conducted the day before the August 23 telephone conference with Magistrate Judge Freeman and not presented to her in the Costco Motion. In addition, Costco's entire argument regarding the extreme risk of commercial prejudice to it if the names are disclosed is based on the "assumption" that Tiffany will try and convince Costco members that they were sold counterfeit diamond rings and were otherwise damaged by Costco. Objections 6; see also id. at 5. Apart from the fact that this assumption is entirely without support, this so-called evidence was not presented to Magistrate Judge Freeman and should not be considered now.

Governed by these requirements Costco has not come close to establishing a basis to overturn the August 23 Order. Nor does the fact that Costco is now seeking a different form of protective order than it sought below justify reversal.[5] Costco now wants to impose a cumbersome, time-consuming multi-phase process whereby "in the first instance," the information is provided to a neutral third party; the neutral will administer a Court-approved questionnaire; and only after review of the results, the Court will then decide whether further direct interviews are justified. Objections 4. By purporting to restrict disclosure only "in the first instance,"[6] Costco may be attempting to make its tactic of withholding this relevant information more palatable. However, even dressed up in this new fashion Costco's approach is no less intrusive and prejudicial to Tiffany.

For one thing, Costco's approach will so delay Tiffany's opportunity to communicate with these material fact witnesses as to render it useless.[7] In addition, by following Costco's approach, Tiffany will be able to talk to purchasers (if at all) only after they have been contacted <u>twice</u> by Costco. For all of its hyperbolic conjecture about what Tiffany <u>might</u> say to these purchasers, Costco fails to acknowledge the harmful impact of its own ill-considered letter to them (Objections Ex. 3), promoting its own view of the case and currying favor by reminding the purchasers of Costco's member satisfaction policy. <u>See</u> Aug. 23 Tr. 19:4-14. <u>See also</u> Tiffany

---

[5]  Costco previously sought an order that it "not be required to disclose personal identifying information concerning Subject Costco Purchasers except to a qualified third party neutral administrator" to conduct a poll (Costco Mot. Ex. 7 (proposed form of protective order)); <u>see also</u> Costco Mot. 3 ("[T]he Court should issue a protective order prohibiting direct interviews of Costco diamond ring purchasers except by an independent, neutral third party . . . .").

[6]  A phrase repeated no less than six times. Objections 3-5, 8-9.

[7]  As Costco pointed out in its Motion, this issue was one of the topics raised in Tiffany's July 8 letter to Magistrate Judge Freeman, which itself followed multiple meet and confer sessions. Costco Mot. 1. In fact, Tiffany has been seeking the purchaser information for months (<u>see</u> Tiffany Opp'n Ex. D, in which the April 25, 2013 letter from Tiffany's counsel discusses this document request), while Costco seeks to delay this disclosure, perhaps hoping that discovery will end before it has to turn over this information.

Opp'n Ex. D.  Given this letter, it is doubtful that any unbiased survey can be conducted of this pool,[8] but Tiffany should not have its chance to talk to these purchasers further tainted by the second contact posited by Costco.  Tiffany respectfully submits that the Court should affirm the August 23 Order and direct the disclosure of the purchaser information without further delay.

### B. Costco Has Not Established Extreme Risk Of Commercial Prejudice

Apparently in response to Magistrate Judge Freeman's finding that there was no "huge competitive disadvantage here to producing the list" (Aug. 23 Tr. 21:14-21) (to which Costco's counsel did not respond during the telephone conference), Costco now argues that "it must be assumed that, if given the chance to do so, Plaintiffs will try and convince Costco members that they were sold 'counterfeit diamond rings' and were otherwise 'damaged' by Costco" so as to "inflict an injury" on Costco.  Objections 6.  This unfounded "assumption" must be rejected in its entirety.

First, Costco did not even present this to the court below.  (Instead it relied only on a conclusory claim of "enormous risk of interference and damage to Costco customer relations."[9] Costco Mot. 3.)  On this basis alone this argument should not be considered.  E.g., McKenzie, 2013 U.S. Dist. LEXIS 114303, at *6.

In addition, on its face this assumption is nothing more than sheer speculation.  As such it cannot provide any basis to overturn the August 23 Order.  Surles v. Air France, 210 F. Supp. 2d 501, 503 (S.D.N.Y. 2002) (magistrate judge's order denying defendant's motion to compel

---

[8]   The Winer Declaration submitted by Costco questions whether any scientific poll would yield valid data, if the purchasers were aware of publicity surrounding this lawsuit.  Yet, it does not even mention the impact of the Costco letter which each of these purchasers actually did receive.  Objections Ex. 8 ¶ 20.

