# EXHIBIT B

```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF NEW YORK
 2

 3     ------------------------------------X
                                          :
 4     TIFFANY AND COMPANY,               :  13-CV-1041 (LTS)
                                          :
 5                      Plaintiffs,       :  August 23, 2013
                                          :
 6                 v.                     :  500 Pearl Street
                                          :  New York, New York
 7     COSTCO WHOLESALE CORP.,            :
                                          :
 8                      Defendants.       :
       ------------------------------------X
 9
              TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
10              BEFORE THE HONORABLE LAURA TAYLOR SWAIN
                     UNITED STATES DISTRICT JUDGE
11

12     APPEARANCES:

13

14     For the Plaintiff:          JEFFREY MITCHELL, ESQ.
                                    DON ABRAHAM, ESQ.
15                                  JUDITH COHEN, ESQ
                                    Dickstein Shapiro LLP
16                                  1633 Broadway
                                    New York, New York 10019
17

18     For the Defendants:         JAMES DABNEY, ESQ.
                                    VICTORIA DOYLE, ESQ.
19                                  RICHARD KOEHL, ESQ.
                                    Fried, Frank, Harris, Shriver &
20                                    Jacobson LLP
                                    1 New York Plaza
21                                  New York, New York 10004

22

23     Court Transcriber:          SHARI RIEMER
                                    TypeWrite Word Processing Service
                                    211 N. Milton Road
24                                  Saratoga Springs, New York 12866

25


       Proceedings recorded by electronic sound recording,
       transcript produced by transcription service
```

2

1          THE COURT: Hi.  It's Judge Freeman.  Who do I have?

2          MR. MITCHELL:  Good afternoon, Your Honor.

3          THE COURT: Who do I have from Tiffany?

4          MR. MITCHELL:  Jeffrey Mitchell, Judith Cohen and

5   Don Abraham.

6          THE COURT: Okay.  That's a lot of people.  Who do I

7   have from Costco?

8          MR. DABNEY: You have Jim Dabney and Richard Koehl

9   and Victoria Doyle.

10          THE COURT: That's a lot of people also.  Let's try

11   not to have a super long call so you don't both charge your

12   clients a ridiculous amount of money for having six people

13   involved in talking to the court.

14          I have one of my law clerks here with me, Angela

15   Shannon, and I have an electronic recording equipment which

16   may or may not work but if anyone wants to try to get a

17   transcript at least it's a possibility.

18          It's my understanding that the remaining issue on

19   which you need assistance has to do with the motion for a

20   protective order.  Is that right?

21          MR. MITCHELL: Yes, Your Honor.

22          MR. DABNEY: That's correct, Your Honor.

23          THE COURT: Hold on.  Do I have yes that's correct

24   from both sides?

25          MR. MITCHELL: Yes.

3

1          MR. DABNEY: Yes, from both sides.

2          THE COURT: Yes from both sides, okay.  Well, that's

3     good because we have not focused on the other discovery

4     disputes that were originally issued hoping they were in fact

5     resolved.

6          So on the protective order issue here's what my

7     thinking is on it.  The party that is seeking a protective

8     order has the burden to demonstrate its appropriateness and

9     Costco has sought this relief which is fairly unusual relief,

10    at least you haven't -- Costco hasn't really shown to us

11    through cases, other cases analyzing whether the type of

12    relief that you're seeking here is appropriate.  So it strikes

13    me either that you haven't found those cases or that it's

14    fairly unusual.

15         And not the disclosure of client lists, just as a

16    disclosure matter wouldn't be a topic that has been addressed

17    by courts before but it seems that what you're seeking is an

18    order that issue disclose clients lists and this is what

19    plaintiffs must do with it and -- with that list and only what

20    plaintiff may do with it which is a) only to conduct a survey;

21    and b) only to conduct a survey with certain agreed protocols

22    and questions and the like.  So it seems like you're saying

23    that the court should only allow the customer list to be

24    disclosed if you can control what your adversary does with

25    that list and in making those arguments it seems like what

4

1   Costco is doing is talking about what kinds of surveys have

2   been found admissible on which there's case law but that seems

3   to me not to be the question now for discovery purposes.  It's

4   not up to me to decide what is or is not the best practice for

5   surveying.  It's not up to me to decide what is or is not

6   admissible.  It's not up to me to decide whether testimony by

7   individual witnesses about their experiences with actual

8   confusion if they had any would be rejected by the court or

9   would weigh only a certain way.

