```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

TIFFANY AND COMPANY and
TIFFANY NJ (LLC),

        Plaintiffs,

   -v-                                              No.  13 Civ. 1041 (LTS)(DCF)

COSTCO WHOLESALE
CORPORATION,

        Defendant.

-------------------------------------------------------x
```

<u>M</u>EMORANDUM <u>O</u>PINION AND <u>O</u>RDER

Plaintiffs and Counterclaim-Defendants Tiffany and Company ("Tiffany and Co.") and Tiffany (NJ), LLC (collectively, "Tiffany") sue Defendant and Counterclaim-Plaintiff Costco Wholesale Corporation ("Costco"), asserting claims under both federal and New York state law for trademark infringement, dilution, counterfeiting, unfair competition, injury to business reputation, false and deceptive business practices and false advertising.  Costco asserts a Counterclaim against Tiffany, seeking to dismiss Tiffany's Complaint with prejudice and seeking a judgment that Tiffany's federal trademark registrations are invalid in that they purport to exclude others from using the word "Tiffany" to describe or refer to a certain type of ring setting; that such registrations must be modified or restricted to make clear that "Tiffany" is a generic term for ring settings "comprised of multiple slender prongs extending upward from a base to hold a single gemstone;" and that Costco's past use of the word has not infringed or invaded any legal rights of Tiffany.  (<u>See</u> Counterclaim ¶¶ 11, 13.)  Currently pending before the Court is Tiffany's motion for summary judgment dismissing Costco's Counterclaim pursuant to

Federal Rule of Civil Procedure 56 or, in the alternative for judgment on the pleadings dismissing Costco's Counterclaim pursuant to Federal Rule of Civil Procedure 12(c).  The Court has jurisdiction of this action under 15 U.S.C. § 1121 and 28 U.S.C.§§ 1331, 1338 and 1367(a). The Court has considered carefully the parties' submissions and arguments and, for the following reasons, Tiffany's motion, which  the Court treats as one for summary judgment on Costco's Counterclaim, is denied.

BACKGROUND

Undisputed Facts

The following facts are undisputed.[1]  Tiffany holds 97 separate trademarks relating to the "Tiffany" company name.  (Pl. Local Civil Rule 56.1 Statement ¶ 4) ("Pl. 56.1 Stmt.").)[2]  Among the Tiffany trademarks relevant to this case is Registration No. 1,228,409, for the word "Tiffany" in International Class 14, which was first used in commerce in 1868.  (Id. ¶¶ 5-6.)  This mark covers "decorative art objects made in whole or in part of precious or semi-precious metals – namely, figurines, boxes, bowls, trays, and flowers, jewelry, semi-precious stones, and natural and cultured pearls" in Class 14.  (Id. ¶ 7.)  Tiffany also holds Registration No. 133,063, for the stylized mark "Tiffany" in U.S. Class 28, which covers "jewelry for personal wear, not including watches, precious stones, and flat and hollow ware made of or

---

[1] Costco has denied several of Tiffany's allegations concerning ownership of registered trademarks, arguing that the word "Tiffany" has become generic in the context of a certain style of pronged ring setting.  The Court does not understand such contentions to constitute denials that Tiffany at this point has the registered trademarks to which Tiffany's contentions refer.

[2] Citations to the parties' S.D.N.Y. Local Rule 56.1 Statements incorporate by reference the evidence cited therein.

plated with precious metal," and was also first used in commerce in 1868.  (Id. ¶¶ 9-11.)  Tiffany further asserts that it calls one of the styles of engagement ring that it sells, a solitaire diamond set with six prongs, a "*Tiffany*® Setting" ring.  (Id. ¶¶ 18-20.)

