UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

TIFFANY AND COMPANY &
TIFFANY NJ (LLC),

    Plaintiffs,

  -v-            No.  13CV1041-LTS-DCF

COSTCO WHOLESALE
CORPORATION,

    Defendant.

--------------------------------------------------------x


<u>OPINION AND ORDER</u>


APPEARANCES:


DICKSTEIN SHAPIRO LLP
By:  Jeffrey A. Mitchell, Esq.
  Don Abraham, Esq.
  Judith R. Cohen, Esq.
1633 Broadway
New York, NY 10019-6708


*Attorneys for Plaintiffs Tiffany and Company
& Tiffany NJ (LLC)*


FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
By:  James W. Dabney, Esq.
  Richard M. Koehl, Esq.
  Emma L. Baratta, Esq.
  Naz E. Wehrli
One New York Plaza
New York, NY 10004


*Attorneys for Defendant Costco Wholesale
Corporation*

HUGHES HUBBARD & REED LLP
By: James W. Dabney, Esq.
One Battery Park Plaza
New York, NY 10004-1482


*Attorneys for Defendant Costco Wholesale
Corporation*

LAURA TAYLOR SWAIN, United States District Judge

Plaintiffs/Counterclaim-Defendants Tiffany and Company ("Tiffany and Co.") and Tiffany (NJ), LLC (collectively, "Tiffany"), bring this action against Defendant/ Counterclaim-Plaintiff Costco Wholesale Corporation ("Costco"), asserting claims under both the Lanham Act and New York state law for trademark infringement, dilution, counterfeiting, unfair competition, injury to business reputation, false and deceptive business practices and false advertising.  Costco has asserted a counterclaim against Tiffany, seeking dismissal of Tiffany's complaint with prejudice, and requesting a declaratory judgment that Tiffany's federal trademark registrations are invalid because they aim to exclude others from using the word "Tiffany" generically to describe a distinctive type of ring setting.  Costco asks that such registrations be modified to indicate that "Tiffany" is a generic term for a type of setting and, furthermore, seeks a declaration that Costco's prior use of the word has not infringed Tiffany's rights.  The Court has jurisdiction of this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 and 1367(a).

Currently pending before the Court are the parties' cross-motions for summary judgment.  Tiffany seeks summary judgment with respect to Costco's liability for trademark infringement and counterfeiting, dismissal of Costco's fair use affirmative defense and dismissal of Costco's counterclaim that the "Tiffany" mark has become generic.  Costco seeks summary judgment striking: Tiffany's claims for an accounting of profits earned on the sales of various categories of goods; Tiffany's punitive damages claim; any claims arising from certain sales that Costco alleges are time-barred; Tiffany's claim for monetary recovery based on its trademark dilution claim; and Tiffany's demand for a jury trial.

The Court has considered the parties' submissions carefully.  For the following reasons, the Court grants Tiffany's motion in its entirety, and grants in part and denies in part

Costco's motion.

I.

B<span style="font-variant:small-caps">ACKGROUND</span>[1]

In light of the prior motion practice in this case, the Court provides only a brief summary of the relevant facts.[2]

Tiffany holds 97 separate trademarks relating to the "Tiffany" company name. (Pl. Local Civil Rule 56.1 Statement ("Pl. 56.1 St.") ¶ 4.)  Among the trademarks relevant to this case is Registration No. 1,228,409, for the word "Tiffany" in International Class 14, which was first used in commerce in 1868.  (Id. ¶¶ 5-6.)  This mark covers "decorative art objects made in whole or in part of precious or semiprecious metals – namely, figurines, boxes, bowls, trays, and flowers, jewelry, semi-precious stones, and natural and cultured pearls" in Class 14. (Id. ¶ 7.)  Tiffany also holds Registration No. 133,063, for the stylized mark "Tiffany" in U.S. Class 28, which covers "jewelry for personal wear, not including watches, precious stones, and flat and hollow ware made of or plated with precious metal," and was also first used in commerce in 1868.  (Pl. 56.1 St. ¶¶ 9–11.)  Tiffany claims that it calls one of the styles of engagement rings that it sells, a solitaire diamond set with six prongs, a "Tiffany® Setting" ring.  (Id. ¶¶ 18–20.)

In November 2012, a customer alerted Tiffany that she had observed rings at a Huntington Beach, California Costco that she believed were being advertised as Tiffany rings. (Compl. at ¶ 4.)  Tiffany subsequently initiated an investigation of the store, which revealed a

---

[1]   Facts recited as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there is no non-conclusory contrary factual proffer.  Citations to the parties' respective Local Civil Rule 56.1 Statements ("Def. 56.1 St." or "Pl. 56.1 St.") incorporate by reference the parties' citations to underlying evidentiary submissions.

[2]   See Tiffany and Company & Tiffany NJ (LLC) v. Costco Wholesale Corporation, 994 F. Supp. 2d 474 (S.D.N.Y. 2014) (Docket Entry No. 71).

case containing an engagement ring displayed next to a sign reading: "639911 - Platinum Tiffany .70 VS2, 1 Round Diamond Ring - 3199.99," and a second ring displayed next to a sign reading: "605880 - Platinum Tiffany VS2.1 1.00CT Round Brilliant Solitaire Ring - 6399.99." (Compl. at ¶ 5.)  Neither of these rings was manufactured or licensed by Tiffany.  (Id. at ¶ 6.) Out of concern that its marks were being infringed in multiple stores, Tiffany contacted Costco in December 2012 and secured a commitment that Costco would remove references to Tiffany from its display case signs.  (Id. at ¶ ¶ 8, 10; Memorandum in Support of Costco's Motion for Partial Summary Judgment and For an Order Striking Jury Demand ("Costco Memo") at p. 10, ¶ 33.)  In addition, Costco sent a letter to all customers who had purchased rings from stores where display cases included references to Tiffany, inviting them to return their rings for full refunds if they were unsatisfied.  (Coscto Memo at p. 11, ¶ 35 and Ex. 4.)

Tiffany commenced this litigation by filing a complaint in February 2013.  Costco filed its answer and counterclaim in March 2013.  Both parties have expended considerable time and resources marshaling testimony and analysis purporting to demonstrate either the unquestionable strength of the Tiffany mark (Tiffany), or the ubiquity of "Tiffany" as a generic descriptor (Costco).  In April 2013, Tiffany moved for summary judgment seeking dismissal of Costco's genericism counterclaim.  In a Memorandum Opinion and Order dated January 17, 2014 ("Jan. 2014 Opinion," Docket Entry No. 71), this Court denied Tiffany's motion without prejudice to renewal, holding that genuine factual disputes existed as to the meaning of the terms "Tiffany" and "Tiffany setting" in the minds of members of the general public.  (See Jan. 2014 Opinion.)  After several months of additional discovery, the parties filed the instant cross-motions for summary judgment.

II.

<u>Discussion</u>

The pending motions are brought pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.  Under Rule 56(a), summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden of demonstrating the absence of a material issue of fact, <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986), and the court must be able to find that, "'after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party.'"  <u>Marvel Entertainment, Inc. v. Kellytoy (USA), Inc.</u>, 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (quoting <u>Heublein v. United States</u>, 996 F.2d 1455, 1461 (2d Cir. 1993)).  A fact is considered material "if it might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Holtz v. Rockefeller & Co. Inc.</u>, 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and citations omitted).  "[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist."  <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010) (quoting <u>Fletcher v. Atex, Inc.</u>, 68 F.3d 1451, 1456 (2d Cir.1995)).  When considering cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  <u>Schwabenbauer v. Board of Educ. of City School Dist. of City of Olean</u>, 667 F.2d 305, 314 (2d Cir. 1981).

A.  Tiffany's Motion For Summary Judgment

    1.  Lanham Act Infringement Claim

In order to succeed on its infringement claim under the Lanham Act, Tiffany must demonstrate both: (1) that it holds a mark that is entitled to protection; and (2) that Costco's use of that mark is likely to cause consumer confusion.  See Sports Auth. Inc.  v. Prime Hospitality Corp. 89 F.3d 955, 960 (2d Cir. 1995).  "Summary judgment in a trademark action may be appropriate . . . where the undisputed evidence would lead only to one conclusion as to whether confusion is likely."  Cadbury Beverages, Inc. v. Cott Corp., 73 F.3d 474, 478 (2d Cir. 1996).

