UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

TIFFANY AND COMPANY and
TIFFANY (NJ) LLC,

       Plaintiffs,

  -v-                                                       No. 13CV1041-LTS-DCF

COSTCO WHOLESALE CORP.,

       Defendant.

-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

       By Opinion and Order dated September 8, 2015 ("Summary Judgment Opinion," docket entry no. 175), the Court granted summary judgment in favor of Plaintiffs (collectively, "Tiffany"), holding Costco liable for trademark infringement and trademark counterfeiting under the Lanham Act with respect to engagement rings sold under certain signage that referenced the mark "Tiffany" as a standalone term. The recitation of undisputed facts and the conclusions of law set forth in the Summary Judgment Opinion are incorporated herein by reference. A jury trial on Tiffany's claims for monetary recovery in the form of profits and statutory damages pursuant to 15 U.S.C. Section 1117[1], and punitive damages pursuant to New York state law, was held from September 19, 2016, to October 5, 2016. The jury rendered unanimous verdicts that Costco's relevant profits – those derived from sales of rings "using display case signage that included the 'Tiffany' mark as a standalone term, not combined with any immediately following

---

[1] 15 U.S.C. § 1117(c) permits the plaintiff in a case involving the use of a counterfeit mark to elect, at any time before final judgment is rendered, to recover an award of statutory damages instead of profits.

modifier such as 'setting,' 'set' or 'style'" – totaled $3,700,000, that such profits are inadequate to compensate Tiffany, that $5,500,000 would be a just award of profits, and that Tiffany is entitled to an award of statutory damages for the same conduct in the amount of $2,000,000 and punitive damages for such conduct in the amount of $8,250,000.

On October 20, 2016, the Court issued an order directing the parties to address whether and to what extent the jury's verdict should be treated as advisory with respect to: (a) the determination of Costco's relevant profits; (b) whether that profit determination was inadequate or excessive as an amount to be recovered by Tiffany in light of the nature of Costco's wrongful conduct; and, if so, (c) what amount would be just as an award of profits. The parties were also directed to address: whether there are any "extenuating circumstances" within the meaning of 15 U.S.C. § 1117(b) that preclude the trebling of the profits award; whether and to what extent equitable and injunctive relief ought to be granted; and whether the jury's verdict is supported by the weight of the evidence and otherwise authorized under the law. (See docket entry no. 387.) The parties' familiarity with the underlying background of the case and the trial evidence is assumed.

This Memorandum Opinion and Order includes the Court's findings of fact and conclusions of law with respect to the issues of Costco's profits and the appropriate recovery thereof and Tiffany's entitlement to equitable relief, and addresses the parties' additional arguments. The Court has considered thoroughly the trial record and all of the parties' submissions. As explained below, Tiffany is entitled to recover $3.7 million as profits for trademark infringement, trebled, if it does not instead elect to recover statutory damages. Tiffany is also entitled to recover the jury's punitive damages award of $8.25 million.

I.       Whether the Jury Verdict as to Profits is Advisory

In the Summary Judgment Opinion, the Court stated that "[i]t was still an open question in the Second Circuit as to whether the accounting of profits in a trademark infringement action is an equitable or legal remedy." (S.J. Op. at 36.) In the parties' post-trial briefing, Costco contends that the jury verdict on the "Accounting of Profits Issues" was rendered on an equitable remedy for which there is no federal right to a jury trial, and that the Court is obligated to make an independent determination as to the accounting of profits. Tiffany, likewise, urges that "regardless of where the Court comes out on the state of the law, Tiffany believes the Court should set out findings of fact that would support the jury's determinations, whether or not it was advisory on actual profits." (Tiffany Br. at 3.) Although the Second Circuit has not explicitly ruled on the issue, in Gucci America, Inc. v. Weixing Li, a trademark infringement action under 15 U.S.C. Section 1117(a), the court characterized the accounting of profits sought by the plaintiff as an "equitable remedy." 768 F.3d 122, 130 (2d Cir. 2014). The Court will treat the jury verdict as to accounting of profits as advisory and make its own findings.

