UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

TIFFANY AND COMPANY and TIFFANY
(NJ) LLC,

        Plaintiffs,

     -v-                                No.  13 CV 1041-LTS-DCF

COSTCO WHOLESALE CORP.,

        Defendant.

---------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

The Court has entered judgment in favor of Tiffany and Company and Tiffany

(NJ) LLC (collectively "Tiffany" or "Plaintiffs") based on the Court's partial grant of summary

judgment against Costco Wholesale Corp. ("Costco" or "Defendant") on the issues of liability

for trademark infringement and counterfeiting, <u>Tiffany & Co. v. Costco Wholesale Corp.</u>, 127 F.

Supp. 3d 241 (S.D.N.Y. 2015) (the "Summary Judgment Opinion"), a jury verdict awarding

punitive damages (Docket Entry No. 353), and the Court's finding, based upon the trial record

and the jury's advisory verdict, that Tiffany is entitled to an accounting of profits and an

injunction, <u>Tiffany & Co. v. Costco Wholesale Corp.</u>, 274 F. Supp. 3d 216 (S.D.N.Y. 2017) (the

"Post-Trial Opinion").  Before the Court are Plaintiffs' motion for attorneys' fees pursuant to 15

U.S.C. section 1117(b) and Defendant's motion to amend the Court's findings pursuant to

Federal Rule of Civil Procedure 52(b) ("Rule 52(b)"), to alter or amend the Court's judgment

pursuant to Federal Rule of Civil Procedure 59(e) ("Rule 59(e)"), and for judgment as a matter of

law or, alternatively, a motion for a new trial, pursuant to Federal Rule of Civil Procedure 50(b)

("Rule 50(b)").

The Court has considered the parties' submissions carefully and, for the following reasons, grants Plaintiffs' motion for attorneys' fees in part and denies Defendant's motion in its entirety.

Background

Familiarity with the facts and prior decisions in this case are presumed.

The Court entered the Summary Judgment Opinion granting summary judgment in favor of Plaintiffs on September 8, 2015, finding Defendant liable for copyright infringement and counterfeiting. 127 F. Supp. 3d at 246-56. Following a trial to determine damages, the jury returned a verdict finding that Defendant's profits from the infringing goods "totaled $3,700,000, that such profits are inadequate to compensate Tiffany, that $5,500,000 would be a just award of profits, and that Tiffany is entitled to an award of statutory damages for the same conduct in the amount of $2,000,000 and punitive damages for such conduct in the amount of $8,250,000." Post-Trial Opinion, 274 F. Supp. 3d at 219. The Court treated the accounting of profits as an equitable remedy and, therefore, treated the jury's verdict with respect to Defendant's profits as advisory. Id. at 220-21. The Court found that the jury's award of $3.7 million dollars adequately reflected Defendant's actual profit margin on the infringing rings, taking into account a portion of membership fees which were used to subsidize Defendant's unusually thin profit margins on the rings themselves. Id. at 222-24. The Court did not, however, agree with the jury's finding that $3.7 million dollars was inadequate and thus did not award the additional $1.8 million specified by the jury. Id. at 224. The Court trebled the profits award to $11.1 million and found that Plaintiffs were entitled to attorneys' fees pursuant to 15 U.S.C. § 1117(b). Id. at 224-25. The Court also found that, as a matter of law, punitive damages were authorized in connection with an award of profits under the Lanham Act, that the jury's determination that

punitive damages were warranted was adequately supported by the evidence, and the award amount was not excessive.  Id. at 225-26.

DISCUSSION

Defendant's Motion

Motion to Alter or Amend Judgment

The Court turns first to Defendant's motion to alter or amend the Court's judgment, pursuant to Rule 59(e),[1] which seeks reversal of the determination in the Court's Summary Judgment Opinion that Defendant is liable for counterfeiting and that its infringement was willful, which constitutes one circumstance warranting the award of an accounting of profits under the Lanham Act.  See Burndy Corp. v. Teledyne Industries, Inc., 748 F.2d 767, 772 (2d Cir. 1984) (discussing prerequisites for an order of an accounting of profits under the Lanham Act).

Rule 59(e) authorizes a court to revisit a prior decision based upon an intervening change in controlling law, the availability of new evidence, to correct errors of law or facts upon

---

[1]     Through the Rule 52(b) portion of its motion, Defendant seeks to have the Court reconsider its holdings articulated in the Summary Judgment Opinion.  Rule 52(b), however, is focused on factual findings and is not an appropriate vehicle for revisitation of a summary judgment decision.  Buck v. Libous, No. 02 CV 1142, 2005 WL 2033491, at *1 n.2 (N.D.N.Y. Aug. 17, 2005) ("Since a court engages in no fact-finding when it decides a summary judgment motion, a party may not use Rule 52(b) to seek reconsideration of such a decision.").  The Court will therefore evaluate Defendant's motion to reconsider the Summary Judgment Opinion under Rule 59(e), which permits the timely reconsideration of any final judgment, including any interlocutory orders that are not separately appealable, such as the partial grant of summary judgment at issue here.  See Fed R. Civ. P. 54(a) (defining judgment as "any order from which an appeal lies"); see also Doninger v. Niehoff, 642 F.3d 334, 338 n.1 (2d Cir. 2011) (stating that an order granting partial summary judgment is generally not appealable prior to a final decision in the case).