[9]   If Costco is correct that there are only 2,500 purchasers, Tiffany will have the opportunity to communicate with .004% of Costco's more than 67 million members.  Tiffany Opp'n 3.  If Tiffany speaks with only a portion of this group, the percentage will be even more infinitesimal, rendering any threat to Costco customer relations even more illusory.

production of contact information regarding 401(k) beneficiaries not clearly erroneous or contrary to law where Air France's "surmise" that these beneficiaries would have knowledge relating to its defenses was "wholly speculative" and "irrelevant")  See also Minn. Mining & Mfg. Co. v. Graham-Field, Inc., 96 Civ. 3839, 1997 U.S. Dist. LEXIS 2022, at *2-3 (S.D.N.Y. Feb. 26, 1997) (subpoenaed customers of defendant required to produce documents reflecting their sources of 3M products as it was "beyond cavil" that the identity of customers is a proper subject of discovery and the "harm that movants conjure up is highly speculative").  Costco has not made any showing that Tiffany will not "use professional judgment and ethical conduct" as Magistrate Judge Freeman suggested, and there is no basis to tie counsel's hands in its discovery of potential evidence.  Aug. 23 Tr. 4:24-5:5.

Given this utter lack of evidence of substantial risk of commercial interference, the so-called "leading case" relied on by Costco (and not even raised in the court below) has no application here.  In Volkswagenwerk Aktiengesellschaft v. Westburg, 260 F. Supp. 636, 637 (E.D. Pa. 1966) (Objections 6), it was admitted that counsel for the plaintiff already had caused an employee to telephone the defendants' customers to tell them of the lawsuit, to ask various questions and, if customers raised any questions about the reasons for the call, to explain that the defendant was not an authorized dealer and that it appeared that some of the defendant's customers had been sold old cars when they had asked for new ones.  The court observed that the impropriety of this conduct was "self-evident" and that the plaintiff should not be permitted to put the defendant out of business by such self-help conduct (a concern Costco cannot seriously entertain if Tiffany speaks to fewer than .004% of Costco's customers).  Moreover, unlike here, the court concluded that the plaintiff had no "plausible" reason to contact the defendant's

customers and the order there was based on these specific facts and the obvious and irreparable prejudice to the defendant.

Notably, while characterizing Volkswagenwerk as the leading case, Costco fails to mention that the Second Circuit has stated that it does not agree with its holding. In Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197 (2d Cir. 1970), where a terminated dealer sought to limit the universe of customers which Ford could interview, the Court of Appeals observed that Volkswagenwerk

> may be distinguishable on the basis of Volkswagen's lack of need for calling customers in the different circumstances there presented; if it is not, we would not agree with it.

Id. at 1208 (emphasis added).

C.  **Costco Has Not Established That The Customer Evidence Is Not Probative**

By truncated and out-of-context quotes and conflating the concepts of likelihood of confusion and actual confusion, Costco has cobbled together the argument that Tiffany has to find 250 confused purchasers in order to prove its case. According to Costco, if there were a "handful" of purchasers who were actually confused, such evidence "would have minimal if any probative value." Objections 7-8. That is not the law, as Costco's own authority establishes.

In Savin Corp. v. Savin Group, 391 F.3d 439 (2d Cir. 2004) (Objections 2, 7), the court made clear the distinction between likelihood of confusion and actual confusion. Thus, the language cherry-picked by Costco (Objections 7), in fact referred to what must be shown to establish likelihood of confusion: "Rather, the crux of the issue is whether the similarity [of the marks] is likely to cause confusion among numerous customers who are ordinarily prudent." 391 F.3d at 458 (emphasis added) (citation omitted) (internal quotation marks omitted). On the other hand, as the Second Circuit stated,

7

> "[I]t is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source." . . . . Nonetheless, it has been noted that:
>
> "There can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion. Moreover, reason tells us that while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof."

Id. at 459 (first alteration in original) (citations omitted).[10] See also Tory Burch LLC v. Creative Eyewear, Inc., No. 12 Civ. 7422 (HB) (JCF), 2013 U.S. Dist. LEXIS 47521, at *3 (S.D.N.Y. Apr. 1, 2013) ("Other courts routinely require the disclosure of customer lists, reasoning that they are relevant to actual confusion, which, in turn, is compelling proof of likelihood of confusion." (citation omitted) (internal quotation marks omitted)).

It is likewise clear that Tiffany is not limited to a survey as a means of proving actual confusion. See, e.g., Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993, 1003-04 (2d Cir. 1997) (testimony that some retail customers of the plaintiff complained because they thought the defendant's product was the plaintiff's product being sold to other retailers at a lower price was sufficient to support a finding of actual confusion at preliminary injunction stage); Borghese Trademarks Inc. v. Borghese, No. 10 Civ. 5552 (JPO) (AJP), 2013 U.S. Dist. LEXIS 39827, at *33 (S.D.N.Y. Jan. 14, 2013) (anecdotal evidence of actual confusion when paired with survey evidence of confusion provided a jury with enough evidence to reasonably conclude that actual confusion existed). Moreover, whether or not Tiffany has evidence of actual confusion now, such evidence may be uncovered during discovery. See Cadbury Beverages, Inc.