10          It does seem to me that that might be a question of

11   [inaudible] evidence as opposed to admissibility but this is

12   discovery in any event.  So I think the question really ought

13   to boil down to whether or not the customer list should be

14   disclosed, not whether plaintiff should have to do with that

15   customer list what defendant says plaintiff has to do with it.

16          In looking at the question as to whether a customer

17   list is appropriately disclosed or not there does seem to be

18   some conflicting law on that but I'd rather agree with Judge

19   Francis and the decision that he issued on the subject which

20   was the Tory Birch decision that was cited to us, a very

21   recent decision of April 2013, and the case number on that was

22   12-CV-7422 and the Lexis cite for it was 2013 U.S. Dist. Lexis

23   47521.

24          I think that the list ought to be disclosed and that

25   plaintiff ought to use professional judgment and ethical

5

1   conduct and ought to contact witnesses in ways that are

2   appropriate in counsel's [inaudible] and I shouldn't tie

3   counsel's hands to only use the evidence or the witness list

4   in the way in which defendant dictates.  That's my initial

5   thinking.

6           Now, before I make that an absolute rule I'll hear

7   from Costco as to what you think I've got wrong on that

8   analysis but that's my inclination.

9           MR. DABNEY: Well, thank you, Your Honor.  What we

10  believe Your Honor has overlooked is the contents of the

11  affidavit from the NYU professor that we have provided to the

12  court that raises the question that's much narrower than the

13  categorical issue of whether customer lists are ever subject

14  to disclosure in a case like this.

15          What we have in this case is a discrete population

16  of people who bought certain products under circumstances in

17  which there was an assertedly ambiguous point of sale science.

18  We're not talking about an issue of likelihood of confusion in

19  this case because these signs were taken down voluntarily

20  before the case was brought.  What we have here in this case

21  is both sides are interested in establishing what an

22  appreciable number, a substantial number of this population

23  did or did not believe because as a matter of law even if you

24  were going to be talking about infringement you would have to

25  with regard to this discrete population we're talking about

6

1   come up with a fairly sizeable number in order even for

2   liability to be established much less monetary relief.

3          THE COURT: Why -- what would prevent you from doing

4   your own survey using the types of protocols that your expert

5   thinks are most appropriate and what would prevent you from

6   arguing on motion or at trial that your protocol is better

7   than whatever plaintiffs separately has come up with however

8   it wants to introduce evidence and that the court should

9   instruct a jury or the court itself should weigh the evidence

10  accordingly or should accept your evidence and exclude some

11  aspect of plaintiff's as of yet unknown submission that it

12  wants to make with respect to confusion which I think is still

13  an issue in the case?  It is after all a claim that I think

14  during the time that you had the sign up there it was

15  confusing.

16         MR. DABNEY: The reason, Your Honor, is that as

17  Professor Weiner has presented this population is such that

18  unless there is a controlled process, and we're not saying

19  that we control what the defendants -- what the plaintiffs do.

20  What we've proposed is that this question be resolved

21  according to the principles of the manual for complex

22  litigation if appropriate under the direction of a court

23  appointed special master.

24         THE COURT: But I don't think I've heard plaintiffs

25  say that they want to do a survey.  If plaintiffs decide that

7

1  they want to do a survey maybe the two of you should get that

2  together, talk again, discuss whether you can have an agreed

3  protocol but I haven't even heard plaintiff say they want to

4  do that.

5          MR. DABNEY: If I can just finish.

6          THE COURT: Sure.

7          MR. DABNEY: Professor Weiner is of the view that

8  unless there's a controlled process it will be impossible to

9  conduct a valid survey and the suggestion seems to be that

10 instead of a scientific approach to answering those questions

11 in which these purchasers who for all the current record shows

12 they're just -- they're Costco members who have not responded

13 either to the media blitz or to a letter from Costco and

14 voiced any dissatisfaction that we have this question, what

15 did these people think, what do these people think when they

16 bought these products and what we're concerned about is that

17 if there isn't a controlled process which is -- which

18 according to the NCL and the only evidence before your court,

19 the only side that's put evidence in this record is Costco is

20 that if [inaudible] and actors start calling people in this

21 relatively small population it will take the population and

22 thereby make impossible --

23          THE COURT: Didn't you already do that when you sent

24 a letter to all the Costco members telling them that your

25 signage was clear and that you were only talking about the

8

1  Tiffany setting and that you don't think the lawsuit has

2  merit?  Didn't you already potentially taint the pool yourself

3  more than plaintiff has done?