Prior to December 2012, Costco, a large warehouse chain, was selling two styles of engagement rings at its Huntington Beach, California Store with Point of Sale signs ("POS" signs) reading as follows: "639911 – Platinum Tiffany.70CT, VS2, 1 Round Diamond Ring – 3199.99 " and "605880 – Platinum Tiffany VS2.1 1.00CT Round Brilliant Diamond Solitaire Ring – 6399.99."  (Pl. 56.1 Stmt. ¶¶ 23-24.)[3]  Neither of those rings was manufactured by Tiffany.  (Id. ¶¶ 25-26.)  Furthermore, according to Tiffany, prior to December 2012, Costco did not describe every engagement ring that it sold with a "setting comprising multiple slender prongs extending upward from a base to hold a single gemstone" as a "Tiffany" setting and did not use "Tiffany" to describe settings in any online descriptions of the rings.  (Id. ¶¶ 28-29.)  Costco acknowledges that it "has not always verbally called out the type of setting that a displayed diamond ring has," but proffers no prior examples of display usage of the standalone word "Tiffany."  (Def. Stmt. of Material Facts in Dispute ¶ 28.)  As to online usage, Costco proffers two screen shots of Costco jewelry advertisements that include ring descriptions incorporating the phrase "tiffany setting."  (Id. ¶ 29; Grewall Decl., Ex. 10.)[4]

Costco's Counterclaim

---

[3]    Although Costco disputes the meaning of the terms in the signs, it does not dispute Tiffany's iteration of the wording of the POS signs.

[4]    In its Rule 56.1 Statement and in the body of the Grewall Declaration, Costco mischaracterizes the online usage as use of the word or phrase "Tiffany setting in its dictionary definition sense."  (Def. 56.1 Stmt. of Material Facts in Dispute ¶ 29; Grewall Decl. ¶ 8.)  The advertisements depicted in the screen shots do not capitalize "tiffany."

Costco alleges that "Tiffany" is a generic term for a general setting type or style of engagement ring and asserts that Tiffany "does not 'own' any trademark rights to exclude Costco from using the word Tiffany to indicate that a ring has [that type of setting]." (Counterclaim ¶ 13, Def. 56.1 Stmt. of Material Facts in Dispute ¶¶ 4-13.)  In its Counterclaim, Costco asks that the Court:

> i. Dismiss the Plaintiffs' Complaint with prejudice;
>
> ii. Declare, adjudge, and decree that the [Tiffany] Registrations are invalid insofar as they purport to evidence claims of right to exclude use of the word Tiffany to describe or refer to Tiffany [ring] settings;
>
> iii. Declare, adjudge, and decree that the [Tiffany] Registrations be modified and restricted to make clear that Tiffany is a generic term for the general type or style of [pronged setting depicted in the diagram included in the Counterclaim];
>
> iv. Declare, adjudge, and degree that Costco's past use of the word Tiffany has not infringed or invaded any legal rights of the Plaintiffs';
>
> v. Declare that this is an 'exceptional case' that warrants an award of attorneys fees [and to award Costco any further relief as the Court may deem just and proper].

Costco asserts that, "[i]n common with the rest of the American public, Costco 'owns' the right to use Tiffany in its generic or descriptive, dictionary definition sense." (Def. 56.1 Stmt. of Material Facts in Dispute ¶ 15.)  Costco further argues that "Plaintiffs' claimed right to exclude use of the word Tiffany in its dictionary definition sense is not now and never was 'incontestable.'"  (Id. ¶ 16.)  According to Costco, Tiffany currently misuses the "® symbol" in advertising the phrase, "*Tiffany*® Setting," and Tiffany "appears to have recently initiated this practice in an apparent attempt to try and infuse the generic term 'Tiffany Setting' with spurious

trademark significance . . . ." (Id. ¶ 21.)  As noted above, Costco's Counterclaim asks that this Court grant declaratory judgment to Costco and rectify the trademark register so as to prevent Tiffany's overly broad trademark registrations.[5]

In its opposition to Tiffany's motion for summary judgment, Costco proffers excerpts from dictionary definitions of the term "Tiffany setting," which purportedly demonstrate the term's generic meaning; a preliminary report of lexicographer, Charles Levine, in which he opines that "Tiffany setting" has a eponymous, generic meaning; and other evidence which, Costco argues, demonstrates that the word "Tiffany" is used regularly in its dictionary definition sense to refer to a certain type or style of pronged ring setting in the retail jewelry industry.  Tiffany contends that its "Tiffany" trademarks are valid, incontestible and non-generic in all respects, and seeks dismissal of the Counterclaim in its entirety.