    *a.  Validity of the Tiffany Mark*

The Lanham Act provides that registration of a mark is regarded as "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce."  15 U.S.C.S. § 1115 (LexisNexis 2006); see also Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999) ("[a] certificate of registration with the PTO is prima facie evidence that the mark is registered and valid (i.e., protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce"); American Ort, Inc. v. Israel, No. 07CV2332-KMK, 2007 WL 2049733, at *4 (S.D.N.Y. July, 17, 2007) ("the fact that the USPTO accepted [a] mark for registration creates a presumption that the mark is valid.").  A defendant contesting the validity of a registered mark bears the burden of demonstrating either that the mark is invalid or that the use of its own mark is not likely to confuse consumers.  See Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 15 F. Supp. 2d 389, 394 (S.D.N.Y. 1998).

It is uncontested that Tiffany owns "97 separate trademarks" relating to the

Tiffany company name.  (Pl. 56.1 St.¶ 4.)  Tiffany has submitted a list of all of its trademark

registrations, which include "Tiffany," "Tiffany & Co." and "T. & Co."  (See Declaration of

Jeffrey A. Mitchell in Support of Plaintiffs' Motion for Partial Summary Judgment of Liability

and to Dismiss Affirmative Defenses and Counterclaim ("Mitchell Decl."), Ex. 4.)  Among the

marks most relevant to this case is Registration No. 1,228,409, for the word "Tiffany" in

International Class 14, which was first used in commerce in 1868.  (Id. at p. 4.; Mitchell Decl.,

Exs. 5-6.)  Costco does not challenge the validity of these registrations with admissible evidence,

instead choosing to press the argument that the term "Tiffany" has become generic in the context

of a specific style of pronged ring setting.  This Court has previously held that it "does not

understand such contentions to constitute denials that Tiffany at this point has the registered

trademarks to which Tiffany's contentions refer."  (Jan. 2014 Opinion at n. 4.)  Costco has

proffered no additional evidence that raises a material fact regarding Tiffany's ownership of the

mark at issue here.  Thus, Tiffany has made a prima facie showing of the mark's validity,

satisfying the first prong of the trademark infringement inquiry.

   *b.  Likelihood of Consumer Confusion*

    In evaluating the likelihood of consumer confusion, courts in the Second Circuit

adhere to the test articulated in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir.

1961) ("Polaroid"), in which the court laid out a number of factors by which the likelihood of

confusion is measured.  These factors include: the strength of the Plaintiff's mark; the degree of

similarity between the Plaintiff's and Defendant's marks; the proximity of the products or

services in the marketplace; evidence of actual confusion; the Defendant's good faith in adopting

its own mark; the quality of the defendant's product; and the sophistication of the relevant

population of consumers.  See Polaroid at 495.  The Court must decide whether Costco has

raised issues of material fact with respect to any of these factors and, if it finds that Costco has

done so, must hold that Tiffany has not demonstrated a likelihood of confusion as a matter of

law.  See Cadbury Beverages, 73 F.3d at 478 ("If a factual inference must be drawn to arrive at a

particular finding on a Polaroid factor, and if a reasonable trier of fact could reach a different

conclusion, the district court may not properly resolve that issue on summary judgment.").

       Based on the evidence before it, the Court finds that Costco has proffered no

evidence that raises a disputed issue of material fact with respect to any of the Polaroid factors.

In light of this conclusion, the Court finds that Tiffany has demonstrated a likelihood of

confusion and will grant Tiffany's motion for summary judgment with respect to Costco's

liability for trademark infringement.

### (i).   Strength of the "Tiffany" Mark

       Tiffany has proffered uncontroverted evidence demonstrating the strength of its

mark.  Most significant is a report by Bain & Co. which notes that Tiffany "claims the largest

share of the female mind in the U.S." with respect to name recognition in jewelry brands.  (See

Mitchell Decl. Ex. 117.)  Furthermore, the Bain report notes that, when respondents in the

United States were asked "[w]hat brands come to mind when you think about diamond jewelry?"

Tiffany was at or near the top of the list.  (See id.)  A Deutsche Bank report attached to the

Declaration of James W. Dabney ("Dabney Decl.") in support of Costco's summary judgment

motion notes that "Tiffany is one of the strongest luxury brands," and that "the strength of the

brand, the positioning, [and] the strong control of distribution make Tiffany truly comparable to

luxury goods peers."  (Dabney Decl., Ex. 12.)  Even one of Costco's experts, when asked about

the Bain report, admitted that "Tiffany has very strong brand-name recognition in that area [of

diamond jewelry], and I'm not surprised that's what Bain finds."  (See Mitchell Decl., Ex. 7,

Deposition of Bradford Cornell.)  In addition, Tiffany cites to several cases from this district in which courts have recognized the strength of the Tiffany brand.  See, e.g., Tiffany (NJ) Inc. v. eBay, Inc., 576 F. Supp. 2d 463, 471 (S.D.N.Y. 2008) ("Over its 170-year history, Tiffany has achieved great renown as a purveyor of high quality and luxury goods under the TIFFANY Marks . . . including jewelry, watches, and home items such as china, crystal, and clocks . . . The TIFFANY Marks are indisputably famous, and are a valuable asset owned by Tiffany") (reversed in part on other grounds, Tiffany (NJ) Inc. v. eBay, Inc., 600 F.3d 93 (2d Cir. 2009)).

Although Costco asserts that the "plain word Tiffany . . . is 'weak' in many ways," it has proffered no reliable evidence on this point.  (See Costco's Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment "As to Liability" ("Costco Opp. Memo.") at p.16.)  Costco's argument appears to be based, in part, on the theory that "Tiffany" exists both as a trademark and as a generic descriptor for a particular type of ring setting.  To that end, Costco offers dictionary entries that purport to demonstrate use of the word Tiffany in a descriptive manner.  (See id., Exs. 1-2.)  However, Costco fails to put forth any affirmative evidence that demonstrates that "Tiffany," when used as a mark, is not strong, nor any evidence that any potential generic use of "Tiffany" has undermined the strength of the Tiffany mark.  Thus, Costco has failed to raise a material issue of fact with respect to the strength of the Tiffany mark.

*(ii).  Similarity of the Marks*

The Second Circuit has held that, "[i]n determining whether two marks are confusingly similar, we must appraise the overall impression created by . . . the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers."  Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43, 47 (2d Cir. 2000) (internal

quotation marks and citation omitted).  "[I]n determining the similarity of marks in an

infringement action, a court must examine the visual appearance of each mark in the context of

its use." Jim Beam Brands Co. v. Beamish & Crawford Ltd., 937 F.2d 729, 735 (2d Cir. 1991).

Here, Tiffany has proffered photographs of displays from Costco tending to demonstrate that the

word "Tiffany" was displayed on signs next to rings in a manner similar to the way that Costco

would display the manufacturer or source of other types of goods (i.e., a Sony television or a

Nikon camera).  (See Mitchell Decl., Exs. 46, 55.)  Furthermore, Tiffany has provided proof of

its ownership of the "Tiffany" word mark (see id., Exs. 4-6), which is identical to the word as

Costco has utilized it in display case signs.  Costco has not proffered any evidence that calls into

question the similarity of the marks, and offers no responsive legal argument, and thus has failed

to raise an issue of material fact with respect to this factor.

### (iii).  Proximity of the Products

The proximity of products factor "focuses on whether the two products compete

with each other.  To the extent goods (or trade names) serve the same purpose, fall within the

same general class, or are used together, the use of similar designations is more likely to cause

confusion . . . In assessing this factor, the court may consider whether the products differ in

content, geographic distribution, market position, and audience appeal." Savin Corp. v. Savin

Group, 391 F.3d 439, 458 (2d Cir. 2004) (internal quotation marks and citations omitted).  It is

clear that the products are in competition with each other, and that they are nearly identical in

"content."  Tiffany has provided several emails and photographs demonstrating Costco's efforts

to copy Tiffany designs, as well as side-by-side images of Tiffany and Costco rings which

highlight the similarity of the products.  (See Mitchell Decl., Exs. 66-78, 80.)  Tiffany has also

provided an email from a Costco.com employee in which she notes her desire that the Costco

ring boxes have "more of the Tiffany or upscale look."  (See Mitchell Decl., Ex. 44.)  There can

be no question that the Tiffany and Costco products are in competition with each other.  Once

again, Costco has proffered no evidence that calls into question the proximity of the products,

offers no legal argument on this point, and fails to raise an issue of material fact with respect to

this factor.