Even when accepting the aid of an advisory jury, the Court must make its own independent findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a). See, e.g., DeFelice v. American Int'l Life Assur., 112 F. 3d 61, 65 (2d Cir. 1997) (noting that a trial court using an advisory jury must both make 'its own factual findings and conclusions, in reliance upon the advisory jury's verdict if the court so chooses, and . . . explain how it arrived at those findings and conclusions.") The views of an advisory jury may be "an important part of the data taken into consideration in arriving at the court's independent conclusion." Birnbaum v. United States, 436 F. Supp. 967, 988 (E.D.N.Y. 1977).

By way of brief background, in its Summary Judgment Opinion, the Court found that Tiffany had proven its federal and state law claims that, by displaying solitaire diamond rings in Costco stores next to signage that included the word "Tiffany" as a standalone term not combined with an immediately following modifying word such as "setting," "set," or "style" ("Standalone Signage"), Costco infringed Tiffany's trademark and engaged in unfair competition under state and federal law and that Costco counterfeited the Tiffany trademark under federal law. At trial, the jury was instructed to determine what monetary relief, if any, Tiffany was entitled to recover as a result of Costco's trademark infringement, unfair competition, and counterfeiting. Among the monetary relief categories was an accounting for profits, as to which the jury was instructed that "Tiffany is entitled to an award of all profits earned by Costco that are attributable to Costco's misuse of Tiffany's trademark through infringement and/or counterfeiting from February 14, 2007, to the present time." (Court Ex. 2 at 15.) The jury was also instructed that it was to determine whether "one sign, which used the word 'Tiffany' on one line and the word 'set' at the beginning of the following line[,] was a use of 'Tiffany' as a standalone term or a use of 'Tiffany set' as a combined term in describing the merchandise." (Id. at 16.)

The Court makes the following additional findings of fact on the basis of its consideration of the entire trial record, including documentary and physical evidence, the testimony, and the demeanor and credibility of the witnesses. Costco has sold rings under signage using "Tiffany" without a following modifier since before 2007. There was no evidence as to when precisely this usage began, nor any credible evidence as to Costco's reason for using "Tiffany" without a following modifier.

Costco presented credible evidence, and the Court finds that, "Tiffany" is used

within the jewelry industry in the context of the combined term "Tiffany setting" to denote a certain type of multipronged solitaire ring setting. Costco used the terms "Tiffany style" and "Tiffany setting," as to which Tiffany did not assert trademark infringement or counterfeiting claims in this case, in a large proportion of its diamond ring signage. Costco also used the infringing Standalone signage to a significant degree.

Costco's proffered explanations for the Standalone usage – that clerical workers merely copied language from jewelry suppliers' invoices as shorthand for Tiffany settings and that Costco therefore was not engaging in intentional infringement or counterfeiting – were not credible in light of trial evidence that showed that displays of fine jewelry are an integral part of Costco's marketing strategy, Costco made frequent internal and external references to Tiffany as a quality and style benchmark, and Costco displayed of rings with "Tiffany" Standalone Signage in proximity to displays of name-brand luxury watches. Costco's salespeople described such rings as "Tiffany" rings in response to customer inquiries, and were not perturbed when customers who then realized that the rings were not actually manufactured by Tiffany expressed anger or upset. Costco's upper management, in their testimony at trial and in their actions in the years prior to the trial, displayed at best a cavalier attitude toward Costco's use of the Tiffany name in conjunction with ring sales and marketing. Additional evidence supporting the conclusion that Costco engaged in culpable standalone use of the mark "Tiffany" included Costco's use of purported valuations identical to prices that Tiffany had actually charged for similar rings, in certificates that Costco provided to buyers of rings sold under the infringing signage.

In light of this evidence, the Court finds that Tiffany is entitled to recover Costco's profits derived not only from sales of rings under signage in which "set," "setting" or

"style" did not follow "Tiffany" on the same line of a given sign, but also those in which "set" was the first word of the line below one ending with the word "Tiffany." The Court finds that Costco used Tiffany's trademark to attract customer attention to the fine jewelry items by indicating that the items accompanied by such signage were Plaintiffs' products although they were in actuality generic items. The fact that some sort of marking other than Tiffany's actual marking appeared inside of the generic rings is insufficient to indicate that Costco's use of the Tiffany mark was not an intentionally deceptive marketing ploy, as the inside markings were not visible by customers looking into the case displays and both Costco's signage and Costco's salespeople referred to the rings as "Tiffany." The advisory jury verdict as to profits, which appears to have taken into account all sales associated with signage that used the "Tiffany" without a following modifier on a single line, is consistent with these findings.