which the judgment is based, or to prevent manifest injustice.  Munafo v. Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004); see also Hayuk v. Starbucks Corp., No. 15 CV 4887-LTS, 2016 WL 5719785, at *1 (S.D.N.Y. Sept. 30, 2016).  "[A] Rule 59 [motion] is evaluated under the same standard as a motion for reconsideration under Local Civil Rule 6.3."  Hayuk, 2016 WL 5719785, at *1.  However, the standard for granting a motion for reconsideration is strict and such a motion will be denied unless the moving party can point to controlling decisions or facts that the court overlooked that might reasonably be expected to alter the conclusion reached by the court.  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  Rule 59(e) reconsideration is not a "tool to repackage and relitigate arguments and issues already considered by the Court in deciding the original motion."  In re Papadopoulos, No. 12 CV 13125-JLG, 2015 WL 1216541, at *2 (Bankr. S.D.N.Y. Mar. 13, 2015) (internal quotation and citation omitted).  Reconsideration of a court's prior order "is an extraordinary remedy to be employed sparingly" in the interest of finality.  Meteor AG v. Fed. Exp. Corp., No. 08 CV 3773-JGK, 2009 WL 3853802, at *3 (S.D.N.Y. Nov. 18, 2009) (quoting In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)) (internal quotation marks and citation omitted).

Defendant contends that the Court wrongly granted summary judgment with respect to Plaintiffs' counterfeiting claim by applying an incorrect legal standard and that, if the Court applied the correct legal standard, it would conclude that issues of material fact existed sufficient to deny summary judgment.

In the Summary Judgment Opinion, the Court stated that the "Lanham Act defines a counterfeit mark as 'a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.'"  Summary Judgment Opinion, 127 F. Supp. 3d at 254 (quoting 15 U.S.C.S. § 1127 (LexisNexis 2006)).  The use of such a mark must be "likely to cause confusion,

to cause mistake, or to deceive."  Id. (quoting U.S. v. Milstein, 401 F.3d 53, 62 (2d Cir. 2005))

(internal quotation marks and citation omitted).  The Court stated that a spurious mark

"deceptively suggest[s] an erroneous origin [or] fake."  Summary Judgment Opinion, 127 F.

Supp. 3d at 255 (quoting GMA Accessories, Inc. v. BOP, LLC, 765 F. Supp. 2d 457, 472

(S.D.N.Y. 2011)) (alterations omitted).  The Court further determined that counterfeiting may be

found even where the infringing mark is not directly affixed to the good.  Id. (citing Shell Co.,

Ltd. v. Los Frailes Service Station, Inc., 596 F. Supp. 2d 193 (D.P.R. 2008)).

Defendant cites to no controlling law that the Court overlooked in articulating the

standard for Lanham Act counterfeiting, but nonetheless disagrees with the standard and the

Court's analysis based on that standard.  Defendant first argues that the Court erroneously relied

on its analysis of several of the factors described in Polaroid Corp. v. Polarad Elecs. Corp., 287

F.2d 492 (2d Cir. 1961), which, according to Defendant, are used only to examine consumer

confusion and thus are relevant only to the issue of whether a defendant infringed, rather than

counterfeited, a mark.  Defendant correctly points out that "[w]hen counterfeit marks are

involved, it is not necessary to consider the factors set out in [Polaroid,] which are used to

determine whether a mark is a colorable imitation of a registered mark that creates a likelihood

of confusion about its source, because counterfeit marks are inherently confusing."  Colgate-

Palmolive Co. v. J.M.D. All-Star Imp. & Exp. Inc., 486 F. Supp. 2d 286, 289 (S.D.N.Y. 2007)

(internal quotation marks omitted).  This Court did not, however, rely on the selected Polaroid

factors simply to equate its finding of infringement to counterfeiting, but rather invoked them in

aid of its analysis of the elements of a counterfeiting claim.  In examining whether the marks

were substantially indistinguishable and spurious, the Court referred to its previous analysis of:

(1) the similarity of the two marks, to address whether they were identical or substantially

indistinguishable and whether the use of the Tiffany mark deceptively suggested a false origin and thus was spurious; (2) the finding of actual confusion to address the requirement that the counterfeit "cause confusion, . . . cause mistake, or . . . deceive," Milstein, 401 F.3d at 62 (internal citation and quotation marks omitted); and (3) Defendant's bad faith, with respect to the issue of intent to confuse customers. Summary Judgment Opinion, 127 F. Supp. 3d at 255-56.

Defendant next argues that an analysis of the spuriousness of a mark "requires that the Court consider 'how the marks appear to consumers in the marketplace' – in other words, the entire context of the Contested Signs and the sale of the Costco Rings."  (Def.'s Mem. to Amend J., Docket Entry No. 450, 10 (quoting Colgate-Palmolive, 486 F. Supp. 2d at 289) (alterations and emphasis omitted)).  The Court did, in fact, consider the sale of the counterfeit rings from the perspective of the consumer in the broad context of the entire sale, concluding that the undisputed facts of record on that motion practice, viewed in the light most favorable to Costco, demonstrated that Costco's use of the Tiffany mark suggested a false origin despite being placed on a nearby sign rather than on the ring itself.  The Court considered, inter alia, the evidence regarding the placement of Costco's signs, the location of the mark on those signs, the sale of rings nearly identical to Plaintiffs', and uncontroverted evidence that real consumers were actually confused in concluding that Defendant's use was spurious.  See Summary Judgment Opinion, 127 F. Supp. 3d at 255-56.