---

[10] Costco's other citations are to the same effect. See Brockmeyer v. Hearst Corp., 248 F. Supp. 2d 281, 298 (S.D.N.Y. 2003) (where survey evidenced a 3% rate of confusion "[t]his rate of confusion is not sufficient to demonstrate a likelihood of confusion"); 1-800 Contacts, Inc. v. Lens.com, Inc., 722 F.3d 1229, 1249 (10th Cir. 2013) ("[W]hen the percentage results of a confusion survey dip below 10%, they can become evidence which will indicate that confusion is not likely." (citation omitted) (internal quotation marks omitted)).

8

v. Cott Corp., 73 F.3d 474, 484 (2d Cir. 1996) (where absence of evidence of actual confusion was only factor to be weighed against trademark plaintiff in analysis of Polaroid factors, summary judgment for defendant was inappropriate, as "even this factor could turn in the plaintiff's favor following discovery"). That is precisely why Tiffany is entitled to this information – not to conduct a survey, but to talk to the actual purchasers who are material fact witnesses. Aug. 23 Tr. 12:7-15:11, 17:22-18:11.

### D. Costco Has Not Established That Disclosure To Tiffany Will Prevent A Scientific Study

Costco's stated concern about the need for a so-called scientific survey doth protest too much. In the months since April, when Costco received Tiffany's document request and has withheld this information, it could have polled the group of purchasers without worrying about Tiffany infecting this pool. And, even if Tiffany could talk to these people, as Magistrate Judge Freeman observed, nothing would preclude Costco from bypassing a purchaser already "tainted" by contact with Tiffany and moving on to the next person. Aug. 23 Tr. 18:18-19:3.[11]

To the extent that Costco's argument survives at all in the face of the above considerations, it is undermined entirely by Costco's complete failure to acknowledge the impact of its own April 5, 2013 letter to every purchaser, i.e., the very participants in the neutral and scientific survey Costco is so anxious to conduct. As already discussed, Costco's expert wonders whether any poll would yield valid data if the purchasers were aware of publicity surrounding this lawsuit. Objections Ex. 8 ¶ 20. Yet, the expert – and Costco – fail to discuss the obvious effect of the Costco letter in which Costco told these purchasers what the Tiffany signs meant, that they were not inaccurate and that they could return their rings for any reason. Id. Ex. 3. To

---

[11]   While Costco now complains that it is "unclear" whether the purchasers contacted by Tiffany would be excluded from a survey (Objections 9) (if one is ever even conducted), Magistrate Judge Freeman clearly contemplated that they would be bypassed (Aug. 23 Tr. 18:21-25).

9

paraphrase the Costco expert, if the Costco purchaser received the Costco letter, "such [letter] could make it impossible for respondents to separate in their minds what they know now from what they remember about a transaction that may have occurred as many as six years prior to the survey administration." Objections Ex. 8 ¶ 20. Magistrate Judge Freeman correctly took note of this glaring flaw in Costco's logic: "[W]hy would you think that any of these people would be uninfluenced in the first place by the letter that you sent them . . . ." Aug. 23 Tr. 19:4-14.[12]

Plainly, Costco is more concerned about preventing Tiffany from conducting valid discovery than it is about having a scientific survey. Magistrate Judge Freeman correctly determined that it is time to level the playing field by giving Tiffany the customer information to which it is unquestionably entitled, and which Costco already has used to its own advantage. Nothing in Costco's Objections establishes that the August 23 Order was clearly erroneous or contrary to law. To the contrary, Magistrate Judge Freeman was correct in denying the Costco Motion and her decision should be affirmed.

---

[12] Costco cannot explain away this letter because of the so-called "media blitz" by Tiffany that everyone who was "alive on the planet" must have seen (Aug. 23 Tr. 8:4-11); as Magistrate Judge Freeman pointed out, she was alive on the planet but does not remember seeing a media blitz (id. at 10:5-8). In any case, this excuse cannot wipe away the taint of this letter.

## **CONCLUSION**

For the reasons set forth herein and in the proceedings before Magistrate Judge Freeman, Costco's Objections should be denied and the August 23 Order should be affirmed.

Dated: New York, New York
September 20, 2013

                                    Respectfully submitted,
                                    DICKSTEIN SHAPIRO LLP

                                    By: s/Jeffrey A. Mitchell
                                         Jeffrey A. Mitchell
                                         Don Abraham
                                         Judith R. Cohen
                                    1633 Broadway
                                    New York, New York 10019-6708
                                    Telephone: (212) 277-6500
                                    Facsimile: (212) 277-6501
                                    mitchellj@dicksteinshapiro.com
                                    abrahamd@dicksteinshapiro.com
                                    cohenjudith@dicksteinshapiro.com

                                    Attorneys for Plaintiffs Tiffany and Company and Tiffany (NJ) LLC