4        MR. DABNEY: The letter Your Honor is referring to

5  was sent after an enormous media blitz that was obviously

6  targeted at Costco members.  It was not hard to be alive on

7  the planet and not have seen any of opposing counsel's

8  television interviews and the television stories that were

9  very much a part of this case.  So, yes, both sides have made

10 communications which Costco members either have received or

11 likely have received.

12        The issue now is where we are now in August.  If the

13 issue is what do an appreciable number of Costco buyers of

14 these rings, what did they believe when they bought the rings,

15 what did they believe -- the state of mind of these people.

16 There's either going to be a controlled process in which signs

17 [inaudible] are followed in order to determine what the

18 perceptions, opinions, beliefs, attitudes are or there's going

19 to be a free for all in which both sides will be -- it's just

20 going to be a free for all and we believe -- we are as eager

21 to find out this answer as they are and if it had been our

22 intention to try to interfere with this process we would have

23 been calling people.

24        We would have been doing things.  What we have done

25 except for the one letter that was sent, which was a reaction

9

1   to a media blitz in which I don't believe was anything other

2   than a very, very modest response to what we considered to

3   have been highly inflammatory and false statements made to the

4   press by the plaintiffs, we had not had any contact with the

5   members and we have deliberately put to the court with

6   evidence our belief that there's only one way that both sides

7   can get at the truth here which is to use a scientific method

8   of answering this question rather than the a scientific method

9   that opposing counsel seems to want to follow.

10          So if the record is that there was a way that the --

11   this question could have been answered in a scientific fashion

12   to find out what proportion of this 2,500 population held

13   the -- allegedly the false beliefs supposedly held by them and

14   that path was not taken it will not be because we didn't do

15   everything in our power to try to make it possible for that

16   question to be answered.

17          THE COURT: Well, I have --

18          MR. DABNEY: And our view is that according to

19   Professor Weiner that once -- Paragraph 16 of his affidavit --

20   if you just try and make serial calls to selected ones of the

21   members on the list and you disregard to the results that are

22   no good and you come up with a handful of people that you're

23   going to use as if this was a preliminary injunction hearing

24   or something that's going to render -- that is not only not

25   going to yield any data that tells you anything about the

10

1   2,500 as a whole but it will take the pool so that Costco

2   won't be able to do a scientific study.  So we're not --

3            THE COURT: Let me -- let me move this forward.

4   First of all, I want to hear from plaintiff on it too but

5   first of all this media blitz which you would have known about

6   as long as you were living on the planet I possibly don't

7   recall it but I don't remember seeing the media blitz.  I was

8   on the planet so I'm not sure it reached every human being.

9            Your letter was not only sent specifically in the

10  mail to Costco members but to those people who actually

11  purchased a diamond ring at Costco.  In other words, you

12  reached out in the actual mail directly to everyone in this

13  pool already.  So in terms of saying that the plaintiff was to

14  blame here for tainting the pool and you only had a modest

15  response I'm not sure you can actually say that and have that

16  argument be persuasive.

17           Second, yes, you have evidence in the record but the

18  evidence that you have in the record really has to do with

19  whether certain types of surveys are the best types of surveys

20  and in accordance with the principles laid out and suggested

21  in a litigation manual and whether a survey if performed

22  should or should not be accepted by the court as being an

23  appropriate scientific -- following an appropriate scientific

24  method and things of that nature.

25           It really isn't evidence as to whether or not

11

1   discovery is appropriate under the discovery rules and the

2   arguments about that seem to be somewhat lacking.  The

3   argument seem to be backing into it saying if you fast forward

4   to summary judgment or at trial the -- in order to have a

5   survey that is the best survey possible and that ought to be

6   accepted by the court the discovery process ought to be

7   managed in a certain way.

8           Now, it may be that to have the best survey it would

9   be a very good idea for the parties to confer and to discuss

10  protocol but if you want to have a survey it may be a good

11  idea for you to get plaintiff's blessing as to what you want

12  to do so that you don't have admissibility challenges and if

13  plaintiff wants to do a survey plaintiff should confer with

14  defendant to discuss protocol to see if you can stipulate to

15  avoid admissibility challenges.  But I don't know why

16  plaintiff is necessarily precluded from talking to witnesses

17  and trying an alternative approach other than a survey.