DISCUSSION

Tiffany moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, or, alternatively, for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), seeking dismissal of Costco's Counterclaim.  Under Rule 12(c), courts apply the same standard as applied on a motion to dismiss a claim under Rule 12(b)(6).  See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999) ("accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party"). However, if matters outside the pleadings are presented on a Rule 12(c) motion, pursuant to Federal Rule of Civil Procedure 12(d), the motion is properly treated by the Court as one for

---

[5] "In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action."  15 U.S.C.S. § 1119 (LexisNexis 2006).

summary judgment.  See Garanti Finansal Kiralama A.S. v. Aqua Marine and Trading Inc., 697 F.3d 59, 64 (2d Cir. 2012).  See also, Fed. R. Civ. P. 12(d) ("[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56").  Because both parties rely on matters outside of the pleadings in their briefing for this motion, including sworn declarations and other exhibits, the Court treats Tiffany's motion as a motion for summary judgment.

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a material fact, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986), and the court must be able to find that, "'after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party.'" Marvel Entertainment, Inc. v. Kellytoy (USA), Inc., 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (citing Heublein v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993)).  "[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).  However, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." Hellstrom v. U.S. Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000) (citations omitted).  This is because "[t]he nonmoving party must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment." Id.  (quoting Trebor Sportswear Co. v.

The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989)).[6]

### Classification of Plaintiffs' Mark

"[T]he fact that the USPTO accepted [a] mark for registration creates a presumption that the mark is valid." American Ort, Inc. v. Israel, No. 07 Civ. 2332(KMK), 2007 WL 2049733, at *4 (S.D.N.Y. July, 17, 2007). "[T]he fact of registration thus confers a procedural advantage on the registrant in an infringement action: the opposing party must overcome the presumption that the purchasing public perceives the mark to be inherently distinctive. However, the statute does not state that the certificate of registration is itself evidence of how the public actually views the mark . . . ." Lane Capital Management, Inc. v. Lane Capital Management, Inc., 192 F.3d 337, 345 (2d Cir. 1999). Once a plaintiff shows that a trademark has a valid registration, the "burden of production therefore shifts to Defendant to proffer evidence that the mark is not valid, i.e., that it is generic . . . ." Lemme v. Nat'l Broad Co., Inc., 472 F. Supp. 2d 442, 443 (E.D.N.Y. Feb. 1, 2007). After a mark has been used continuously for up to five years, the mark becomes incontestable and, in such cases, registration "shall be conclusive evidence . . . of the registrant's exclusive right to use the registered mark in commerce." Gruner + Jahr USA Pub. v. Meredith Corp., 991 F.2d 1072, 1076 (2d Cir. 1993); see also, Park'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194-95 (1985). Even a statutorily incontestable mark can, however, be rendered invalid and cancelled if it has come to be "the generic name for the goods or services, or a portion thereof, for which it is registered

---

[6] Throughout its opposition papers, Costco asserts that it needs discovery of information relevant to the use of the word "Tiffany" in the context of pronged ring settings. (See, e.g., Def. 56.1 Stmt. of Material Facts in Dispute ¶ 22.)

. . . ." 15 U.S.C.S. § 1064(3) (LexisNexis Supp. 2013).  <u>See</u> <u>also</u>, <u>Park'N Fly, Inc</u>, 469 U.S. at 194-95.  Tiffany argues that, as a matter of law, the "*Tiffany*®" mark has not been genericized.

Genericization of a Trademark

"Marks are classified, in ascending order of strength, as (1) generic; (2) descriptive; (3) suggestive; [or] (4) arbitrary or fanciful."  <u>Star Industries, Inc. v. Bacardi & Co. Ltd.</u>, 412 F.3d 373, 384 -385 (2d Cir. 2005) (internal quotation marks and citations omitted).  "Generic marks are those consisting of words identifying the relevant category of goods or services.  They are not at all distinctive and thus are not protectable under any circumstances."  <u>Id.</u>, at 385.  To be deemed generic, "the principal significance of the word must be its indication of the nature or class of an article, rather than an indication of its origin."  <u>Feathercombs Inc. v. Solo Prods. Corp.</u>, 306 F.2d 251, 256 (2d Cir. 1962).  When considering whether a mark is generic, the key determination to be made is the primary significance of the registered mark to the relevant public.

> A registered mark shall not be deemed to be the generic name of goods or services solely because such mark is also used as a name of or to identify a unique product or service.  The primary significance of the registered mark to the relevant public rather than purchaser motivation shall be the test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used.