### (iv).  *Actual Confusion*

While "actual confusion need not be shown to prevail under the Lanham Act,"

Savin Corp., 391 F.3d at 459 (internal quotation marks and citation omitted), "it is self evident

that the existence of actual consumer confusion indicates a likelihood of consumer confusion."

Virgin Enterprises Ltd. v. Nawab, 335 F.3d 141, 151 (2d Cir. 2003); see also

Morningside Group Ltd. v. Morningside Capital Group, L.L.C., 182 F.3d 133, 141-42 (2d Cir.

1999) ("actual confusion is often the most telling indication that confusion is likely.").

In support of its actual confusion argument, Tiffany has proffered portions of

deposition testimony from six customers, each alleging that he or she was confused by Costco's

signage.  Maria Bentley, for instance, testified that she was brought to tears when the diamond

fell out of the ring she purchased at Costco because she believed that she had purchased a

genuine Tiffany ring.  (See Mitchell Decl., Ex. 7, Deposition of Maria Bentley.)  When Karina

Roberts was asked if she believed she had purchased a Tiffany ring, her response was

"[a]bsolutely."  (See Mitchell Decl., Ex. 7, Deposition of Karina Roberts.)  And when Joseph

Bentley was asked if he left his local Costco thinking that he had purchased a Tiffany ring at a

good price, he replied "[y]es, I did."  (See Mitchell Decl., Ex. 7, Deposition of Joseph Bentley.)

(See also Mitchell Decl., Ex. 7, Depositions of Pamela Miller, Andrew Pangelinan and Micah

Day.)

Tiffany also relies heavily on the results of the consumer confusion survey and report created by its expert, Dr. Jacob Jacoby.  (See Declaration of Dr. Jacob Jacoby ("Jacoby Decl."), Ex. B.)  The survey purports to answer the question of whether "Costco's use of the name Tiffany on display tags placed adjacent to rings [was] likely to cause marketplace confusion?"  (Jacoby Decl. ¶ 3.)  A total of 944 people participated in the survey, which was administered via the internet.  (Id., Ex. B at p. 7.)  Of these 944 individuals, 606 were Costco patrons who said that they or their significant others would consider buying a diamond engagement ring costing at least $2,500 from Costco.  (Id.)  All respondents were shown a photo of a diamond engagement ring together with a tag reading "605880 - PLATINUM TIFFANY VS2.1 1.00 CT ROUND BRILLIANT SOLITAIRE RING - 6399.99."  (Id.)  Some were shown this photo in isolation, while others viewed it after seeing photos of other branded items sold by Costco.  (Id.)  Respondents were then asked a series of questions to determine whether, and to what extent, they were likely to be confused as to the source or origin of the subject rings.  (Id.)  Based on the responses, Dr. Jacoby concluded that "more than two out of five prospective purchasers of diamond engagement rings at Costco were likely confused into believing that Tiffany & Co. was the source of the rings."  (Id. at p. 9.)  Tiffany argues that this survey, along with the 6 customer depositions that it has offered, conclusively establishes the existence of consumer confusion.

In an attempt to refute Tiffany's allegations of actual confusion, Costco endeavors to call into question the reliability of Dr. Jacoby's report.  Costco first takes aim at Dr. Jacoby's credentials, highlighting a number of cases in which his studies have been excluded. See, e.g., Malletier v. Dooney & Bourke, Inc., 525 F. Supp. 2d 558, 569-70 (S.D.N.Y. 2007) ("it is clear that Dr. Jacoby's report and testimony on the issues of both trademark confusion and

dilution are unreliable"); see also Kargo Global, Inc. v. Advance Magazine Publishers, Inc., No.

06CV0550-JFK, 2007 WL 2258688, at *12 (S.D.N.Y. Aug. 6, 2007) ("the Jacoby Survey is so

flawed that its probative value is substantially outweighed by the risk of unfair prejudice and the

potential that the jury will be misled or confused"); Weight Watchers Int'l, Inc. v Stouffer Corp,

744 F. Supp. 1259, 1272 (S.D.N.Y. 1990) ("I accord no weight to defendants' survey, which was

designed to reveal no confusion no matter how confusing the ad at issue actually was.").

       Costco also presents declarations of its own expert, Dr. Russell S. Winer, that

assert that Dr. Jacoby's findings are unreliable because Dr. Jacoby should have surveyed a

different population of consumers and structured his prompts differently.  (See Second

Declaration of Russell S. Winer ("Winer Decl.") and Exs. 1-2, Docket Entry No. 144.)  In his

declaration, Dr. Winer asserts that Dr. Jacoby should have focused his survey only on those who

had a "present purchase interest in buying a diamond ring," rather than on Costco customers who

would consider purchasing an expensive diamond ring from Costco.  (Winer Decl. ¶ 10.)  Dr.

Winer asserts that, in his opinion, the population surveyed by Dr. Jacoby could not have been "a

group whose perceptions provided any valid or reliable predictor of past or future Costco

diamond ring purchaser beliefs."  (Id.)  Dr. Winer further asserts that Dr. Jacoby's study was not

designed in a way that approximated actual marketplace conditions (id. ¶ 13) and that it utilized

"artificial, contrived and biasing" stimuli.  (Id. ¶ 14.)  Because of this, Dr. Winer states, Dr.

Jacoby's study "contain[s] fatal flaws" and "d[oes] not provide any valid basis for concluding

anything about past or future Costco engagement ring buyer beliefs."  (Id. ¶¶ 14-15.)

       Dr. Winer's declarations do not demonstrate, and Costco does not make any

serious argument, that Dr. Jacoby's survey fails to meet the threshold admissibility requirements

established for expert testimony by Federal Rule of Evidence 702.  (See Fed. R. Evid. 702.)

Rather, Dr. Winer's assertions, however dramatically phrased, consist only of his own competing beliefs as to what would make for an appropriate survey.  His report thus goes to the weight, rather than the admissibility, of Tiffany's consumer confusion evidence.  Costco has not proffered its own survey or any other evidence of lack of consumer confusion.  Furthermore, Costco does nothing to rebut the deposition testimony of the six customers offered by Tiffany that provide concrete evidence of consumer confusion.  As Tiffany points out, Costco has offered not offered a single piece of evidence affirmatively demonstrating that consumers were <u>not</u> confused by its use of the Tiffany word mark in display case signs, choosing instead to try to undermine the credibility of Dr. Jacoby's report.  Costco's proffer is insufficient to raise an issue of material fact with respect to the actual confusion factor, and Tiffany's evidence of consumer confusion stands unrebutted.

> *(v).  Good Faith*

When analyzing the good faith factor of the <u>Polaroid</u> test, a court must consider "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product."  <u>Lang v. Retirement Living Pub. Co., Inc.</u>, 949 F.2d 576, 583 (2d Cir. 1991) (internal quotation marks and citation omitted).  "[W]here the allegedly infringing mark is identical to the registered mark, and its use began subsequent to the plaintiff's trade-mark registration, the defendant must carry the burden of explanation" as to its use of the mark.  <u>Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.</u>, 411 F.2d 1097, 1101 (2d Cir. 1969).  Evidence of intending to compete by imitating the successful features of another's product does not necessarily indicate bad faith.  <u>See</u> <u>Nora Beverages, Inc. v. Perrier Group of America, Inc.</u>, 269 F.3d 114, 124 (2d Cir. 2001).  Rather, good faith turns on a showing of intent to deceive purchasers as to the source of a product.  <u>See</u>

Nora Beverages, 269 F.3d at 125.

Tiffany has marshaled several pieces of evidence that it contends demonstrate Costco's bad faith and intent to deceive the relevant purchasing public.  Tiffany has submitted an email from Jodi Ellis, a Costco.com employee, in which she notes that she would like Costco's jewelry boxes to have a more "Tiffany or upscale look."  (Mitchell Decl., Ex. 44.)  Tiffany also cites the deposition of Jennifer Murphy, an inventory control specialist and jewelry buyer for Costco, in which she acknowledges that she received an email from a customer expressing confusion over the source of a Costco ring, but took no action to alleviate that confusion by making changes to the Costco's jewelry case signage.  (See Mitchell Decl., Ex. 7, Deposition of Jennifer Murphy at 74:5-75:12.)  Tiffany argues that Murphy's testimony is indicative of Costco's blatant efforts to copy Tiffany designs.  (See id. at 46:25-47:21.)  In her deposition, Murphy also admits to having seen an email from a fellow Costco employee in which the employee stated that she "love[d] how [the vendor] just puts [his own] tags on the Tiffany & Co. pieces," sold to Costco, and Murphy admits that she took no action to put a stop to this practice. (Id. at 44:18-45:21.)  Tiffany also highlights a series of emails and photographs that demonstrate Costco's explicit efforts to copy Tiffany's designs by making references to Tiffany designs and sharing links to Tiffany's website.  (See Mitchell Decl., Exs. 66-78.)  Taken together, Tiffany alleges, this evidence indicates that Costco intended to deceive consumers with regard to the source of its jewelry, demonstrating Costco's bad faith in adopting the Tiffany mark.