It is not possible to determine from Costco's records precisely which form of signage was used with each ring sale. The evidence presented at trial consisted principally of Costco's records of item serial numbers and inventory units for the period within the statute of limitations, sales and returns of items with such serial numbers within that period, records of the signage information associated with the items during that time period, and cash register sales information from that period showing the item numbers and sales prices of rings purchased. Because the data did not reflect how long any given item had been on display in a store as of the time of purchase, the signage data that Costco utilized to purportedly match to sales at particular points in time was not definitive.

The data as to numbers of units and signage iterations produced by Costco in the course of the litigation varied somewhat from time to time. Costco also proffered vendor invoices purportedly associated with the relevant periods. Some, but not all, of the signage

correlated to descriptions used on the invoices. The trial evidence also included a list of ring sales from February 14, 2007, to August 13, 2013, showing a total of 4,053 units sold under signage that included the word "Tiffany" for a total dollar amount of $17.1 million (Tr. 629, 738), and testimony of Costco's Chief Merchandising Officer, Douglas Schutt, in which he estimated that Costco had sent approximately 11,000 letters to persons who had purchased rings during the period where the signage "had 'Tiffany' anywhere in the description of that particular diamond ring." (Id. 484, 487). Schutt did not, however, testify to independent knowledge of the figure. (Id. at 487.)

At trial, Costco presented exhibit DTX 806, which purported to show "Gross Sales and Net Sales of Subject Rings" from February 14, 2007, through December 16, 2012, and which was color-coded and included columns showing "gross sales," "net sales," and "profits" associated with different item numbered rings associated with various iterations of signage. Items color-coded red in that chart were characterized as associated with signage reading "PLATINUM TIFFANY VS2.1 SET or PLATINUM TIFFANY VS2, 1 without SET"; the item color-coded yellow was characterized as associated with signage reading "SOLITAIRE TIFFANY" on the second line; and items color-coded dark green were characterized as associated with signage reading either "TIFFANY SET or TIFFANY SETTING," and those color-coded light green as associated with signage reading "TIFFANY on Line 1 and SET on Line 2 with nothing in between." (DTX 806.) Gross and net sales/units figures for rings from the relevant time period were also presented, with item number and signage record information, in DTX 139. The Court finds, based on the credible information included in trial record as a whole, that Tiffany carried its burden of proving that sales, net of returns, of approximately $7.2 million were derived by Costco during the relevant period from Standalone Signage, including

such signage in which the second line of the sign began with the word "set." (DTX 139, DTX 806.)

Once the plaintiff seeking to recover an infringer's profits under 15 U.S.C. section 1117(a) has proven the defendant's sales, the defendant has the burden of proving "all elements of cost or deduction claimed" for purposes of determining the profits associated with the sales. 15 U.S.C.S. § 1117(a) (LexisNexis 2006). At trial, Costco proffered vendor invoices associated with ring sales, but principally relied in presenting its evidence of profits on a percentage figure calculated by its expert witness, Brad Cornell, who testified that he "interpreted Costco's margin to be the price the warehouse charges the customer minus the total cost that they paid to acquire the inventory and [Cornell explained that he had] calculated that as a percentage for every single order that Costco had . . . I just took the average across all their purchases and it was 10.31." (Tr. at 1125-26.) Costco's Chief Merchandising Officer acknowledged, however, that "run of the mill" jewelry stores charge an estimated markup of 50-100% on their merchandise. (Tr. 443.) Tiffany's expert witness, Brad Kaczmarek, used a multiplier of 13% in computing Costco's profits, based on a deposition testimony by Costco's CEO that Costco generally uses a 13% margin for jewelry sales. (Tr. 274).

Tiffany also presented credible evidence that Costco's profits are not limited to the margin between product costs and sales, but also include very substantial sums derived from warehouse membership fees. Douglas Schutt, Costco's Chief Merchandising Officer, acknowledged that Costco's "business model of charging the membership fee . . . is one of the things that enables [Costco] to charge less of a markup on the individual products [Costco] sell[s]." (Tr. 444.) Costco uses a "treasure hunt" marketing concept - creating "buzz" among members by offering "brand name merchandise at exceptional values" to drive frequent member

visits and renewals. (Id. 461-63.) Kaczmarek, Tiffany's expert, testified credibly that even the 13% markup figure that he had used in his analysis is very low, and that Costco is "able to survive with that low markup because they charge membership fees annually. So they make most of their money on the membership fees and so that's how they can actually make such small profits on the items. That's what attracts customers to want to go to Costco." (Tr. 281.)