Finally, Defendant contends that counterfeiting may only be found when the infringing good is a "stitch-for-stitch" copy of the plaintiff's good and that the use of the mark on a "colorable imitation" will support a claim for infringement, but not a claim for counterfeiting. See Gucci Am., Inc. v. Guess?, Inc., 868 F. Supp. 2d 207, 223, 242 (S.D.N.Y. 2012) (stating that courts uniformly apply the 15 U.S.C. section 1127 definition of counterfeiting to stitch-for-stitch

copies); see also Johnson v. Connolly, No. C 06-6414 VRW, 2007 WL 1151004, at *2 (N.D. Cal. Apr. 18, 2007) (stating that a mere colorable imitation will not sustain a claim for counterfeiting).  Here, the Court found that there was no genuine issue of material fact as to whether, taking into account the entire context of Costco's display, the placement of the Tiffany mark on signs where Costco would normally place a brand name to advertise the sale of rings that were essentially copies of Plaintiffs' rings rendered the rings as displayed for sale indistinguishable from those of Plaintiffs, despite the presence of the stamp of the true manufacturer inside the counterfeit rings.  Cf. Louis Vuitton Malletier S.A. v. Sunny Merch. Corp., 97 F. Supp. 3d 485, 499-500 (S.D.N.Y. 2015) (finding that a counterfeit product need not be a stitch-for-stich copy and that products may be found counterfeit even if they are inferior in quality in comparison to the original good).  Defendant has articulated no facts or controlling law overlooked by or previously unavailable to the Court and Defendant's motion to reconsider the grant of summary judgment with respect to Plaintiffs' counterfeiting claim is, therefore, denied.

Defendant next argues that the Court did not adequately consider evidence that, Defendant contends, would have raised a genuine issue of material fact as to whether Defendant's infringement was willful.  Specifically, Defendant points to evidence that clerical employees simply created the signs bearing the Tiffany mark to follow the company practice of displaying the setting style indicated on the vendor invoices and that, upon receiving a demand letter from Plaintiffs, Defendant ceased using the term Tiffany, alerted all purchasers of the infringing rings about Plaintiffs' legal position, and offered to accept any returns based on this information.  (Def.'s Mem. to Amend J. at 17-18 (citing Docket Entry No. 122 ¶¶ 14-16, 20-23; Docket Entry No. 122-4).)

In support of its finding of willfulness, the Court relied on its <u>Polaroid</u> bad faith analysis.  Summary Judgment Opinion, 127 F. Supp. 3d at 261.  The Court considered the facts proffered by Defendant in the context of its presentation in its summary judgment papers, and concluded based on the record in the summary judgment motion practice that Defendant's assertions that its employees relied on the vendor invoices for characterization of the setting as "Tiffany" on Costco's signs were untenable in light of the evidence that Costco had actively encouraged those same vendors to copy Plaintiffs' products.  <u>Id.</u> at 252.  Accordingly, Defendant has failed to demonstrate an error of law or fact necessary to warrant reconsideration.

<u>Imputation of Membership Revenue as Profits</u>

Defendant next argues that the Court must alter and amend its judgment, findings of fact, and conclusions that Plaintiffs were entitled to a portion of Defendant's membership revenue to compensate for Costco's unusually small declared profit margin on the sale of the infringing rings, pursuant to Rules 52(b)[2] and 59(e).  Defendant contends that the Court relied only upon the "unsubstantiated assertion by Plaintiffs' expert, Brent Kaczmarek, that Costco makes most of its money on membership fees, allowing for a smaller profit margin" on the infringing rings, pointing to purported deficiencies in his study.  (Def.'s Mem. to Amend J. at 19 (internal quotation marks and alternations omitted).)  However, the Court also relied upon the

---

[2]    Rule 52(b) is an appropriate mechanism to reexamine the Court's findings following a bench trial, where, as here, the jury verdict for Lanham Act damages was advisory.  A Rule 52(b) motion is evaluated under a similar reconsideration standard as a Rule 59(e) motion and should be "denied unless the moving party can point to controlling decisions or data that the court overlooked."  <u>L.I. Head Start Child Dev. Serves., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.</u>, No. CV 00-7394-ADS, 2010 WL 8816299, at *7 (E.D.N.Y. May 28, 2010), <u>aff'd</u>, 710 F.3d 57 (2d Cir. 2013) (quoting <u>Rafter v. Liddle</u>, 288 Fed. Appx. 768 (2d Cir. 2008)).

testimony of Douglas Schutt, Defendant's Chief Merchandising Officer, in which Schutt acknowledged that Defendant is able to charge only a small 13% markup on the rings because of its membership fees, which function to offset this lower margin. Post-Trial Opinion, 274 F. Supp. 3d at 223 (citing Trial Tr., Docket Entry No. 402, at 443:19-444:4).

Defendant also objects to the Court's imputation of an approximately 50% profit margin to account for the diminished markup of 10.31% or 13% Costco charged for its rings[3] and bring the profit computation on the rings into alignment with more traditional jewelry stores, which typically accrue a profit of 50-100%. See id. at 223. Defendant contends that the Court failed to provide a rationale as to why imputing the profit margin for a traditional jewelry store to Costco is appropriate given that Costco sells a wider stock of products and employs a vastly different business model. As the Court previously noted, equity requires that where, as here, the sale of the jewelry is subsidized by the revenue derived from membership sales, which are themselves driven by the lure of discounted jewelry and other products, awarding only the profits earned directly from the sale of the infringing rings would be insufficient. Id. at 224; 15 U.S.C.S. § 1117(a) (LexisNexis 2006) ("If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case."). To hold otherwise would essentially sanction trademark infringement so long as a defendant could shift profits to a different incoming revenue stream. Furthermore, once a plaintiff proves a defendant's sales, the burden shifts to the defendant to "prove all elements of cost or deduction claimed." 15 U.S.C.S. § 1117(a) (LexisNexis 2006). Accordingly, Defendant bore the burden of