18  [Inaudible] only a survey would be acceptable and why talking

19  to witnesses would not be a reasonable thing to do in the

20  discovery process.

21          If what you're saying is you don't want to produce

22  the list without knowing exactly what they're doing and it's

23  going to be a survey over which you have some control they

24  didn't have control over the direct letter you sent knowing

25  who the customers were and you went ahead and did that.  You

1  wouldn't like it if they controlled what you said to your

2  customers.  I don't think they're going to like it for you to

3  control anything that they can say to witnesses.

4           Let me just hear a little bit from plaintiffs

5  specifically on the question of whether you're planning to do

6  a survey or not with these -- with this list.

7           MR. MITCHELL: Thank you, Your Honor.  The answer to

8  the question is at the moment no.  We want the list because

9  we -- these people are fact witnesses.  We also will then

10  learn the identity and location of where everybody lived who

11  bought these rings from the Costco stores in which they made

12  the purchases and the extent nationwide of the availability of

13  the product.  So there are facts that come out of the list and

14  communicating with customers.  Also that the purchase

15  experience with the same in California which is where we had

16  our experience and their direct contact with individuals the

17  same as it might have been in Chicago, in Miami, in New York

18  that people had the similar contact and experience, the

19  purchasing process, in other words what a customer goes

20  through that you need to contact to speak with a customer -- a

21  Costco employee to even access the rings.

22           They've made a big point about the boxes being

23  unbranded boxes when the boxes were delivered.  The boxes were

24  not displayed in the display cases.  I believe the boxes were

25  delivered after payment was made but we want to establish the

13

1   protocols for purchase, things like that.

2          Also, with respect to a survey and whether a survey

3   of this universe is even of any value, we've already -- we

4   have deposed -- we have taken four depositions of Costco

5   people including the CEO of the company at this point.  We

6   don't even know what comprises the list.  It seems as if the

7   demographics of a Costco customer from what I understand from

8   the testimony 50 to 55 married.  Their memberships are

9   household memberships.  So they're generally two membership

10  cards per household and if you look at their membership fees

11  generated and if you do just the simple math you'll see that

12  if you had 67 or 69 million members or whatever they have

13  times the membership fee you don't have enough membership fee

14  income for 69 million.  So it's like two cards per household,

15  one payment per household.

16         Now, if your demographic is married and we're

17  talking about the purchase of engagement rings many of these

18  letters may very well have gone to people who were a) not the

19  purchasers, they were members who purchased for others.  There

20  were members who purchased for other members of the family,

21  unmarried members of the family.  So whether or not -- the

22  idea -- the notion that they had -- what we have here is a

23  list of members and presumably credit card or whatever

24  information to identify a purchaser reflected on their records

25  as the person taking responsibility for the purchase of the

14

1  ring.  Whether or not that universe is an accurate universe

2  for purposes of doing a survey we wouldn't know until we had

3  facts.

4         So I think in the first instance is certainly from

5  the fact standpoint whether the purchasing experience of

6  individuals was the same as the one that was experienced by

7  Tiffany's own investigator and that's fact discovery.  Our

8  simple view of the case, Your Honor, was that the identity of

9  fact witnesses who a party knows may have knowledge about the

10  case should be disclosed, identify as defined in the local

11  rules as all the various information that goes with identify.

12  This is no different than that and obviously these purchasers

13  had direct experience with signage, Costco experience.

14         They also are familiar with another issue in the

15  case that has developed is the methodology that Costco signs

16  its products in stores on point of sale advertising.  The

17  evidence is that they have 4,000 products at any one time,

18  3,500 or so have little white signs.  Of the 3,500 little

19  white signs in the store so far the only item that they've

20  identified to us other than this sign in which they say

21  theoretically a brand name was on the sign -- we haven't

22  drilled down on this yet -- the only one they could identify

23  where the brand name was on the sign but it wasn't meant to be

24  the brand, the CEO said he could think of Phillips head

25  screwdriver.  I didn't look to see whether they actually used

1  Phillips on the sign but that was the only example he could

2  give and I could give you ten reasons why that's different.

3         But otherwise of the 3,500 or so signs in each of

4  the stores every time you see a brand like Tiffany on a sign

5  it was a product manufactured by that manufacturer and these

6  are witnesses who would then also be familiar with how signs

7  are at Costco and -- so there's a series numbers of facts here

8  that we cannot get from Costco itself nor can we identify the

9  witnesses so these are actual purchasers who would have had

10 the purchasing experience that we want to develop that

11 evidence on.