<u>See</u> 15 U.S.C.S. § 1064(3) (LexisNexis Supp. 2013); <u>see</u> <u>also</u>, <u>Courtenay Commc'ns Corp. v. Hall</u>, 334 F.3d 210, 214, n. 2 (2d Cir. 2003) ("[e]ssentially, a mark is generic if, in the mind of the purchasing public it does not distinguish products on the basis of source but rather refers to the type of product").

There are "two principal circumstances" under which courts have determined that

trademarked terms are, or have become, generic: (i) "where a seller appropriates an existing generic term and claims exclusive rights in it as a 'trademark' of that term," but the term was generic before the seller used it and so the seller never had trademarked rights in it[7] and (ii) "where a seller establishes trademark rights in a term which a majority of the relevant public then appropriates as the name of the product."[8] Horizon Mills Corp. v. QVC, Inc., 161 F. Supp. 2d 208, 213 (S.D.N.Y. 2001). Costco argues that "Tiffany," in the context of ring settings, is an example of the latter circumstance, when "the mark is said to be a victim of 'genericide' and trademark rights may cease." Id.

Even an incontestable or famous mark can become generic and lose protection. Pilates, Inc. v. Current Concepts, Inc., 120 F. Supp. 2d 286, 296 (S.D.N.Y. 2000) (if a mark has become generic it "lacks protection even if it is incontestable"); see also, TCPIP Holding Co., Inc.

---

[7] Harley-Davidson, Inc. v. Grottanelli, 164 F.3d 806, 811 (2d Cir. 1999) is an example of this first situation, where the Court found that the term "hog" had acquired generic meaning to describe motorcycles prior to the trademark claim and so could not achieve full trademark protection.

[8] "Notable examples [of trademarks that have been genericized] include 'aspirin' for acetyl salicylic acid, 'cellophane' for transparent cellulose sheets and films, 'escalator' for a moving stairway, [and] 'Murphy Bed' for a bed that folds into a closet . . . ." Horizon Mills Corp., 161 F. Supp. at 214 (collecting cases). In King-Seeley Thermos Co. v. Aladdin Industries, Inc., the Second Circuit found that the terms "thermos bottle" and "vacuum bottle" had become virtually synonymous and, that because "Thermos" had been genericized, King-Seeley Thermos Company had lost its trademark protection against certain uses of the term. King-Seeley Thermos Co. v. Aladdin Industries, Inc., 321 F.2d 577, 580-81 (2d Cir. 1963) ("[s]ince in this case, the primary significance to the public of the word 'thermos' is its indication of the nature and class of an article rather than as an indication of its source, whatever duality of meaning of word still holds for a minority of the public is of little consequence except as a consideration in the framing of a decree"). Similarly, in Pilates Inc. v. Current Concepts, Inc., 120 F. Supp. 2d 286, 306 (S.D.N.Y. 2000), the court held that despite the plaintiff's "efforts to police its marks and promote the Pilates method," the mark had become generic, at least as it related to service and equipment marks, and thus, the trademark holder could not foreclose others from using the term "Pilates" to describe their services.

v. Haar Communications, Inc., 244 F.3d 88, 93 (2d. Cir 2001) ("[g]eneric marks . . . .are not entitled to any protection against infringement, even if they [are also] famous as marks . . ."). However, widespread use of a mark to describe a product or service, alone, is not enough to render a mark "generic."  See, e.g., Marks v. Polaroid Corp., 129 F. Supp. 243, 270 (D. Mass 1955), aff'd, 237 F.2d 428 (1st Cir. 1956).  Similarly, a term is not deemed generic merely because it may have some significance to the public as the name of an article.  See, e.g., Kraft Foods Holdings, Inc. v. Helm, 205 F. Supp. 2d 942, 946-47 (N.D. Ill. 2002) (internal quotation marks omitted) ("Velveeta®, like Polaroid®, Coca-Cola® and Kodak® are coined words in the English language that conjure up nothing less than images of the respective products associated with each mark," not generic terms).