Costco responds with the argument that it has not adopted the Tiffany mark at all, but simply utilized the generic term "Tiffany" to describe a particular type of pronged diamond setting on the unbranded rings that it sells.  (See Costco Opp. Memo at p. 21.)  To that end, Costco has submitted multiple dictionary entries, as well as an entry from a publication called

The Jeweler's Manual, which purport to show the viability of "Tiffany" as a descriptive term.

(See Costco Opp. Memo, Exs. 1-3.)  Further, Costco has submitted a sworn affidavit from Harjit

Grewall, a Costco diamond buyer, in which he indicates that "[i]n communications with

wholesale vendors of diamonds and diamond rings, the word Tiffany is routinely used in its

dictionary definition sense to refer to a type or style of pronged ring setting."  (Declaration of

Harjit Grewall ¶ 2.)  Mr. Grewall also states that "[i]nformation presented in signs . . . including

setting style information, is generally taken from vendor quote sheets that Costco receives from

vendors."  (Id. ¶ 7.)  Costco has also proffered the Declaration of Megghan Haruff, an Assistant

General Merchandise Manager at Costco, who also states that "the content of Costco in-store

jewelry case display signs was prepared . . . based on item descriptions received from Costco

vendors."  (See Declaration of Megghan Haruff ¶ 9.)  By asserting that it extracts the word

"Tiffany" from vendor-supplied information where it is used in a purely descriptive sense,

Costco attempts to raise an issue of fact with regard to its intent to adopt "Tiffany" as a mark,

which in turn would raise an issue of fact regarding Costco's intent to mislead consumers and

whether it has exhibited bad faith in adopting the Tiffany mark.

   Despite Costco's arguments to the contrary, the Court finds that, based on the

record evidence, no rational finder of fact could conclude that Costco acted in good faith in

adopting the Tiffany mark.  Although the Grewell and Harruff declarations purport to

demonstrate that Costco employees merely pulled "Tiffany" from vendor-supplied quote sheets

and thus acted in good faith in reproducing that mark on display case signs, Tiffany has provided

compelling evidence demonstrating that Costco was concurrently requesting that its vendors

copy Tiffany products, that Costco employees were aware of vendors' efforts to do so, and that

Costco employees took no action to put a stop to this.  In essence, Costco urges the Court to find

that Costco jewelry buyers used the word "Tiffany" in a generic sense when communicating with vendors, while at the same time asking those vendors to copy Tiffany & Co. designs, and that signage incorporating the word "Tiffany" on the resulting merchandise was nothing more than clerical duplication of a generic reference from an invoice.  Such a conclusion is untenable in light of the evidentiary record.  The Court therefore finds that no reasonable finder of fact could reach the conclusion that Costco acted in good faith when it used the Tiffany mark in its display case signs.

### (vi).  *Quality of the Defendant's Product*

The Second Circuit has held that "[t]his factor is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality."  Arrow Fastener Co., Inc. v. Stanley Works, 59 F.3d 384, 398 (2d Cir. 1995).  Tiffany has proffered substantial evidence in support of its position on this factor.  First, it points to the deposition of customer Maria Bentley, who notes that she cried when the diamond fell out of her Costco ring because she believed that she had purchased a Tiffany ring.  (See Mitchell Decl., Ex. 7, Bentley Deposition 9:19-24.)  Tiffany also proffers quality control documents which detail its comprehensive standards and specifications, both for diamond quality and jewelry manufacturing.  (See Mitchell Decl., Exs. 81-86.)  In addition, Tiffany provides the deposition testimony of Andrew Hart, senior vice president of diamonds and gemstones for Tiffany, in which he speaks of the company's comprehensive quality standards and efforts to make sure the "highest quality, most beautiful diamonds," are sold by Tiffany.  (Mitchell Decl., Ex. 7, Deposition of Andrew Hart 111:3-1113:2.)  Further, Tiffany provides the deposition testimony of Cecilia Gardner, the CEO and general counsel of the Jeweler's Vigilance Committee, an organization that helps retailers remain in compliance with

advertising and manufacturing requirements, in which she notes that Tiffany is a member of the committee while Costco is not, and that Costco would need to remedy its flawed appraisal techniques in order to become a member.  (See generally Mitchell Decl., Ex. 7, Deposition of Cecilia Gardner.)  Finally, Tiffany provides the deposition testimony of Lisa Switzer, a quality control gemologist at Costco, who admits to having no jewelry appraisal certifications.  (See generally Mitchell Decl., Ex. 7, Deposition of Lisa Switzer.)  All of this evidence, which is uncontroverted, demonstrates the superior quality of Tiffany products, the rigorous quality control techniques that Tiffany employs, and the lack of any equivalent level of quality control on Costco's part.  This evidence clearly shows that Tiffany's reputation could be compromised by Costco's sale of inferior rings under the Tiffany mark.  No material issues of fact exist with respect to this factor of the Polaroid analysis.

### (vii).  Sophistication of the Relevant Population of Consumers

A court evaluating the sophistication of the relevant consumer population must decide whether "numerous ordinary prudent purchasers would likely be misled or confused as to the source of the product in question because of the entrance in the marketplace of [Defendants'] mark."  Savin Corp., 391 F.3d at 461.  It is generally recognized that "the likelihood of confusion may decrease as the sophistication of the relevant purchasers increases," and "[t]he greater the value of an article the more careful the typical consumer can be expected to be."  Manhattan Industries, Inc. v. Sweater Bee by Banff, Ltd., 627 F.2d 628, 631 (2d Cir. 1980) (internal quotation marks and citation omitted).

In order to discern the pool of consumers that Tiffany considers relevant, the Court looks to Dr. Jacoby's consumer confusion report.  In collecting the data for his report, Dr. Jacoby administered his survey to a population of 944 men and women between the ages of 21-

69 who identified themselves as individuals who "would consider buying a diamond engagement ring at Costco." (Jacoby Decl., Ex. B at p. 7.) Tiffany has proffered no other evidence on the issue of consumer sophistication.

In opposition, Costco claims that "the parties [] dispute the extent to which engagement ring buyers exercise care when choosing an engagement ring" (Costco Opp. Memo at pp. 21-22), and that Tiffany has disregarded the fact that the act of purchasing an engagement ring is a "high involvement" one in which consumers "will be most discriminating . . . and [which will be made] carefully and deliberately." J.R. Wood & Sons, Inc. v. Reese Jewelry Corp., 278 F.2d 157, 159 (2d Cir. 1960). This point is illustrated by the Declaration of Dr. Russell Winer, in which Dr. Winer asserts that Dr. Jacoby failed to survey the appropriate consumer population, because the individuals he surveyed did not necessarily have a "present purchase interest in buying a diamond ring," a quality that Dr. Winer considers essential to a proper subject population. (Winer Decl. ¶ 10.) According to Dr. Winer, "[p]eople with present purchase interest in buying a diamond ring differ importantly in terms of subject matter knowledge and familiarity with the relevant vocabulary from those who do not have present purchase interest in buying a diamond ring." (Winer Decl. ¶ 10.) Dr. Winer contends that the population surveyed by Dr. Jacoby was therefore not "a group whose perceptions provided any valid or reliable predictor of past or future Costco diamond ring purchaser beliefs." (Id.) From Costco's perspective, Tiffany would have to have surveyed a more sophisticated and informed pool of purchasers in order to appropriately gauge consumer confusion.

Once again, Costco's argument goes towards the weight that Tiffany's evidence should be accorded, and fails to provide competing affirmative evidence regarding the relevant population of consumers. Dr. Winer's criticism of Dr. Jacoby's survey is just that: criticism. It

does not provide any evidence that contravenes that Tiffany's proffer, which is corroborated by evidence that actual ring buyers were in fact confused by Costco's signage. Thus, Costco has failed to raise a genuine issue of material fact with regard to the sophistication of the relevant consumer population.