The Lanham Act provides that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C.S. § 1117(a) (LexisNexis 2006); see also GTFM, Inc. v. Solid Clothing, Inc., 215 F. Supp. 2d 273, 304 (S.D.N.Y. 2002) ("This sequence of proof . . . places the burden of proving costs on the party with the superior access to such information, namely the infringing defendant." (quoting Am. Honda Motor Co., Inc. v. Two Wheel Corp., 918 F.2d 1060, 1063 (2d Cir. 1990)). "[A] plaintiff is not entitled to profits demonstrably not attributable to the unlawful use of his mark, but . . . the burden of proving any deduction for sales not based on the infringing mark falls upon the infringer." Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., 146 F.3d 66, 72 (quoting Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co., 316 U.S. 203, 206 (1942)) (internal quotation marks and citations omitted). Furthermore, where, as here, the Court has determined that the infringer acted willfully,[2] the Court must analyze the claimed cost set-offs "with particular rigor," requiring the court to "give extra scrutiny to the categories of overhead expenses claimed by the infringer to insure that each category is directly and validly connected to the sale and production of the infringing product." Audemars Piguet Holding S.A. v. Swiss Watch Int'l., Inc., 42 F. Supp. 3d 540, 544 (S.D.N.Y. 2014) (internal quotation marks and citations omitted). In addition, 15 U.S.C. Section 1117(a) provides, "[i]f the court shall find

---

[2] See Summary Judgment Opinion at 33.

the amount of recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case."

The Court finds that Costco has failed to prove that its profits on sales of rings under Standalone Signage were limited to the 10.31% margin computed by Costco's damages expert. That margin is artificially small, and was made possible chiefly by the subsidizing impact of membership fees, which are themselves enhanced by the pull of the "treasure hunt" tactic in which Costco uses extraordinary bargains on brand-name merchandise to pull customers into its stores. Fine jewelry is the first display case customers encounter in Costco's standard store layout, along with name-branded luxury watches. (Tr. 451-452, 466-467, 470.) In light of the role of the membership fees in Costco's business model and of its use of Tiffany's mark in selling fine jewelry, which is prominently displayed at the entrance of the stores to catch the eye of the customer, the Court finds it necessary and appropriate as an equitable matter to impute a sufficient portion of the membership revenue to the sale of these rings to bring the recoverable profit margin on the rings into the profit margin range of a typical run-of-the-mill jewelry store, which is approximately 50-100%. The Court further finds that the advisory jury's award of $3.7 million in profits on the Standalone Signage sales, a figure that is slightly more than 50% of the sales revenue proven in connection with those sales, constitutes a just and appropriate award of Costco's profits attributable to the infringing sales.

The Court does not, however, concur in the jury's further finding that the $3.7 million figure is inadequate, such that an additional award of $1.8 million, raising the profit recovery figure to $5.5 million, is necessary. Tiffany is therefore entitled to $3.7 million as its award of Costco's profits from infringing sales of the diamond rings under Standalone Signage.

II.     Trebling of the Profits Award

Pursuant to 15 U.S.C. Section 1117(b) (LexisNexis 2006), "the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages [calculated under 1117(a)], whichever is greater, together with a reasonable attorney's fee . . . ."  Id.; see also Fendi S.A.S. Di. Paola Fendi E Sorelle v. Cosmetic World, Ltd., 642 F. Supp. 1143, 1147 (S.D.N.Y. 1986).  Costco, essentially reiterating its rejected trial and summary judgment arguments that its standalone use of "Tiffany" was a shorthand reference to alleged jewelry industry "generic" usage of "Tiffany" as the name for a style of ring setting, argues that extenuating circumstances render inappropriate trebling of the profits award as damages for its counterfeiting of Tiffany's mark.  Extenuating circumstances will be present only in "a rare case," such as in the case of "an unsophisticated individual, operating on a small scale, for whom the imposition of treble damages would mean that he or she would be unable to support his or her family."  Koon Chun Hing Kee Soy & Sauce Factory, Ltd v. Star Mark Mgmt., Inc., 628 F. Supp. 2d 312, 325 (E.D.N.Y. 2009) (internal quotation marks and citations omitted).