---

[3]     Each party proffered evidence to support a different markup figure, both of which were significantly below the 50% profit margin imputed by the Court. See Post-Trial Opinion, 274 F. Sup. 3d at 223.

proving the proper profit margin, taking into account any unique features of its business plan, including the impact of its membership fees on its pricing and profits for sales of the infringing rings at issue here. Defendant's proffer of general figures derived only from its own acquisition and selling price differentials was insufficient to carry this burden, and the Court's equitable determination, which imputed a profit margin at the low end of the relevant regular retail range, was supported by the trial record.

Defendant also asserts that the imputation of a portion of membership fees as a portion of the profits attributable to the sale of the rings under the Tiffany mark conflicts with the Court's summary judgment decision striking Plaintiffs' demand for an accounting of Costco's profits for the sale of memberships and other merchandise. In its Summary Judgment Opinion, the Court held that Plaintiffs had proffered no evidence that the infringement caused customer confusion with respect to the sale of memberships or other goods. See id., 127 F. Supp. 3d at 59-60. The Court also found that Kaczmarek's assertions that the sale of the counterfeit rings caused a "halo effect," enticing customers to visit Costco stores more often and/or make increased purchases there, were not supported by any measurements of the impact of the infringement on the sale of memberships or other goods.[4] Id.

The Court's summary judgment decision rejected only Plaintiffs' stand-alone demand for an accounting of Costco's profits from the sales of memberships and other goods, noting that there was no evidence to demonstrate that Defendant's infringement resulted in such profits. By contrast, the Court's apportionment of membership fee revenue to profits in

---

[4]    See also Order, September 16, 2016, Docket Entry No. 335, at 2 (overruling Costco's objection to evidence of the "halo effect" and "treasure hunt" theories, holding that such evidence is "relevant to the issues of Costco's motivation, state of mind and bad faith with respect to the subject sales and signage.")

connection with specific sales of merchandise was based on Schutt's admission that income from membership fees subsidized a much lower than normal markup on the infringing rings. (See Trial Tr., Docket Entry No. 402, at 444:1-4.) There is no inconsistency between the summary judgment decision and the imputation of a higher profit level for actual merchandise sales, as based on the trial evidence.

For the foregoing reasons, Defendant's Rule 52(b) and 59(e) motions are denied with respect to the Court's equitable award of a portion of membership fee revenue to account for the subsidization of low-margin sales of the infringing rings by membership fees.

Rule 50(b) Motion

Defendant also seeks a determination that the jury's award of punitive damages was inappropriate as a matter of law.[5] Specifically, Defendant contends that punitive damages were unavailable under New York law because Plaintiffs did not suffer any actual damages and that the jury's verdict was not supported by sufficient evidence that Defendant intended to deceive its customers as to the origin of the infringing rings.

"Under Rule 50, judgment as matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for a party. . . . [A] court may

---

[5]     After Plaintiffs rested their case, Defendant moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a), which motion the Court denied. (Trial Tr., Docket Entry No. 406, at 947:2-962:6.) Defendant now renews its motion pursuant to Rule 50(b). In its Post-Trial Opinion, the Court observed that Defendant did not make any "explicit motions under Rule 50(b) and 59, [but that] it ha[d] made a number of arguments that implicate the weight and propriety of evidence." Post-Trial Opinion, 274 F. Supp. 3d at 227. The Court rejected Defendant's arguments "with respect to evidentiary bases of the jury's implicit conclusions concerning the extent and reprehensibility of Costco's wrongful conduct." Id. Because Defendant submitted its earlier briefing papers in response to the Court's order (Docket Entry No. 387), and did not explicitly move for judgment as a matter of law pursuant to Rules 50(b) and 59(e), the Court considers the instant motion.

properly grant judgment as a matter of law where viewed in the light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached."  Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 120 (2d Cir. 1998) (quoting Samuels v. Air Transport Local 504, 992 F.2d 12, 14 (2d Cir.1993)) (internal quotation marks and citations omitted).  "In ruling on a motion for judgment as a matter of law, [a court] must view the evidence in a light most favorable to the non-movant and grant that party every reasonable inference that the jury might have drawn in its favor."  Id. at 120-121 (internal quotation marks omitted).  Judgment as a matter of law "may only be granted if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it."  Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 133 (2d Cir. 2008) (quoting Luciano v. Olsten Corp., 110 F.3d 210, 214 (2d Cir. 1997)) (internal quotation marks and alterations omitted).

        With respect to Defendant's contention that Plaintiffs may not recover punitive damages under New York law absent establishing compensatory or actual damages, the Court has already rejected this very argument in its Post-Trial Opinion.  274 F. Supp. 3d at 225-26. The Court held that punitive damages are available where a plaintiff pursued an accounting of profits and statutory damages under the Lanham Act because that statute provides a mechanism

to "compensate plaintiffs even in the absence of proof of actual damages or profits," and, for the reasons stated in its Post-Trial Opinion, now adheres to the same conclusion.[6] Id.