12        I agree with Your Honor by the way, whatever his

13 position is -- I mean if he wants to survey the group I might

14 be able through these witnesses show why a survey is

15 inappropriate but I'm not interested in the moment in serving

16 these people because they actually have experience.  I don't

17 need to survey them.  I can find out what happened.

18        MR. DABNEY: Your Honor, in response to a couple of

19 points that have been made.  As I understand it, the

20 plaintiffs do want to survey the members.  They just want to

21 do it in a scientific bias selective way, number one.

22 Secondly, Professor Weiner has said in Paragraph 17 of his

23 declaration "As subject Costco purchasers were told by one

24 party to this litigation with respect to their diamond ring

25 purchases that poll would likely make it difficult or

1   impossible for the other party to conduct its own polls

2   because the purchasers would have been tainted by being

3   informed about the nature of the investigation." So this is

4   not a situation in which both sides can just hire their own

5   experts and take random samples of the public at large and

6   they can independently go about and fight later about who has

7   the better survey methodology. This is an unusual case in

8   which what the plaintiff wants to do will make it difficult or

9   impossible for a scientific survey of this population to be

10  conducted by Costco.

11          So I would suggest that what has been described here

12  is Mr. Mitchell has just given all kinds of reasons why he

13  evidently believes that Costco members are going to say if

14  interviewed things from which an inference of mistake,

15  confusion, deception, et cetera can be drawn and we're not

16  trying to prevent that inquiry from being done. We're also

17  not trying to control it. What we're trying to do is to have

18  it done in accordance with the manual for complex litigation

19  so the choice is not whether to interrogate or whether to

20  interview. The issue is how to do that and given that it can

21  only be done once -- there hasn't been any counter to the

22  evidence that this can only be done once and that once

23  somebody has been interviewed then they're spoiled as far as

24  any subsequent testing can be done.

25          MR. MITCHELL: [Inaudible]

1          MR. DABNEY: Is it going to be done -- it doesn't

2   have to be done by either of the parties.  We suggested if --

3   either the parties agree on a protocol for doing this or if

4   they can't the court can supervise it or appoint a special

5   master or whatever but the issue is not whether to survey.

6   They've just now say they want to survey but the way they want

7   to do it --

8          MR. MITCHELL: I don't want --

9          MR. DABNEY:  -- is to conduct interviews by

10  [inaudible] calling some subset of the 2,500.

11         MR. MITCHELL: Your Honor, any questions that could

12  be asked by a partisan actor who has legal and commercial

13  interests in persuading the called party of a certain point of

14  view can be just as well asked by an independent neutral who

15  does not have any biases in either direction and can ask any

16  questions that are thought appropriate by plaintiffs to ask

17  that either the court approves or are agreed to.  So it just

18  isn't -- it's just an unusual circumstance in that regard

19  given the size of the population and the particular

20  circumstances here which involves among other things a claim

21  for damages.

22         MR. DABNEY: Your Honor, I am not -- I'll say it

23  again.  We're conducting a survey.  I want to speak with

24  witnesses.  In a 26 disclosure in the identity of witnesses

25  you get often times -- in cases you get a longer list of

18

1  witnesses than you actually -- you may speak with witnesses on

2  a list.  You'll depose some.  You won't depose others.

3  Whatever arguments counsel has about whatever evidence we ever

4  introduced or tried to use it comes from witnesses on the

5  list.  They're preserved for trial.  He can object to trial.

6  If we purport or he believes we're going to issue -- put into

7  evidence some kind of survey, his expert can challenge our

8  survey and he can make -- he's preserved his argument in terms

9  of challenging the evidence.  I'm telling the court I want to

10  speak with these people because they're fact witnesses.  We're

11  talking about a company that does business nationwide.

12          THE COURT: Let me say something.

13          MR. MITCHELL: [Inaudible].

14          THE COURT: [Inaudible].  If defendant wants a survey

15  and defendant is afraid that the pool will be tainted and if a

16  pool has -- how many people in it?