Partial Genericization

A court may partially cancel or limit a registered trademark if only one use of the trademarked term has become generic.[9]  For example, "a term that is [arbitrary or fanciful] for a particular product may be [generic] for another" and "[a] term may . . . be generic in one market and descriptive or suggestive or fanciful in another."  Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9-10 (2d Cir. 1976) (holding that "Safari," which was an incontestable trademarked term held by Abercrombie, had become a generic term for certain types of clothing, but not when used to refer to boots or shoes).  "Such partial cancellation . . . accords with the

---

[9]    See Horizon Mills Corp., 161 F. Supp. at 213 ("[i]f the registered mark becomes the generic name for less than all of the goods or services for which it is registered, a petition to cancel the registration for only those goods or services may be filed. While formal cancellation proceedings are generally held before the PTO, under 15 U.S.C. § 1119, this Court may also direct the PTO to cancel a mark") (quoting 15 U.S.C.S. § 1064(3)).

rationale by which a court is authorized to cancel a registration, viz to 'rectify' the register by conforming it to court judgments which often must be framed in something less than an all-or-nothing way." Id.[10]  Here, Costco argues that Tiffany's registered mark does not cover the "generic" term "Tiffany setting" and that "Tiffany" can be used to refer generically to a certain type of ring setting.

Test for Genericness

The question of whether a mark is, or has become, generic is generally one of fact, Bristol-Myers Squibb Co.v. McNeil-P.P.C. Inc., 973 F.2d 1033, 1039 (2d Cir. 1992).  The "[t]ypes of evidence to be considered in determining whether a mark is generic include: (1) dictionary definitions; (2) generic use of the term by competitors and other persons in the trade; (3) plaintiff's own generic use; (4) generic use in the media; and (5) consumer surveys." Pilates, Inc., 120 F. Supp. 2d at 297; see also, In re Reed Elsevier Prop. Inc., 482 F.3d 1376, 1378 (Fed. Cir. 2007) (a party may seek to demonstrate the public's understanding of a term through other evidence, including "purchaser testimony, consumer surveys, dictionary definitions, trade journals, newspapers, and other publications").  In support of its argument that "Tiffany" has acquired a generic meaning when used to refer to a type or style of ring setting, Costco offers

---

[10]  See Loctite Corp. v. National Starch and Chemical Corp., 516 F. Supp. 190, 201 (S.D.N.Y. 1981), where the court held that, although "there has been some variation in the public understanding as to what the category designated by the term 'Super Glue' includes (i.e., only cyanoacrylates, as opposed to some other adhesives such as epoxies as well)[,] [s]uch variation does not disturb our conclusion as to the generic character of 'Super Glue' applied to cyanoacrylates."  The court thus found that, at least as when used to refer to a certain type of chemical compound, "Super Glue" was generic, even if it was not generic when used to denote other chemical compounds.  Id.  Furthermore, even if "other terms [were] used to denominate the category of cyanoacrylate adhesives" like "instant glue" and "ten second glue," which "have been used to some extent in addition to 'Super Glue,'" those synonymous terms did not change the finding that "Super Glue" was generic.  Id.

excerpts from dictionary definitions of "tiffany" and "Tiffany setting," a preliminary report by a lexicographer, evidence of generic use of the term "Tiffany setting" by jewelry manufacturers, retailers and consumers, and examples of the generic use of the term "tiffany setting" in publications.  While none of the evidence is by any means conclusive of the proposition advanced by Costco it is, taken together and read in the light most favorable to Costco in this pre-discovery context, sufficient to frame a genuine factual dispute as to whether the terms "Tiffany" and/or "Tiffany Setting" have a primarily generic meaning in the minds of members of the general public in the context of ring settings.

Accordingly, Tiffany's motion to dismiss the Counterclaim must be denied.

CONCLUSION

For the foregoing reasons, Tiffany's motion for summary judgment dismissing Costco's Counterclaim is denied, without prejudice to renewal following discovery.

This Memorandum Order resolves docket entry number 13.  The parties are instructed to contact Magistrate Judge Freeman's Chambers promptly for settlement purposes and to update the discovery schedule, if necessary, in light of this Memorandum Order.  The Final Pretrial Conference in this case is currently scheduled for **Friday, June 27, 2014, at 2:00 p.m.**

SO ORDERED.

Dated: New York, New York
       January 17, 2014

                                          /S
                                 LAURA TAYLOR SWAIN
                                 United States District Judge