### c. Conclusion as to Lanham Act Infringement Liability

Because Tiffany has proffered credible evidence establishing both: (1) that it owns a validly registered mark; and (2) that Costco's use of that mark is likely to cause confusion, and because Costco has failed to proffer contrary evidence that raises a disputed issue of fact with respect to either prong of the Lanham Act infringement analysis, the Court grants Tiffany's motion for summary judgment insofar as it seeks a finding of Costco's liability for trademark infringement.[3]

### 2. Lanham Act Counterfeiting Claim

The Lanham Act defines a counterfeit mark as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C.S. § 1127 (LexisNexis 2006). The statute provides that "any person who uses in commerce a counterfeit of a registered mark in connection with the sale, offering for sale or advertising of any goods in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable to the registrant of the mark." 15 U.S.C.S. § 1114(1)(a) (LexisNexis 2006). The use of such a mark must be "likely to cause confusion, to cause mistake, or to deceive." U.S. v.

---

[3]   "Under New York law, 'the elements necessary to prevail on causes of action for trademark infringement . . . mirror the Lanham Act claims.'" Lopez v. Gap, Inc., 883 F. Supp. 2d 400, 430 (S.D.N.Y. 2012) (quoting Lorillard Tobacco Co. v. Jamelis Grocery, Inc., 378 F.Supp.2d 448, 456 (S.D.N.Y.2005)). Therefore, the Court also grants Tiffany's motion for summary judgment insofar as it seeks a finding of liability with respect to its state law infringement claims.

Milstein, 401 F.3d 53, 62 (2d Cir. 2005) (internal quotation marks and citation omitted).  Courts

in this district have noted that while there is a dearth of case law defining the "substantially

indistinguishable" standard, "it must, at the very least, [] be closer than the traditional standard

for infringement, 'colorable imitation.'"  GMA Accessories Inc. v. BOP, LLC, 765 F. Supp. 2d

457, 471 (S.D.N.Y. 2011).  Furthermore, "[t]o establish counterfeiting in the case of a word

mark it cannot be enough that one word used in the allegedly offending mark is the same, with

no reference to font, color, typeface or context."  Id. at 472.

      In support of the counterfeiting argument, Tiffany once again points the Court to

a number of exhibits, including the aforementioned emails and photographs, which tend to

demonstrate Costco's efforts to copy Tiffany designs.  (Mitchell Decl., Exs. 66-78.)  Tiffany also

emphasizes Costco's placement of the Tiffany mark in the display case signs, submitting

exhibits that show that the word "Tiffany" was positioned on those signs where the brand

manufacturer's name would generally be for other products.  (See Mitchell Decl., Exs. 46, 55.)

Tiffany also offers the deposition testimony of Costco Executive Vice President of

Merchandising Douglas Schutt, in which he states that "generally we like to have the brand name

of the product on the first line of the sign . . . ."  (Mitchell Decl., Ex. 7, Deposition of Douglas

Schutt, 20:11-21:2.)  Tiffany argues that the purposeful placement of the Tiffany mark on the

display case signs, as well as the proximity of these signs to rings that are essentially copies of

Tiffany's, sufficiently establish counterfeiting.  (See Mitchell Decl., Ex. 80.)

      In response to this argument, Costco denies that its use of "Tiffany" has been

"spurious . . . [or] '[d]eceptively suggesting an erroneous origin; fake.'"  GMA Accessories, 765

F. Supp. 2d at 472 (quoting Black's Law Dictionary).  Notably, Costco offers the Declaration of

Donald Palmieri with an accompanying report.  Mr. Palmieri, an appraiser who is president of

the Gem Certification and Assurance Lab, assists government agencies in investigating the production and sale of counterfeit goods.  (See generally Declaration of Donald A. Palmieri ("Palmieri Decl."), Docket Entry No. 133 and Ex. 1.)  In his declaration, Mr. Palmieri notes that "the subject rings had non-Tiffany & Co. Trademarks inscribed on their inner surfaces, were delivered in non-Tiffany & Co. packaging with non-Tiffany & Co. paperwork, and were not 'counterfeit' in any sense in which [he has] ever heard the term 'counterfeit' used."  (Palmieri Decl. ¶ 4.)  Palmieri states that, if Costco intended to produce counterfeit goods, the rings would have had the Tiffany name stamped on them, would have come in Tiffany packaging, and would have been accompanied by false Tiffany paperwork.  (Id., Ex. 1 at pp. 11-13.)  According to Costco, the stamping of rings with non-Tiffany marks and the non-Tiffany packaging creates enough of a contextual difference that Costco's rings cannot be considered counterfeits of Tiffany's.  (See Costco Opp. Memo pp. 14-15.)

The Court finds that, as a matter of law, Tiffany has established trademark counterfeiting on the part of Costco.  The Court has already concluded that Tiffany has established actual confusion and that Coscto has utilized a word mark identical to the one that Tiffany has registered.  Furthermore, the Court has found that Costco was not acting in good faith when it adopted the Tiffany mark, which in turn establishes Costco's intent to confuse customers as to the source of its rings.  Thus, Costco's use of the Tiffany mark may be considered "spurious" as a matter of law.  The fact that the rings were stamped with generic marks is not dispositive of this issue.  There is no statutory requirement that the counterfeit mark be placed on the product itself.  See 15 U.S.C. § 1127; see also Shell Co., Ltd. v. Los Frailes Service Station, Inc., 596 F. Supp. 2d 193 (D.P.R. 2008) (finding defendant liable for counterfeiting by sale of gasoline that was sold alongside signs advertising Shell brand gasoline).

Costco has offered no evidence that the stamping of these rings with generic marks has done anything to alleviate confusion; rather, at least six customers who purchased these "generically" stamped rings were confused as to their source.  Thus, Mr. Palmieri's "stamping" argument is unavailing.

The evidence proffered by Tiffany thus shows conclusively that Costco used "in commerce [an identical] counterfeit of a registered mark in connection with the sale, offering for sale or advertising" of its rings and that such use was "spurious" and "likely to cause confusion, or to cause mistake, or to deceive."  Costco has failed to raise any issues of material fact with respect to these conclusions.  The Court therefore grants Tiffany's motion for summary judgment insofar as it seeks a finding of liability with respect to Costco's trademark counterfeiting.[4]

### 3.  Costco's Fair Use Affirmative Defense

Adjudication of the "fair use" affirmative defense "requires analysis of whether a given use [of a mark] was (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith."  JA Apparel Corp. v. Abboud, 568 F.3d 390, 400 (2d Cir. 2009) (internal quotation marks and citation omitted).  See also 15 U.S.C.S. § 1115(b)(4) (LexisNexis 2006) (affirmative defense is established when "use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin.")  The burden rests with the defendant to prove all three elements of this defense.  See Kelly-Brown v. Winfrey, 717 F.3d 295, 308 (2d Cir. 2013).

---

[4]      In reaching this conclusion, the Court also denies the portion of Costco's motion seeking dismissal of Tiffany's counterfeiting claim.

The Court has already concluded that Costco has failed to establish that it acted in good faith when it adopted the Tiffany mark.  Because Costco cannot establish one of the essential elements of the fair use affirmative defense, Tiffany is entitled to summary judgment as a matter of law striking Costco's fair use affirmative defense.


4.   Dismissal of Costco's Genericism Counterclaim

In its January 2014 Opinion, this Court denied Tiffany's summary judgment motion seeking dismissal of Costco's genericism counterclaim.  Tiffany renews that request here, following the completion of extensive discovery.

To be deemed generic, "the principal significance of the word must be its indication of the nature or class of an article, rather than an indication of its origin." Feathercombs Inc. v. Solo Prods. Corp., 306 F.2d 251, 256 (2d Cir.1962).  As this Court has held, "[w]hen considering whether a mark is generic, the key determination to be made is the primary significance of the registered mark to the relevant public." Tiffany and Co., 994 F. Supp. 2d at 480; see also Courtenay Commc'ns Corp. v. Hall, 334 F.3d 210, 214  n.2 (2d Cir. 2003)  ("[e]ssentially, a mark is generic if, in the mind of the purchasing public it does not distinguish products on the basis of source but rather refers to the type of product.").  Generic marks consist of "words identifying the relevant category of goods or services. They are not at all distinctive and thus are not protectible under any circumstances." Star Industries, Inc. v. Bacardi & Co. Ltd., 412 F.3d 373, 385 (2d Cir. 2005).