Costco has not established that any "extenuating circumstances" warrant denial of a treble award.  Costco is a large corporation with billions of dollars in annual sales and profits.  (See PTX 17A.0025, 28, 46, 47 (Costco has annual sales of over $113 billion, and made $2.4 billion in profits in 2014)).  Its arguments draw on good faith and genericism positions that were clearly rejected by the jury, which found Costco liable for substantial punitive damages, and are also rejected by this Court based on its own evaluation of the evidence.  Accordingly, the Court finds that there are no "extenuating circumstances" warranting the denial of treble damages and that Tiffany is entitled to recover awarded $11.1 million, or three times the amount of Costco's

profits of $3.7 million, under 15 U.S.C. Section 1117.  For the same reasons, the Court further finds that Tiffany is entitled to recover its reasonable attorney's fees.  See 15 U.S.C. § 1117(b).

III.    Punitive Damages Award

The jury found that Tiffany was entitled to punitive damages, and awarded Tiffany punitive damages in the amount of $8.25 million.  Costco contends that the punitive damages are not authorized under New York law in the absence of a valid claim for compensatory damages, and that the amount awarded is contrary to the weight of the evidence and excessive.

Under New York law, "[a] demand or request for punitive damages is parasitic and possesses no viability absent its attachment to a substantive cause of action."  Rocanova v. Equitable Life Assurance Society of United States, 83 N.Y.2d 603, 616 (N.Y. 1994).  The cases cited by Costco stand for the uncontroversial proposition that there can be no "stand-alone" punitive damages claim if there is no longer a compensatory cause of action remaining.  It goes without saying that there were substantive causes of action to which the punitive damages request attached in this case.

Costco also argues that, because Tiffany only sought an accounting of profits and not "actual damages," it is precluded from seeking punitive damages.  Although some courts in the Second Circuit have drawn a distinction between actual damages and profits for the purposes of the Lanham Act, others have characterized both as "actual damages" available under the Lanham Act.  See, e.g., Malletier v. Artex Creative Int'l Corp., 687 F. Supp. 2d 347, 356 (S.D.N.Y. 2010).  Furthermore, the Lanham Act itself contemplates the possibility of an award of statutory damages (sought here), which permits consideration of both punitive and

compensatory factors, without the need to establish profits or actual damages in the recognition that such measures of monetary relief may be difficult to prove in these cases. See All-Star-Marketing Grp., LLC v. Media Brands Co., Ltd., 775 F. Supp. 2d 613, 621-22 (S.D.N.Y. 2011). The provision for statutory damages in the Lanham Act thus explicitly provides a mechanism to compensate plaintiffs even in the absence of proof of actual damages or profits. Malletier v. Carducci Leather Fashions, Inc., 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009) ("where . . . a defendant is shown to have acted willfully, a statutory award should incorporate not only a compensatory, but also a punitive component . . ."); Polo Ralph Lauren, L.P. v. 3M Trading Co., Inc., No. 97 CV 4824, 1999 WL 33740332 (S.D.N.Y. Apr. 19, 1999), at *5 ("Jud[ing] by [the Copyright Act's] standards, an award of statutory damages is designed to serve both compensatory and punitive purposes.") Accordingly, the Court finds that punitive damages are not preluded in this case by Tiffany's pursuit of an accounting of profits and statutory damages rather than "actual damages."

The issues of whether punitive damages were warranted and, if so, of how much punitive damages to award were within the province of the jury, and the jury's decision cannot be set aside unless "there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." Providencia V. ex rel. K.V. v. Schultze, No. 02 CV 9516, 2009 WL 890057, at *1 (S.D.N.Y. Apr. 2, 2009) (quoting Brady v. Wal-Mart Stores, Inc., 531 F. 3d 127, 133 (2d Cir. 2008) (internal quotation marks omitted)). As the Court stated in its Summary Judgment Opinion, "Tiffany . . . proffered [in connection with that motion practice] evidence upon which the finder of fact could conclude that Costco's behavior satisfied the

'gross, wanton or willful' standard" required for awarding punitive damages." (Docket entry no. 175 at 34.) Even more evidence of conduct supporting punitive damages was adduced at trial, including evidence of the conduct and attitude of Costco's senior executives towards use of the "Tiffany" mark and the lawsuit, customer confusion, and marketing strategies designed to invoke an association with Tiffany. Given that there plainly was enough evidence to support the jury's award of punitive damages, the jury's finding that punitive damages were warranted will not be disturbed.