Defendant then argues that the jury's award of punitive damages was unsupported by evidence that Costco sought to deceive or mislead customers into believing that Plaintiffs had manufactured the ring. Specifically, Defendant contends that the use of the term "Tiffany" was intended to signal the style of the setting rather than its source of manufacture and that evidence of Defendant's senior executives' attitude towards the use of Plaintiffs' mark, marketing strategies designed to create the impression of an association with Plaintiffs, and consumer confusion do not demonstrate the "gross, wanton or willful" behavior required for the award of punitive damages under state law. Post-Trial Opinion, 274 F. Supp. 3d at 226 (internal quotation marks and citation omitted). In its Post-Trial Opinion, the Court dismissed Defendant's argument that such evidence was insufficient, and Defendant has advanced no further, reasoned argument in support of its position,[7] instead only disparagingly recounting the Court's

---

[6]    Defendant points to the Court's statement that "the Lanham Act itself contemplates. . . an award of statutory damages . . . , which permits consideration of both punitive and compensatory factors, without the need to establish profits or actual damages in the recognition that such measures of monetary relief may be difficult to prove in these cases." Post-Trial Opinion, 274 F. Supp. 3d at 225. Defendant contends that this statement is inconsistent with an award of a punitive component of damages where "Plaintiffs explicitly disavowed actual damages of any sort," despite the existence of sales records from which to calculate Costco's profits. (Def.'s Mem. to Amend J. at 21 (emphasis omitted).) The Court's statement was, however, made in support of the proposition that an accounting of profits or a statutory damages award will satisfy the prerequisite for actual damages without the need to establish actual loss, not to suggest that a plaintiff would be barred from collecting punitive damages unless it exhausts every effort to quantify profits or damages. See Post-Trial Opinion, 274 F. Supp. 3d at 225.

[7]    Defendant also argues that Plaintiffs failed to present evidence to affirmatively establish that use of the term "Tiffany" was intended to imply the origin of the rings rather than the style of the setting. The Court already concluded that the jury considered ample evidence, "including evidence of the conduct and attitude of Costco's senior executives towards use of the 'Tiffany' mark and the lawsuit, customer confusion, and marketing

characterization of the evidence in its Post-Trial Opinion.  Accordingly, Defendant has failed to show that the jury's verdict was so insufficiently supported that it could only have been the result of surmise or conjecture, and, for the reasons stated in the Post-Trial Opinion, this aspect of the motion is denied.  See Brady, 531 F.3d at 133.

Defendant also seeks a new trial based on the Court's instructions informing the jury that the Court had already found Defendant's infringement to be willful and sufficient to constitute counterfeiting, in addition to the Court's exclusion of evidence at trial to establish a lack of customer confusion and evidence of alternative, non-infringing uses of the term "Tiffany."

"A jury instruction is erroneous if it misleads the jury as to the correct legal standard . . . and requires a new trial unless the error is harmless[, in that it] . . . did not influence the jury's verdict."  Gordon v. New York City Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000) (internal quotation marks and citations omitted).  As previously explained, the Court's instructions that Defendant's actions were willful and constituted counterfeiting under the Lanham Act were properly supported by the holdings contained in the Summary Judgment Opinion.

Because Defendant concedes that it was indeed permitted to introduce evidence as to non-infringing uses of the term "Tiffany," a new trial is not warranted on that ground.[8]

---

strategies designed to invoke an association with Tiffany," to support its award of punitive damages.  Post-Trial Opinion, 274 F. Supp. 3d at 226.

[8]     (Def.'s Reply in Support of Mot. to Amend J., Docket Entry No. 457, at 9 ("Plaintiffs note that Costco was permitted to include six references to the non-trademark meaning of Tiffany. . . .  Costco was nevertheless prohibited from presenting evidence regarding actual confusion.").)

Defendant also argues that it was prejudiced by the Court's ruling that it could not present evidence that customers were not actually confused by Costco's actions in connection with its opposition to the award of punitive damages. The Court excluded evidence of lack of actual consumer confusion because Plaintiffs had presented unrebutted evidence of such confusion on summary judgment, which established the predicate for an accounting of profits, a conclusion that would be inappropriate to revisit at trial. (Conference Tr., Docket Entry No. 275, at 18, 34-35, 44, 61); see also Summary Judgment Opinion, 127 F. Supp. 3d at 260 n.5. Defendant nonetheless asserts that it was prejudiced by its inability to present evidence that customers were not actually confused to support its contention that Defendant was not liable for punitive damages. Defendant is unable to point to the record to demonstrate that it ever sought to introduce, or that the Court precluded, evidence of lack of consumer confusion in connection with the question of whether Costco's actions were "gross, wanton, . . . willful . . . or other[wise] morally culpable," and thus whether punitive damages were warranted. See Summary Judgment Opinion, 127 F. Supp. 3d 241 at 261-62 (internal quotation marks and citation omitted); (Conference Tr., Docket Entry No. 275, at 18, 34-35, 44, 61). Accordingly, Defendant is not entitled to a new trial based on its inability to introduce evidence of actual confusion.

For the foregoing reasons, Defendant's motion for judgment as a matter of law or a new trial is denied.