17          MR. DABNEY: 2,500 approximately.

18          THE COURT: 2,500.  So I doubt that plaintiff is

19  going to go out and call 2,500 people.  What would preclude

20  Costco from conducting its own survey with principals that it

21  believes are appropriate and when its neutral person calls

22  somebody if that persons says oh, well, I did in fact have a

23  long chat with plaintiff's counsel have part of that protocol

24  say okay, thank you very much and call the next person down on

25  the list to come up with what you would consider to be a more

1   neutral sample.  Surely you'd be able to get a large enough

2   sample size from every jurisdiction that way unless plaintiff

3   is really going to blanket the universe with personal calls

4   and number two, why would you think that any of these people

5   would be uninfluenced in the first place by the letter that

6   you sent them but not only said that the signs were used to

7   describe the Tiffany style prong setting.  You've already told

8   them that.  You haven't even asked them questions that were

9   loaded questions.  You have told them information and you have

10   told them you didn't believe your signs were inaccurate and

11   you also told them what an upstanding company you are because

12   you're telling them you can come back and get a refund on this

13   setting the stage for people to particularly like your

14   company.

15        So you've already got that out there which can be

16   challenged by plaintiff in terms of tainting the pool if it

17   wishes to.  You can already say the pool has been tainted by

18   the media blitz which can't be undone by plaintiff that you

19   mentioned.  But to the extent you're concerned about these

20   personal calls, what would stop you from doing your own survey

21   and just skipping by those particular people who have been --

22   you happen to at random discover who had talked to plaintiff?

23        MR. DABNEY: Well, there is the affidavit of Dr.

24   Weiner.  Your Honor is correct that it -- depending on how

25   many people are contacted and recruited or not recruited, the

20

1   potential for getting a non random sample.  I don't know that

2   it's as simple as Your Honor suggests because the random

3   [inaudible] function that would be used to generate a truly

4   representative sample may or may not work if --

5           THE COURT: Well, I do know a little bit about

6   surveying.  Once upon a time before I was a lawyer I actually

7   worked on public opinion surveys and I can tell you that they

8   were randomly generated lists and occasionally when people

9   called randomly generated numbers either no one was home or in

10  response to question 1 or question 2 or question 3 the person

11  was determined to be ineligible to participate in that survey

12  for some reason.  When that was determined they went to the

13  next one on the list and they got a large enough sample size.

14  So I would imagine there would be a way to work it out.

15          Let me ask this.  Would there be any objection --

16          MR. DABNEY: Can I --

17          THE COURT: Hold on.  Would there be any objection by

18  plaintiff to having defendant on its own do a survey sooner

19  rather than later before you've had -- let's say they disclose

20  the list tomorrow but then they start their survey next week

21  before you can be contacting everyone under the sun, would you

22  have a problem with them doing that?  Would plaintiff have a

23  problem with defendant going forward and conducting a survey

24  as it sees fit once it's disclose the list at any time after

25  it discloses the list?

21

1          MR. MITCHELL: I don't propose to stop the defendant

2    from doing anything that the defendant is going to do to try

3    to defend the case and I would hope that they would not be

4    doing the same with me.  That's the purpose of the call.  So

5    it's not my intention to prevent Costco from putting on

6    whatever case Costco thinks it should put on.

7          THE COURT: I'm going to get to the end of this call.

8    I'm going to rule that the [inaudible] should be produced.  I

9    am not persuaded by the arguments put forward which seem to me

10   to relate more to the quality of a survey when produced at

11   trial than to whether evidence is discoverable in litigation

12   for potentially more reasons than solely producing a survey.

13          I'm going to rule that the list should be provided.

14   I don't even see a huge competitive disadvantage here to

15   producing the list because since Tiffany and Costco are such

16   different sorts of retailers I don't see them as in direct

17   competition the way you sometimes see in cases and as was

18   noted in the case law that was cited when customer lists were

19   at issue.  Sometimes you have two parties that are trying to

20   steal each other's customers and there becomes real

21   sensitivity there.

22          So I'm not even seeing that as the issue here.  I'm

23   seeing that this is relevant, that these are names of

24   witnesses to facts that are essential to the case and should

25   be disclosed.  If defendant wants to go forward and do its own

22

1   survey or if plaintiff decides it wants to do a survey it may

2   be best practice and avoidance of headaches later to try to

3   get agreement on survey protocol but if you can't do that you

4   should go forward and do what you do and you'll each have your

5   arguments as to why what the other one did was not appropriate

6   and you'll have your own arguments as to what -- why what you

7   have done is appropriate.

8            Then should the case not be resolved and should it

9   eventually go to motion or trial you can make all those

10  arguments bout admissibility or weight of the evidence.  That

11  is my ruling.