The main piece of evidence Tiffany proffers in support of its motion to dismiss Costco's genericism counterclaim is a second study by Dr. Jacoby, entitled "As Used in the Context of Jewelry, is the Name Tiffany Generic or a Source Identifier[?]"  (Jacoby Decl., Ex.

A.)  Dr. Jacoby administered the survey in this study to a population of 464 men and women ages 21 and older who said that they would consider purchasing certain types of jewelry over the course of two years.  (Jacoby Decl., Ex. A at p. 6.)  The population first received "training" for the survey, in which they were provided with lists of sample words and asked to identify which they believed were brand names and which they believed were descriptive terms.  (Id. at p. 27.) The population was then split into groups, each of which was presented with the word "Tiffany" in a different context: some respondents were shown the word Tiffany in isolation, others were shown point of sale signage like that used by Costco.  (Id. at p. 6.)  In all instances, respondents were asked to identify whether they thought Tiffany was being used as a brand name or a descriptive term.  (Id.)

The survey found that, when Tiffany was tested in isolation, approximately 9 out of 10 of likely consumers considered it to be a brand identifier.  (Id.)  When it was seen in the context of point of sale signage like that used by Costco, nearly 4 out of 10 consumers said they believed it was being used as a brand name, and another 3 out of 10 said they thought it was both brand name and descriptive word.  (Id.)  From these results, Dr. Jacoby arrived at the conclusion that "regardless of whether used in isolation or shown the way it appeared on the tags affixed to diamond engagement rings sold by Costco, the term Tiffany is understood and used by the relevant consuming public not as a descriptive or generic term, but as a brand or source identifier."  (Id. at p. 7.)  Citing these conclusions, Tiffany urges that, as a matter of law, its mark cannot be considered generic.

Costco attempts to counter the Jacoby genericism study with its own evidence.  In the declaration of Donald A. Palmieri proffered by Costco, Palmieri states that "Tiffany is the only single word in the English language that uniquely and unambiguously denotes the general

configuration of the [particular] pronged setting of [] diamond ring" at issue.  (Palmieri Decl.

¶ 3.)  Costco also offers a declaration from Charles M. Levine, a senior consultant to

Dictionary.com, in which he states his opinion that "the words 'Tiffany' and 'Tiffany setting'

have a common descriptive meaning that is different from any meaning that the word Tiffany

may have when it is used as a brand name or company name."  (Declaration of Charles M.

Levine ¶ 2.)

        Most significantly, Costco offers two declarations from Geoffrey Nunberg, a

professor at the School of Information Management and Systems at U.C. Berkeley, which

attempt to undermine Tiffany's evidence in two ways.  (See Declaration of Geoffrey Nunberg

("Nunberg Decl."), Docket Entry No. 131 ¶ 1; see also Second Declaration of Geoffrey Nunberg

("Second Nunberg Decl."), Docket Entry No. 145 ¶ 1.)  First, Dr. Nunberg criticizes Dr.

Jacoby's methodology.  Dr. Nunberg notes that the foundational question of Jacoby's study

"presupposes that Tiffany must be either a trademark for jewelry or a generic term for a ring

setting, and cannot be both – that is, we could not be dealing with two homonymous words, one

a brand name and the other an independent adjective applying to certain jewelry settings that has

no logical or historical relation to the brand.  (Second Nunberg Decl. ¶ 5.)  Nunberg also asserts

that Dr. Jacoby "omitted critical context" in presenting his stimuli to survey respondents and that

he "mischaracterize[d] . . . and misanalyze[d]" data to reach his conclusions.  (Id. ¶¶ 10-13.)

Professor Nunberg also offers his own genericism report, which consists of a lexicographical

study of the word Tiffany.  (Id., Ex. 3.)  After studying an array of dictionary treatments,

specialized jewelry guides, advertisements drawn from newspapers and ads produced by Tiffany,

Nunberg concludes that "[a]ll available evidence overwhelmingly indicates that Tiffany is and

for more than 100 years has been a generic name for a type or style of jewelry setting in which a

single gemstone is held by several prongs . . . the style name Tiffany and the trademark Tiffany are and for more than 100 years have been two different words having two very different meanings."  (Second Nunberg Decl., Ex. 3 ¶ 42.)

While Dr. Nunberg's study criticizes Dr. Jacoby's for presupposing that "we could not be dealing with two homonymous words, one a brand name and the other an independent adjective applying to certain jewelry settings," Costco offers no legal authority for the proposition that "Tiffany" can exist in these dual capacities – both a registered mark and a generic word.  The Second Circuit has recognized a "dual usage" doctrine in trademark law, wherein a mark may begin as a proprietary word and gradually become generic as to some segments of the public.  See, e.g., Harley Davidson, Inc. v. Grottanelli, 164 F.3d 806, 812 (2d Cir. 1999).  However, Costco does not address this line of authority, nor does it make any relevant underlying factual demonstration, and the Court declines to explore this argument sua sponte.  (See generally Costco Opp. Memo.)

Costco also seeks exclusion of Dr. Jacoby's genericism study pursuant to Federal Rule of Evidence 702.  Federal Rule of Evidence 702 allows an expert to testify as to his opinion if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Expert testimony may be challenged on a motion, known as a Daubert motion, which seeks to undermine the expert evidence on the grounds of Rule 702's three reliability-based requirements.  See In re Fosamax Products Liability Litigation, 645 F. Supp. 2d 164, 172-73 (S.D.N.Y. 2009).  "The Daubert analysis focuses on the principles and methodology underlying an expert's testimony,

not on the expert's conclusions." <u>Fosamax</u>, 645 F. Supp. 2d at 173-74.  "The ultimate object of the court's gate-keeping role under Rule 702 is to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" <u>Id.</u> at 174  (quoting <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 152 (1999)).  This inquiry "gives the district court the discretion needed to ensure that the courtroom door remains closed to junk science while admitting reliable expert testimony that will assist the trier of fact." <u>Fosamax</u>, 654 F. Supp. 2d at 174 (internal quotation marks and citation omitted).

      Here, Costco raises a number of concerns with the structure of Dr. Jacoby's study, arguing that: (i) it utilized false, built-in assumptions; (ii) it utilized oversimplified, misleading and erroneous instructions; (iii) it utilized contrived and artificial stimuli that either omitted context necessary for disambiguation or provided false and misleading "context"; (iv) it was administered to the wrong subject population; (v) and it did not properly address whether Tiffany was a generic term for the specific "genus at issue in this case."  (<u>See</u> Costco Opp. Memo at p. 12.)  Once again, Costco's criticism of Tiffany's evidence goes to the weight it should be accorded by the finder of fact, rather than its admissibility.  While calling into question the soundness of the study by pointing out flaws in its construction, Costco does not undermine Dr. Jacoby's ultimate methodology (<u>i.e.</u>, the use of a consumer survey), and certainly does nothing to demonstrate that Dr. Jacoby has reached his conclusions by engaging in unreliable "junk science."  Rather, Costco has merely proffered its own experts' contrary views as to how such a study should proceed.  Costco has thus provided no proper basis for exclusion of Dr. Jacoby's report.

      Furthermore, Costco has proffered no affirmative evidence that raises a material

issue of fact with respect to the issue of whether the primary significance of the Tiffany mark to the relevant public is as a generic descriptor or a brand identifier.  The question of "primary significance" is the key to a determination of genericism, see Feathercombs, 306 F.2d at 256, and none of the evidence that Costco has proffered on this point contravenes the results of Dr. Jacoby's study.  The Court therefore holds that Costco has not raised a genuine issue of material fact with respect to its genericism counterclaim, and finds that Tiffany is entitled to summary judgment dismissing it.

In light of the foregoing analysis, the Court grants Tiffany's motion for partial summary judgment in its entirety.


B.  Costco's Motion for Summary Judgment

1.  Tiffany's Demand for an Accounting of Profits

Costco seeks to dismiss Tiffany's demand for an accounting of profits based on the sales of various types of goods.  Tiffany's demand for profits can be broken down into two categories: profits based on the sale of goods that do not implicate the Tiffany mark ("non-subject goods") and Costco memberships; and profits based on the sale of the diamond rings at issue in this case ("subject goods").  In the Second Circuit, an accounting of profits is available when: (i) the defendant is unjustly enriched; (ii) the plaintiff sustained damages from the infringement; or (iii) the accounting is necessary to deter a willful infringer from doing so again. See George Basch Co. v. Blue Coral Inc., 968 F.2d 1532, 1537 (2d Cir. 1992).  The Lanham Act provides that, when a willful violation of the act has taken place, "the plaintiff shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C.S. § 1117(a) (LexisNexis 2006).  The Second Circuit has held,

however, that in calculating "defendant's profits," a court is to base its analysis on "infringing

sales," or on sales that can in some way be tied to the Lanham Act violation alleged.  See, e.g.,

Am. Honda Motor Co. v. Two Wheel Corp., 918 F.2d 1060, 1063-64 (2d Cir. 1990)

("[o]rdinarily, a plaintiff that has proved the amount of infringing sales would be entitled to that

amount . . ."); accord GTFM, Inc. v. Solid Clothing, Inc., 215 F. Supp. 2d 273, 304-06 (S.D.N.Y.