Finally, Costco contends that the punitive damages award of $8.25 million is excessive under New York law and as a matter of due process. The Court notes that at the outset that Costco is a company with billions of dollars in annual revenue. In making its excessiveness argument, Costco presumes that the other elements of the verdict were invalid—namely, that there was an absence of actual damages and that the maximum permissible profits award was $381,718 (i.e., 10.31 percent of $3.7 million). Using the $3.7 million profits figure set here by the Court (or even the $2 million statutory damages award figure) as the benchmark, however, the punitive damages award of $8.25 million is comfortably within the four-to-one benchmark referenced by the Supreme Court in State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003). Indeed, in one of the cases cited by Costco, the court awarded punitive damages that were close to six times the compensatory damages award. See Getty Petroleum Corp. v. Island Transp. Corp., 862 F.2d 10, 12-14 (2d Cir. 1988). Accordingly, the Jury's punitive damages award of $8.25 million is neither unconstitutional nor otherwise excessive.

IV.         Injunctive Relief

Costco does not object to the imposition of a permanent injunction, arguing only that further relief in the nature of damages is unnecessary to punish or deter the company from further violations of Tiffany's rights. The Court finds that imposition of a permanent injunction is warranted, and that such relief necessary to deter Costco from pursuing further illegitimate efforts to trade on the fame of Tiffany's mark and the reputation of Tiffany's goods. The Court finds that Tiffany has demonstrated that (1) it is likely to suffer irreparable harm to its name and good will in the absence of a permanent injunction; (2) that Tiffany has no adequate remedy at law; (3) that the balance of hardships weighs in Tiffany's favor and (4) that the public interest would not be disserved by the issuance of a permanent injunction. See eBay, Inc. v. MercExch. L.L.C., 547 U.S. 388, 391 (2005).

It is hereby ordered that Costco is permanently enjoined from using the mark TIFFANY as a standalone term, not combined with any immediately following modifiers such as "setting," "set" or "style," in connection with its advisement and/or sale of any products not manufactured by Plaintiffs or their affiliates.

V.         Consistency of the Verdicts with the Law and the Evidence

Although Costco has not made explicit motions under Rule 50(b) and 59, it has made a number of arguments that implicate the weight and propriety of the evidence. Costco's legal challenges to the verdicts have been rejected in the foregoing portions of this Memorandum Opinion. Costco's arguments with respect to the evidentiary bases of the jury's implicit conclusions concerning the extent and reprehensibility of Costco's wrongful conduct are

similarly meritless.  Costco made its arguments concerning the admissibility of evidence and its weight in the course of the trial.  Costco has demonstrated no proper basis in its submissions for finding that any of the Court's evidentiary rulings were improper, and the Court finds that the verdicts reached by the jury as to basic profits, statutory damages and punitive damages were well supported by the evidence.

## CONCLUSION

Treating the jury's verdict as advisory only as to the recovery of profits, the Court finds that Plaintiffs are entitled to recover trebled profits of $11.1 million, and judgment will be entered in their favor in that amount, plus prejudgment interest at the annual rate set under 26 U.S.C. § 6621(a)(2) for the period from February 15, 2013, through the date of judgment and punitive damages of $8.25 million, <u>unless</u> Plaintiffs file within seven (7) days from the date hereof a written election to instead recover the $2 million in statutory and $8.25 million in punitive damages awarded by the jury.

Costco is permanently enjoined from using the mark TIFFANY as a standalone term, not combined with any immediately following modifiers such as "setting," "set" or "style," in connection with its advisement and/or sale of any products that were not manufactured by Plaintiffs or their affiliates.

Any applications for attorneys' fees and costs must be supported by evidence and submitted within the time frame set by Federal Rule of Civil Procedure 54(d).

SO ORDERED.

Dated: New York, New York
      August 14, 2017

                                                    /s/ Laura Taylor Swain
                                                    LAURA TAYLOR SWAIN
                                                    United States District Judge