Plaintiffs' Motion for Attorneys' Fees and Expenses

The Court found, in its Post-Trial Opinion, that Plaintiffs were entitled to reasonable attorneys' fees pursuant to 15 U.S.C. section 1117(b) ("Section 1117(b)"), which authorizes both the trebling of damages and the award of attorneys' fees "in a case involving [the] use of a counterfeit mark or designation . . . unless the court finds extenuating

circumstances." 15 U.S.C.S. § 1117(b) (LexisNexis 2018). Plaintiffs now request awards of attorneys' fees in the sum of $5,600,765.50, disbursements billed to Plaintiffs in the amount of $176,666.70, and amounts paid by Plaintiffs directly to expert witnesses and other third-party service vendors in the sum of $640,241.14, for a total award of $6,417,673.34. (Decl. of Jeffrey A. Mitchell, Docket Entry No. 447, ¶ 3.) Defendant contends that Plaintiffs are only eligible to receive fees for the portion of their counsel's legal work that related directly to the counterfeiting claim, that attorneys' fees are not available under Section 1117(b) if the counterfeit good is stamped with the actual manufacturer's trademark, and that Plaintiffs are not entitled to expenses attributable to expert witnesses.

Defendant's argument that the remedies for a counterfeiting claim provided by Section 1117(b) are not available when the counterfeit good is stamped with the trademark of the actual manufacturer, rather than the mark of the plaintiff, is simply another variation on Defendant's challenge of the Court's determination on the merits of the counterfeiting claim. Defendant cites no new law or facts, but simply refers back to its summary judgment briefing in which it argued that it could not be liable for counterfeiting because its rings were stamped with the mark of the true manufacturer. (See Def.'s Mem. in Opp'n to Attys.' Fees, Docket Entry No. 451, at 1, 1 n.1.) Because the Court has concluded that Defendant engaged in counterfeiting despite the use of the true manufacturer's mark, Plaintiffs are entitled to the statutory remedies that are available in a Lanham Act case involving counterfeiting. See Summary Judgment Opinion, 127 F. Supp. 3d at 254-56.

Defendant next argues that attorneys' fees awarded under Section 1117(b) must be limited to the expenses attributable to the prosecution of Plaintiffs' counterfeiting claim and cannot extend to fees incurred in prosecuting Plaintiffs' Lanham Act claim for infringement or

Plaintiffs' state-law claims, and in defending against Defendant's counterclaim for invalidation of Plaintiffs' trademark as generic.  Although the parties have not offered any authority as to whether fees for non-counterfeiting claims can be awarded pursuant to Section 1117(b), the broad, plain language of Section 1117(b), which authorizes treble Lanham Act damages for violations of 15 U.S.C. § 1114(a)(1) and attorneys' fees in "case[s] involving [the] use of a counterfeit mark" where the violation consists of intentional use of the mark in connection with the sale of goods, indicates that awards in cases of counterfeiting are not limited strictly to fees incurred in prosecuting claims charging counterfeiting.  15 U.S.C.S. § 1117(b) (LexisNexis 2018) (emphasis added).  This broad language, including the statute's reference to the general Lanham Act liability provision, clearly suggests that the Court should award attorneys' fees incurred in prosecuting the Lanham Act infringement claim, not just the counterfeiting claim itself.  This interpretation of the statute is pragmatic as well as logical and consistent with the plain language of the statute.  Counterfeiting is an elevated form of infringement and an evaluation of both causes of action, as previously discussed, requires an examination of overlapping and interrelated factors.[9]  See Gucci Am., 868 F. Supp. 2d at 242 (describing counterfeiting as the "'hard core' or 'first degree' of trademark infringement that seeks to trick the consumer into believing he or she is getting the genuine article"); Summary Judgment Opinion, 127 F. Supp. 3d at 254-56 (utilizing the Polaroid infringement factors to inform the Court's counterfeiting analysis).  The analogous state-law claims are almost entirely congruent with the Lanham Act infringement claim, thus making it impossible for the Court to apportion

---

[9]     The specific factors examined in connection with both causes of action included bad faith, degree of similarity, and actual confusion.  Summary Judgment Opinion, 127 F. Supp. 3d at 255.

fees among them as to the litigation of the merits of the substantive claims.[10] [11]  Cf. Gracie v. Gracie, 217 F.3d 1060, 1069-1070 (9th Cir. 2000) (stating that attorneys' fees awarded pursuant to Section 1117(a) should be apportioned between Lanham Act claims and non-Lanham Act claims unless the claims are so interrelated as to make such apportionment impossible).  Fees incurred to defend the validity of the trademark against Defendant's counterclaim that it was generic must be also be awarded because it was necessary for Plaintiffs to preserve their trademark in order to use it as the basis for their counterfeiting claim.[12]

      One aspect of the litigation is not compensable under Section 1117(b), however. Plaintiffs' claim for punitive damages under state law, did not, however, arise under the Lanham Act and addresses issues distinct from those that are core to the Lanham Act claims.  Fees incurred solely in connection with that claim must, therefore, be disaggregated from those

---

[10]    Plaintiffs' state-law infringement claims were subject to substantially the same analysis as their federal counterparts and are thus also impossible to apportion.  See Lopez v. Gap, Inc., 883 F. Supp. 2d 400, 430 (S.D.N.Y. 2012) (quoting Lorillard Tobacco Co. v. Jamelis Grocery, Inc., 378 F. Supp. 2d 448, 456 (S.D.N.Y.2005)).

[11]    The Second Circuit has, in dicta, expressed skepticism regarding awards of attorneys' fees under Section 1117(a) for non-Lanham Act claims, even where such claims are intertwined with Lanham Act claims, because the practice could permit large fee awards in cases with very small Lanham Act components.  Sleepy's LLC v. Select Comfort Wholesale Corp., 909 F.3d 519, 532 (2d Cir. 2018).  Indeed, in Sleepy's, the sole Lanham Act claim in an "all-but-the-kitchen-sink" complaint appeared to the appellate court to have been peripheral to the lawsuit.  Id. at 533.  The Court finds little if any basis for such concerns in this case, because the state-law claims here are almost entirely congruent with their Lanham Act counterparts in terms of both the scope of discovery and the legal analysis.  Any apportionment would, therefore, be entirely arbitrary, reducing Plaintiffs' fee award simply because Plaintiffs elected to articulate their claims as ones under New York law as well as under the Lanham Act.