12           MR. MITCHELL: Thank you, Your Honor.

13           THE COURT: You're welcome.  If you want to get a

14  transcript you'll see it on there.  If you want something in

15  writing what I would be inclined to do would be memo endorse

16  one of these letters and say that for the reasons stated on

17  the record the application is decided in this way.

18           MR. MITCHELL: Thank you, Your Honor.  We'll follow

19  up to get a transcript.  However Your Honor feels it best

20  to --

21           THE COURT: If you want to get a transcript call the

22  audio/visual folks and give them the case number and the case

23  date and explain that -- I'm sorry, the date of the conference

24  and explain that it was a telephone conference before me.

25  It's all centralized.  If the system works it should be able

23

1   be retrieved.

2          MR. MITCHELL: Thank you.

3          THE COURT: You're welcome.

4          MR. MITCHELL: Have a nice week.

5          MR. DABNEY: Your Honor --

6          THE COURT: Yes.

7          MR. DABNEY: I just wanted to note on the record that

8   Costco -- I have to consult with my client but we may very

9   well be filing under Rule 72.  I just wanted that on the

10  record.

11         THE COURT: You can certainly appeal my ruling to

12  Judge Swain.  It's Judge Swain who has this case at this time;

13  right?

14         MR. DABNEY: Yes.

15         THE COURT: You can certainly appeal my ruling.  It's

16  within your right to do so.  That's why I was going to tell

17  you how I was going to handle this in terms of any written

18  opinion so that you were not confused about the date from

19  which that time would run.  I will memo endorse something

20  today and say it's for the reasons stated on the record.  If

21  you feel you need more time to appeal because you need time to

22  get the transcript I'd raise that with Judge Swain.

23         MR. DABNEY: Thank you, Your Honor.

24         THE COURT: You're welcome.

25                          *  *  *  *  *

24

1      I certify that the foregoing is a court transcript from

2  an electronic sound recording of the proceedings in the above-

3  entitled matter.

4

5                          _____

6                                   Shari Riemer

7  Dated:  August 27, 2013

**Tiffany and Company v. Costco Wholesale Corp. 13-CV-1041 (LTS) (DCF):**
**August 23, 2013 Conference before the Hon. Debra C. Freeman, U.S.M.J.**

**Proposed corrections to Transcript**

| | |
|---|---|
| Cover Page: | Should be "conference before the Honorable Debra C. Freeman United States Magistrate Judge" |
| p.4, l.11: | "[inaudible]" should be "weight of" |
| p.5, l.2: | "[inaudible]" should be "opinion" |
| p.5, l.12: | "the" should be "a" |
| p.6, l.17 | "Weiner" should be "Winer" |
| p.5, l.17: | "science" should be "sign" |
| p.7, l.7 | "Weiner" should be "Winer" |
| p.7, l.18: | "NCL" should be "MCL" |
| p.7, l.20 | "[inaudible]" should be "partisan" |
| p.7, l.21 | "take" should be "taint" |
| p.8, l.16-17: | "signs [inaudible]" should be "scientific processes" |
| p.9, l.4 | "had" should be "have" |
| p.9, l.8: | "a scientific" should be "a-scientific" |
| p.9, 1:19: | "Weiner" should be "Winer" |
| p.10, l.1 | "take" should be "taint" |
| p.11, l.3 | "seem" should be "seems" |
| p.12, l.15: | "with" should be "was" |
| p.15, l.7: | "series numbers" should be "series, numbers" |
| p.15, l.15: | "serving" should be "surveying" |
| p.15, l.23: | "As" should be "If" |

| | |
|---|---|
| p.15, l.23: | "told" should be "polled" |
| p.16, l.1 | "polls" should be "poll" |
| p.17,l.10: | "[inaudible]" should be "selectively" |
| p.17, l.11: | "MR. MITCHELL" should be "MR. DABNEY" |
| p.17, l.22: | "MR. DABNEY" should be "MR. MITCHELL" |
| p.17, l.23: | "We're conducting" should be "We're not conducting" |
| p.17, l.24: | "In a 26" should be "In a Rule 26" |
| p.18, l.5: | "object to" should be "object at" |
| p.19,l.24: | "Weiner" should be "Winer" |
| p.20, l.3: | "[inaudible]" should be "integer" |
| p.21, l.8: | "[inaudible]" should be "list" |