2002).

       *a.  Non-Subject Goods and Costco Memberships*

       Tiffany seeks to recover profits earned by Costco on the sales of memberships

and goods other than the diamond engagement rings at issue here.  However, Tiffany makes no

attempt to link these sales to Costco's alleged infringement and, as Costco points out, has not

alleged that customers who purchased these items or memberships "were confused, misled, or

deceived as to the origin of those goods and services."  (Costco Memo at p. 13.)  Further, Tiffany

has not offered any non-speculative evidence demonstrating that Costco's alleged use of the

Tiffany mark had an impact on Costco's sale of non-subject goods or memberships.  Tiffany

proffers only the declaration and report of Brent C. Kaczmarek, a financial analyst with

Navigant Consulting.  (See Mitchell Decl., Ex. 39.)  In his report, Mr. Kaczmarek posits that

Costco's use of the Tiffany mark has created a "halo effect," which has led to an increase in the

number of customers drawn into Costco stores, as well as the overall number of purchases

customers have made at those stores.  (See Mitchell Decl., Ex. 39.)  In calculating the financial

benefit reaped by Costco from the alleged infringements, Mr. Kaczmaerk makes estimates of the

value of additional memberships and non-subject goods that may have been sold by Costco

based on its use of the Tiffany mark.  According to Mr. Kazcmarek, this number falls

somewhere between $17.8 million and $22 million.  (See id. at pp. 12-13.)

Costco points out that the Kaczmarek study is based on a series of assumptions and estimates, noting that Kaczmarek has "admittedly made no effort to test and measure (i) what proportion of Costco members were aware of the existence of the Subject Signs, or (ii) whether beliefs about the Subject Signs moved Costco members, to any degree, to visit Costco stores more often than they otherwise would have done."  (Costco Memo at p. 14; see also Declaration of James W. Dabney, Ex. 9 at pp. 12-13.)  Kaczmarek himself admits that tracing any "halo effect" to Costco's alleged infringement presents a challenge because "[i]t is not the availability of one particular item that drives additional membership purchases or generates other sales, but rather the availability of many items collectively . . . Therefore, I am doubtful that any survey could attribute a purchase or membership renewal to any particular" product. (Declaration of Brent C. Kaczmarek, Docket Entry No. 141 ¶ 9.)  In addition, although Tiffany has offered the depositions of six customers who were allegedly confused by Costco's display case signs, Tiffany does not elicit a statement from any of them – or any other Costco customer, for that matter – indicating that the presence of any luxury brand item in Costco stores (Tiffany or otherwise) influenced their decisions to purchase Costco memberships, or to shop there at all. (See generally Mitchell Decl., Ex. 7, Depositions of Pamela Miller, Maria Bentley, Karina Roberts, Andrew Pangelinan, Micah Day and Joseph Bentley.)  As Costco points out, "there is zero admissible evidence of either general or specific causation between the subject signs and sales of Costco memberships or non-subject sales."  (Costco Memo at p. 15.)  Tiffany has presented no evidence tying profits earned by Costco from the sales of memberships and non-subject goods to Costco's alleged infringement of the Tiffany mark.  The Court therefore holds that Tiffany is not entitled to an accounting of Costco's profits based on the sale of memberships and non-subject goods, and Costco's motion to strike this demand is granted.

b.  *Subject Goods*

Under Second Circuit law, there are three circumstances in which an accounting

of profits is available under the Lanham Act: if the "defendant is unjustly enriched,[5] if the

plaintiff sustained damages from the infringement, or if an accounting is necessary to deter a

willful infringer from doing so again."  Burndy Corp. v. Teledyne Industries, Inc., 748 F.2d 767,

772 (2d Cir. 1984) (footnote added) (quoting W.E. Bassett Co. v. Revlon, Inc., 435 F.2d 656,

664 (2d Cir.1970)).  "Courts have interpreted the rule to describe three categorically distinct

rationales."  George Basch Co., 968 F.2d at 1537.  The Second Circuit has suggested that "under

any theory, a finding of defendant's willful deceptiveness is a prerequisite for awarding profits."

Id.  However, Congress' 1999 amendment to the section of the Lanham Act authorizing the

recovery of defendant's profits upon proof of a violation raises a question as to the continuing

viability of this precedent.  See Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp., No.

04CV7369-LTS, 2006 WL 2128785, at n.2 (S.D.N.Y. July 28, 2006).

Courts within this district have split with regard to whether a showing of

willfulness is a prerequisite for an accounting of profits under each of the three rationales.

Compare Nike, Inc. v. Top Brand Co., No. 00CV8179-KMW, 2005 WL 1654859, at *10

(S.D.N.Y. July 13, 2005) (holding that omission of term "willful" in relation to section 1125(a)

indicates rejection of willfulness as bright-line criterion, but that willfulness remains a relevant

factor in analysis as to litigant's entitlement to recover defendant's profits) with Guthrie

---

[5]     To the extent that Tiffany pursues an accounting of profits based on a theory of unjust
enrichment, the Second Circuit has held that "a profits award, premised upon a
theory of unjust enrichment, requires a showing of actual consumer confusion – or
at least proof of deceptive intent so as to raise the rebuttable presumption of
consumer confusion."  George Basch Co., 968 F.2d at 1538.  Tiffany has made an
unrebutted demonstration of actual confusion and deceptive intent and, therefore,
Tiffany can pursue an award of profits derived from the rings under an unjust
enrichment theory.

Healthcare System v. ContextMedia, Inc., No. 12CV7992-KBF, 2014 WL 185222, at *6

(S.D.N.Y. Jan. 16, 2014) ("this Court agrees that 'willful deception or bad faith continues to be a

prerequisite to an award of profits or damages . . . until the Second Circuit instructs otherwise'")

(quoting Mr. Water Heater Enterprises, Inc. v. 1-800-Hot Water Heater, LLC, 648 F. Supp. 2d

576, 590 (S.D.N.Y. 2009)).  This Court agrees with those authorities that continue to uphold the

willfulness requirement.

   In light of the Court's prior determination that no rational finder of fact could

conclude that Costco acted in good faith in utilizing the Tiffany mark, the Court holds that the

willfulness requirement has been satisfied here.  The Court therefore denies the portion Costco's

summary judgment motion seeking dismissal of Tiffany's claim for an accounting of profits

based on the sale of the subject goods.  Tiffany will be permitted to seek such an accounting as a

result of Costco's willful infringement of its mark.


  2.  Tiffany's Punitive Damages Claim

   Tiffany seeks an award of punitive damages in light of Costco's alleged

infringement.  (See Compl., Prayer for Relief ¶ E.)  As Costco points out, however, the Lanham

Act does not allow for the collection of punitive damages.  The Act states that damages "shall

constitute compensation and not a penalty" (15 U.S.C.S. § 1117(a) (LexisNexis 2006)), and the

Second Circuit has ruled that this language forecloses an award of punitive damages in

infringement actions.  Getty Petroleum Corp. v. Bartco Petroleum Corp., 858 F.2d 103, 113 (2d

Cir. 1988) ("the Lanham Act does not authorize an additional award of punitive damages for

willful infringement of a registered trademark.  So long as its purpose is to compensate a

plaintiff for its actual injuries – even though the award is designed to deter wrongful conduct –

the Lanham Act remains remedial.").  The Court therefore grants Costco's motion for summary judgment insofar as it seeks dismissal of Tiffany's punitive damages claim based on Costco's Lanham Act violations.