[12]    Defendant was granted summary judgment dismissing Plaintiffs' federal trademark dilution claim.  As Plaintiffs did not contest that aspect of Defendant's motion, it does not appear that Plaintiffs incurred any fees in connection with this claim.  Summary Judgment Order, 127 F. Supp. 3d at 262.

incurred in litigating the Lanham Act issues.  Plaintiffs' attorneys' fee request is therefore denied to the extent it seeks recovery of fees incurred in litigating the punitive damages aspect of the state-law claims and related post-trial motion practice.  Plaintiffs will be directed to recompute their attorneys' fee request to exclude fees incurred in connection with the punitive damages claim.

Defendant also opposes Plaintiffs' expense reimbursement request to the extent that it includes expert witness fees, arguing that fees for expert witnesses are not reimbursable under the Lanham Act and citing Merck Eprova AG v. Brookstone Pharm., LLC, No. 09 CV 9684 RJS, 2013 WL 3146768, at *5 (S.D.N.Y. June 10, 2013).  Plaintiffs do not dispute this proposition, but cite Merck for the proposition that the Court may invoke its inherent powers where the party "clearly acted in bad faith or conducted [it]self dishonestly."  Id. at *5 (quoting Kensington Int'l Ltd. v. Congo, No. 03 CV 4578(LAP), 2007 WL 2456993, at *6 (S.D.N.Y. Aug. 24, 2007)) (internal quotation marks omitted).  Plaintiffs assert that the jury's award of punitive damages, which was necessarily predicated on a finding of gross, wanton, and willful behavior by the Defendant, establishes a proper basis for an award of expert witness fees pursuant to the Court's inherent powers.  Plaintiffs' reliance on the jury's finding as to Defendant's conduct in connection with the events that gave rise to this litigation is, however, misplaced.  An award of fees pursuant to the Court's inherent powers requires a demonstration of bad faith in the conduct of the litigation, not merely in the conduct giving rise to liability.  Cf. id. at *5 (finding that, in addition to the defendants' business model being built on the deception of the public, the defendants' vexatious and wanton conduct within the litigation warranted the shifting of attorneys' fees); see also Ransmeier v. Mariani, 718 F.3d 64, 68 (2d Cir. 2013)

(explaining that a court's inherent power to impose sanctions is grounded in its authority "to control the proceedings that take place <u>before this Court</u>") (emphasis added).

        Here, while Defendant's conduct of this litigation was undoubtedly very aggressive, Plaintiffs have not shown that Costco's defense was conducted in bad faith or dishonestly so as to warrant the use of the Court's inherent power to award expert witness fees. Plaintiffs' request for reimbursement of $519,656.66 in expert witness fees associated with Dr. Jacob Jacoby, of Jacob Jacoby Research, Inc., and Kaczmarek of Navigant Consulting, is therefore denied. <u>See Merck</u>, 2013 WL 3146768, at *5; (<u>see</u> Mitchell Decl. ¶ 25; <u>see</u> <u>also</u> Docket Entry No. 447-18 (specifying the costs to each vendor).) However, for the reasons that follow, Plaintiffs' application for fees for consumer surveys and investigation is granted in the sum of $120,584.48. (Docket Entry No. 447-18.)

        Relatedly, Defendant contends that the Court may not award professional fees to vendors who produced evidence for Plaintiffs, including PhiPower, which conducted a genericism survey, Target Research Group, which contacted Costco customers to determine whether they were actually confused as to the origin of the counterfeit rings, and Investigative Consultants, which photographed the infringing signs and interacted with Costco salespeople. (Mitchell Decl. ¶ 25.) Courts will award expenses for consumer surveys under Section 1117(b) if the Court found them helpful or relied on them in adjudicating the claims, but will decline to grant such fees if the surveys are minimally probative. <u>See</u> <u>Audemars Piguet Holding S.A. v.</u> <u>Swiss Watch Int'l, Inc.</u>, 42 F. Supp. 3d 540, 544-48 (S.D.N.Y. 2014), <u>modified,</u> No. 12 CV 5423 LAP, 2015 WL 150756 (S.D.N.Y. Jan. 12, 2015) (awarding consumer survey expenses under Section 1117). Similarly, courts in this circuit have awarded fees in trademark cases for the costs

of private investigators.  <u>Innovation Ventures, LLC v. Ultimate One Dystric. Corp.</u>, 176 F. Supp. 3d 137, 163-63 (E.D.N.Y. 2016).

Because the Court relied on information from PhiPower's genericism survey[13] and deposition testimony of customers identified by Target Research Group[14] and because an investigator for Investigative Consultants testified at trial, the award of such expenses for services by those vendors is appropriate.  <u>See</u> Summary Judgment Opinion, 127 F. Supp. 3d at 249-51; (Mitchell Decl. ¶ 25).

The Court next turns to the reasonableness of Plaintiffs' requested fees.  "A district court has 'considerable discretion' in determining what constitutes a reasonable fee award," which "should be based on a 'reasonable hourly rate,'" or "'the rate a paying client would be willing to pay,' as determined based on a holistic assessment of all of the circumstances at issue in the case."  <u>Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund v. Vintage Tile & Flooring, Inc.</u>, No. 14-CV-06450 KBF, 2015 WL 3797273, at *6 (S.D.N.Y. June 18, 2015) (quoting <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany</u>, 522 F.3d 182, 190 (2d Cir. 2008)).  A "reasonable hourly rate" should also correspond with the prevailing rates "'in the community for similar services by lawyers of reasonably comparable skill[,] expertise and reputation.'"  <u>Id.</u>

---

[13]    Although Plaintiffs assert that design of this survey was a joint effort between Jacoby and PhiPower, Plaintiffs have submitted no evidence from which the Court can determine what, if any, of Jacoby's costs were attributable to his work in designing and conducting the survey, as opposed to acting as an expert witness.  Accordingly, Plaintiffs' request for fees related to Jacoby's contributions to this survey is denied, but the request for costs attributed to PhiPower, which worked only on the survey, is granted.

[14]    The Court finds that Target Research Group's canvassing of Costco customers to identify those confused as to the origin of the rings is sufficiently akin to the work of a private investigator, or in the alternative, the conduct of a survey, to warrant an award of attorneys' fees.

(quoting McDonald ex rel. Prendergast v. Pension Plan of the NYSA–ILA Pension Tr. Fund, 450 F.3d 91, 96 (2d Cir. 2006)).

Plaintiffs proffer contemporaneous time records in support of their application that specify the dates, hours expended, and nature of the work done for each attorney who has prosecuted this action.  (Docket Entry Nos. 447-1 through 447-9.)  The Court finds that the hourly rates, ranging from $315-$585 per hour for an associate (depending on experience) to between $625 and $845 per hour for a partner, are reasonable considering the prevailing rates for firms engaging in complex litigation in this district.  (Mitchell Decl. ¶¶ 13-24, 26-30; see 2014 ALM Legal Intelligence 2014 Billing Survey, Docket Entry No. 447-26 (providing a survey of billing rates for the nation's 350 largest law firms).)

Plaintiffs' request that fees be calculated at its counsel's undiscounted rate is not opposed by Defendant.  The Second Circuit has upheld the award of fees based on an attorney's full rate notwithstanding a discounted rate actually charged to a prevailing party, reasoning that a defendant who acted willfully, as the jury's award of punitive damages recognizes in this case, should not benefit from a discount negotiated between a plaintiff and its counsel.[15]  Getty Petroleum Corp. v. Barco Petroleum Corp., 858 F.2d 103, 114 (2d Cir. 1988); but see Crescent Publ'g Group, Inc. v. Playboy Enters., 246 F.3d 142, 151 (2d Cir. 2001) (stating that "the actual billing arrangement is a significant, though not necessarily controlling, factor in determining what fee is 'reasonable'" in a copyright case).  Moreover, Plaintiffs' discount was offset, at least in part, by the contingency fee.  The Court will, therefore, award fees at Plaintiffs' counsel's non-discounted rate.

---

[15]    The invoices provided by Plaintiff reflect a 30% discount from the requested fees, negotiated in exchange for a 20% contingency fee.  (Mitchell Decl. ¶ 7.)

The Court has reviewed carefully the Plaintiffs' proffered contemporaneous time records and finds Plaintiffs' request, including the hours expended and nature of the work done, is reasonable, and is adequately supported by documentation.[16]   Accordingly, Plaintiffs are entitled to their requested fees, and expenses less fees paid to expert witnesses, in the sum of $5,898,016.68, less the fees attributable to work performed solely in connection with the pursuit of punitive damages under state law.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion pursuant to Rules 50(b), 52(b), and 59(e) is denied.

Plaintiffs' motion for attorneys' fees and expenses is granted in part and denied in part.  Plaintiffs' attorneys' fee request is denied as to fees incurred solely in the litigation of Plaintiffs' claim for punitive damages and is granted in all other respects.  Plaintiffs' motion is denied to the extent it seeks the reimbursement of expert witness fees, and is granted as to the $120,584.48 sought for reimbursement of expenses incurred in connection with consumer surveys and investigation.  Plaintiffs are directed to file an affidavit enumerating the attorneys' fees incurred solely in litigating the punitive damages claim, and a proposed order awarding (a) the remainder of Plaintiffs' requested attorneys' fees, (b) the consumer survey and investigation

---

[16]     Plaintiffs cite several examples of litigation expenses that they incurred and which they contend demonstrate the contentious nature of this litigation.  These examples include a request for Costco to print material that was originally turned over to Plaintiffs in electronic form, a dispute over whether the correct witness was produced for a deposition, and the notice of appeal of the Summary Judgment Opinion, which Plaintiffs claim was facially barred as interlocutory.  (Mitchell Decl. ¶¶ 33-45.)  Defendant cites these same incidents as examples of extraneous litigation unrelated to the counterfeiting claim that supports its application for fees.  The Court finds no reasons why Plaintiffs' litigation of or opposition to these issues were in any way unjustified or tangential to the Court's determinations given the contentiousness and complexity of this case.

fees referred to in the foregoing paragraph, and (c) disbursements in the amount of $176.666.70,

no later than **January 21, 2019**.  Any opposition to the proposed order, and any counterorder,

must be filed by **January 28, 2019**.  Any reply submission must be filed by **February 1, 2019**.

Courtesy copies of the filings must be provided for Chambers.

This Memorandum Order resolves Docket Entry No. 449.

SO ORDERED.

Dated: New York, New York
 January 7, 2019

 /s/ Laura Taylor Swain
 LAURA TAYLOR SWAIN
 United States District Judge