New York state law sets an exceptionally high bar for awarding punitive damages, permitting them only when "the defendant's wrongdoing is not simply intentional but evince[s] a high degree of moral turpitude and demonstrate[s] such wanton dishonesty as to imply a criminal indifference to civil obligations."  Ross v. Louise Wise Servs. Inc., 868 N.E.2d 189, 196 (2007) (internal quotation marks and citation omitted).  Accordingly, courts in this jurisdiction have recognized that "[u]nder New York unfair competition law, punitive damages are available where a defendant's conduct has constituted gross, wanton or willful fraud or other morally culpable conduct to an extreme degree."  Altadis U.S.A., Inc. v. Monte Cristi de Tabacos, c.x.a., No. 96CV4209-BSJ, 2001 U.S. Dist. LEXIS 6892 (S.D.N.Y. May 17, 2001).

The Court finds that Tiffany has proffered evidence upon which the finder of fact could conclude that Costco's behavior has satisfied the "gross, wanton or willful" standard.  This includes the emails sent from Costco jewelry buyers asking vendors to copy Tiffany designs, as well as testimony indicating that Costco employees were aware of customer confusion but did nothing to remedy it.  (See Mitchell Decl., Ex. 7, Deposition of Jennifer Murphy at 74:5-75:12; Exs. 66-78.)  In light of this, the Court denies Costco's motion insofar as it seeks dismissal of Tiffany's punitive damages claim with respect to any alleged state law violations.

3.  Claims Arising From Sales Made Prior to February 14, 2007

Costco argues that the applicable statute of limitations for Lanham Act claims bars Tiffany from seeking damages or profits based on the sale of any allegedly infringing goods

prior to February 14, 2007.  The Lanham Act itself establishes no specific limitations period for unfair competition claims.  See Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191 (2d Cir. 1996).  Therefore, a federal court must "look[] to the most appropriate or analogous state statute of limitations."  Netzer v. Continuity Graphic Associates, Inc., 963 F.Supp. 1308, 1323 (S.D.N.Y. 1997) (citing Wilson v. Garcia, 471 U.S. 261, 266-68, (1985)).  In this case, the most analogous state statute is New York's six year statute of limitations for claims sounding in fraud. See, Netzer, 963 F. Supp. at 1323.  This action was filed on February 14, 2013, so the limitations period would exclude any claims arising from sales made prior to February 14, 2007.  Neither side has submitted evidence on this point, and Tiffany does not address this issue in its briefing. The Court therefore finds that, as a matter of law, Tiffany is not entitled to financial recovery based on sales of allegedly infringing goods prior to February 14, 2007, and grants Costco's motion seeking dismissal of these claims.

4.  Tiffany's Federal Dilution Claim

Costco seeks summary judgment dismissing Tiffany's claim for monetary relief under the Lanham Act's trademark dilution provision, 15 U.S.C. § 1125(c).  As amended by the Trademark Dilution Revision Act of 2006, The Lanham Act allows the owner of a mark "to be awarded monetary damages, attorneys' fees, and costs . . . if 1) the mark that is likely to cause dilution by blurring or tarnishment was first used in commerce by the person against whom the injunction is sought after October 6, 2006, 15 U.S.C. § 1125(c)(5)(A) . . . ."  Study Logic LLC v. Clear Net Plus, Inc, No. 11CV4343-CLP, 2012 WL 4329349, at n.9 (E.D.N.Y. Sept. 21, 2012); 15 U.S.C.S. § 1125(c)(5)(A) (LexisNexis 2006).  Thus, under 15 U.S.C. § 1125(c)(5)(A), in order for a plaintiff to recover damages based on a dilution claim, the subject mark must have

first been used in commerce after October 6, 2006.  Throughout its briefing, Tiffany asserts that

Tiffany mark was first used in commerce in 1868.  (See, e.g., Tiffany Memo at p. 4; Mitchell

Decl., Exs. 5-6.)  The Court therefore holds that, as a matter of law, Tiffany cannot assert a

damages claim based on dilution of its mark under the Lanham Act, and Costco's summary

judgment motion is granted insofar as it seeks dismissal of this claim.


    5.  <u>Tiffany's Jury Trial Demand</u>

        Tiffany has demanded that this case be tried by a jury.  (<u>See</u> Compl. at p. 25.)  In

seeking to strike this demand, Costco argues that Tiffany's claims are entirely equitable and

therefore do not fall within the province of a jury.  In creating the right to a jury trial, the

Seventh Amendment to the United States Constitution provides that "[i]n Suits at common law,

where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be

preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United

States, than according to the rules of the common law."  U.S. CONST. AMEND VII.  To determine

if a claim for relief triggers this right, a court must "examine the remedy sought and determine

whether it is legal or equitable in nature."  <u>Granfinanciera, S.A. v. Nordberg</u>, 492 U.S. 33, 42

(1989) (citing <u>Tull v. United States</u>, 481 U.S. 412, 417–418 (1987)).  Furthermore, the Supreme

Court has noted that, "[w]e have characterized damages as equitable where they are

restitutionary, such as in actions for disgorgement of improper profits."  <u>Chauffers, Teamsters &</u>

<u>Helps Local No. 391 v. Terry</u>, 494 US 558, 570 (1990); <u>accord</u> <u>Sheldon v. Metro-Goldwyn</u>

<u>Pictures Corp.</u>, 309 U.S. 390 (1940).

        It is still an open question in the Second Circuit as to whether the accounting of

profits in a trademark infringement action is an equitable or legal remedy.  Some courts in this

district have held that this remedy is equitable in all situations.  For example, in G.A. Modefine

S.A. v. Burlington Coat Factory Warehouse Corp., Judge Motley held that the Second Circuit

"makes it clear that in the trademark infringement context, the remedy of disgorgement of profits

is equitable in nature." 888 F. Supp. 44, 45 (S.D.N.Y. 1995).  In Tiffany (NJ) LLC v. Forbse,

Judge Buchwald noted that "[t]he Second Circuit has made clear that when awarding an

accounting of profits under the Lanham Act, a district court maintains discretion to shape such

relief subject to the principles of equity."  No. 11CV4976-NRB, 2012 WL 1918866, at *12

(S.D.N.Y. May 23, 2012).  By contrast, other courts in this district have held that "[w]hether a

profits remedy is more legal than equitable in nature depends on which of these theories [unjust

enrichment, proxy for damages, deterrence of a willful infringer] provides the basis for the

requested profits award."  Daisy Group, Ltd. v. Newport News, Inc., 999 F. Supp. 548, 552

(S.D.N.Y. 1998).  In Gucci America, Inc. v. Accents, Judge Rakoff held that the plaintiff's

recovery of defendant's profits, "largely serve[s] retributive and deterrent purposes. That is why

[such an] award is dependent on findings of, respectively, willful deceptiveness and intentional

counterfeiting, quasi-criminal states of mind the determination of which has historically been the

particular province of the jury."  994 F. Supp. 538, 540 (1998).

   The Court finds that Tiffany's punitive damages claim is triable to a jury because

it involves particular allegations of willfulness on Costco's part that require resolution by a jury.

The Court further holds that Tiffany's allegations of willfulness take its claims for a recovery of

profits outside the scope of restitution and make them – more likely than not – a proxy for

damages.  In light of these determinations, the Court holds that it is appropriate to submit all

remaining questions to a jury.[6]  See LeBlanc-Sternberg v. Fletcher, 67 F.3d 412 (2d Cir. 1995)

---

[6]  The Court reserves the right to treat any jury verdict as advisory with respect to any
equitable issues.

("If the claim for damages is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact") (internal quotation marks and citation omitted).  The Court therefore denies Costco's summary judgment motion insofar as it seeks to strike Tiffany's demand for a jury trial.

III.

CONCLUSION

For the foregoing reasons, Plaintiff/Counterclaim-Defendant Tiffany's motion for summary judgment is granted in its entirety.

Defendant/Counterclaim-Plaintiff Costco's motion is granted insofar as it seeks dismissal of Tiffany's claims for: an accounting of profits based on the sale of Costco memberships and non-subject goods; punitive damages based on Lanham Act violations; monetary relief based on the sale of any goods prior to February 14, 2007; and monetary relief based on dilution under the Lanham Act.  Costco's motion is denied in all other respects.

The Memorandum Opinion and Order resolves docket entry numbers 117 and 120.

The final pre-trial conference in this action is scheduled to be held on **Friday, October 30, 2015 at 2:00 p.m.**  The parties are directed to make good faith efforts to settle the outstanding issues and, absent such settlement, to consult and make submissions in advance of the final pre-trial conference in accordance with the Court's Pre-Trial Scheduling Order.  (See Docket Entry No. 96.)

SO ORDERED.

Dated: New York, New York
       September 8, 2015

       /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge