# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of August, two thousand twenty.

Before:     Pierre N. Leval,
            Reena Raggi,
            Debra Ann Livingston,
                *Circuit Judges*,

_____

Tiffany and Company, Tiffany (NJ) LLC,

    Plaintiffs-Counter-Defendants-Appellees,

v.

Costco Wholesale Corporation,

    Defendant-Counter-Claimant-Appellant.

_____

**JUDGMENT**

Docket Nos. 17-2798(L),
19-338(CON), 19-404 (CON)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Sep 08 2020

The appeals in the above captioned case from an order and judgment of the United States District Court for the Southern District of New York were argued on the district court's record and the parties' briefs. Upon consideration thereof,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the judgment of the district court is VACATED, and the cause is REMANDED to the district court for trial.

For the Court:
Catherine O'Hagan Wolfe,
Clerk of Court

*Catherine O'Hagan Wolfe*

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

*Catherine O'Hagan Wolfe*

17-2798-cv (L)
*Tiffany, et al. v. Costco*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2019

(Argued: January 21, 2020          Decided: August 17, 2020)

Nos. 17-2798-cv, 19-338, 19-404

_____

TIFFANY AND COMPANY; TIFFANY (NJ) LLC

*Plaintiffs-Counter-Defendants-Appellees*

-v.-

COSTCO WHOLESALE CORPORATION,

*Defendant-Counter-Claimant-Appellant*

_____

Before:     LEVAL, RAGGI, and LIVINGSTON, *Circuit Judges.*

Tiffany brought suit against Costco under the Lanham Act and New York law, alleging that Costco was liable for, *inter alia*, trademark infringement and counterfeiting in connection with its sale of diamond engagement rings identified by point-of-sale signs containing the word "Tiffany." Though Costco does not dispute that Tiffany has a valid, registered trademark for the word "Tiffany," it argued before the district court that it was using that word in a different, widely recognized sense to refer to a particular style of pronged diamond setting not exclusive to rings affiliated with Tiffany. It therefore claimed that its use of the

term was not likely to confuse consumers—the essence of a claim for infringement—and that even if some degree of confusion was likely, it was entitled under the Lanham Act to the descriptive fair use of an otherwise protected mark. The district court (Swain, *J.*) granted summary judgment for Tiffany, holding that no reasonable jury could credit either of Costco's arguments and further concluding that Costco's infringement constituted counterfeiting as a matter of law. Following an advisory jury trial on the question of damages, the district court awarded Tiffany Costco's trebled profits along with punitive damages and prejudgment interest, for a total of $21,010,438.35. On appeal, Costco argues that the district court's determination of liability was inappropriate at the summary judgment stage. We agree. Accordingly, the judgment of the district court is VACATED and the case is REMANDED for trial.

| FOR PLAINTIFFS-COUNTER-DEFENDANTS-APPELLEES: | JEFFREY A. MITCHELL (Judith R. Cohen; Brett D. Katz, *on the brief*), Browne George Ross LLP, New York, NY, *for Tiffany and Company and Tiffany (NJ) LLC.* |
| --- | --- |
| FOR DEFENDANT-COUNTER-CLAIMANT-APPELLANT: | DAVID H. BERNSTEIN (Michael Schaper; Jared I. Kagan, *on the brief*), Debevoise & Plimpton LLP, New York, NY, *for Costco Wholesale Corporation.* |

DEBRA ANN LIVINGSTON, *Circuit Judge*:

Defendant-Counter-Claimant-Appellant Costco Wholesale Corporation ("Costco") appeals from an August 25, 2017 judgment of the United States District Court for the Southern District of New York (Swain, *J.*) awarding Plaintiffs-Counter-Defendants-Appellees Tiffany and Company and Tiffany (NJ) LLC (together, "Tiffany") trebled profits, prejudgment interest, and punitive damages

totaling $21,010,438.35, resulting from a determination on summary judgment that Costco was liable to Tiffany for trademark infringement and counterfeiting in violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1117(a) and (b), and unfair competition in violation of New York law.[1] This suit arose from Costco's sale of otherwise unbranded diamond engagement rings identified by point-of-sale signs containing the word "Tiffany." Tiffany claimed, and the district court agreed, that Costco's use of a term identical to Tiffany's trademark in connection with the sale of engagement rings violated the Lanham Act as a matter of law.

In response, Costco argues that "Tiffany" is not only a brand name, but also a widely recognized descriptive term for a particular style of pronged ring setting, and that it used the word on point-of-sale signs solely to identify engagement rings incorporating such settings. It emphasizes, among other things, that it also sold

---

[1] The Lanham Act provides, in relevant part, that "Any person who shall, without consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale . . . of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant." 15 U.S.C. § 1114(1)(a). A defendant found liable for the foregoing infringement must typically pay to the plaintiff "(1) [its] profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." *Id.* § 1117(a). "In a case involving [knowing and intentional] use of a counterfeit mark" the defendant will instead be liable for "three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee." *Id.* § 1117(b). In a case involving a counterfeit mark, a plaintiff may also elect to receive statutory damages in lieu of profits and/or damages. *Id.* § 1117(c).

several other styles of unbranded diamond engagement ring identified by similar point-of-sale signs, each of which indicated the name of the corresponding ring's setting style and none of which used the word "Tiffany." In light of this and other related evidence, Costco contends that a reasonable jury could conclude that its use of the word "Tiffany" was not likely to confuse its customers and that, even if some confusion was likely, Costco was entitled under the Lanham Act to use the term "in good faith only to describe" the style of its rings. 15 U.S.C. § 1115(b)(4). We agree and accordingly VACATE the judgment of the district court and REMAND the case for trial.

## BACKGROUND

### I. Factual Background

Founded in 1837 by Charles Lewis Tiffany, Tiffany is a major producer of fine jewelry, including diamond engagement rings. Tiffany holds 97 separate trademarks related to the company name, including registrations for the use of the word "Tiffany" in connection with "Decorative Art Objects Made in Whole or in Part of Precious or Semiprecious Metals," TIFFANY, Registration No. 1,228,409, and for the stylized word mark "Tiffany" in connection with "Jewelry for Personal Wear," TIFFANY, Registration No. 133,063. At some point in the late nineteenth

century, Charles Lewis Tiffany developed and sold an engagement ring incorporating a particular style of six-prong diamond setting. Since that time, numerous advertisements, dictionaries, trade publications, and other documents have referred to diamond settings reminiscent of that style as "Tiffany settings."

One enterprise that claims to have adopted that century-old practice is Costco, which operates a chain of membership-only warehouse stores at which shoppers may purchase various brand-name, store-brand, and generic goods across numerous product categories. Among these products are diamond engagement rings, which Costco displays along with other jewelry in display cases near the entrance to its stores. Costco refers to its engagement rings, which are produced specially for Costco by a supplier called R.B. Diamond Inc., as "unbranded." Costco sells engagement rings with a variety of setting styles, an assortment that during the relevant time period included a bezel setting, cathedral setting, channel setting, and the so-called Tiffany setting.

Costco identified each of its engagement rings using small, white point-of-sale signs that displayed certain information about the rings (ostensibly including setting style) in uniform black text, along with their prices in larger, bold text. In general format, but not necessarily in size, these signs resembled other point-of-

sale signs that identified virtually all items for sale throughout Costco stores. Costco attests that it drew the information for the point-of-sale signs in its jewelry cases directly from descriptions supplied by vendors like R.B. Diamond. According to Costco, the various point-of-sale signs identifying rings with a Tiffany setting at times identified the ring setting using the phrases "Tiffany setting," "Tiffany set," or "Tiffany style," and at other times used only the word "Tiffany" for that purpose. Costco apparently identified other setting styles in a similarly variable manner.

In November 2012, a Costco customer alerted Tiffany that she had observed engagement rings that she believed were being advertised as Tiffany rings at a Costco store in Huntington Beach, California. Tiffany engaged an investigation service to visit that store, where investigators observed a jewelry display case containing, among other items, one engagement ring displayed next to a sign reading "639911 / PLATINUM TIFFANY / .70 VS2,I ROUND / DIAMOND RING / **3199.99**" and a second ring displayed next to a sign reading "605880 / PLATINUM TIFFANY VS2,I / 1.00CT ROUND BRILLIANT / DIAMOND SOLITAIRE RING / **6399.99**."[2] J.A. 2,914 (emphasis in original).

---

[2] The slashes in the foregoing quotations indicate line breaks in the original

On December 10, 2012, Tiffany contacted Costco regarding the two rings its investigators observed, asserting that "[t]he designation of the ring[s] by Costco as 'Tiffany' was not only a misrepresentation of the product, but it also constitutes infringement and counterfeiting." J.A. 2,509. Costco maintains that within one week, it voluntarily removed all uses of the word "Tiffany" from the signs in its jewelry display cases and that since that time, it has not listed a setting style on signs identifying any rings bearing the so-called Tiffany setting.

Several months later, after Tiffany had filed the operative complaint in this case, Costco sent a letter to all customers who had purchased engagement rings with Tiffany settings to alert them that Tiffany had initiated the suit now on appeal. The letter explained that Costco's point-of-sale signs had "used the word 'Tiffany' to indicate that [the associated] ring had a Tiffany-style pronged setting," asserted that Costco "do[es] not believe [its] signs were inaccurate," and reminded buyers that Costco's return policy entitled them to return their rings for a full refund at any time. Approximately 1.3% of customers who received this letter returned their rings to Costco.

---

document.

## II.    Procedural History

On Valentine's Day 2013, approximately two months after Costco ceased using the word "Tiffany" on any signs in its jewelry display cases, Tiffany commenced the present action against Costco in the United States District Court for the Southern District of New York. Tiffany's complaint alleged that Costco was liable for trademark infringement, dilution, counterfeiting, unfair competition, false and deceptive business practices, and false advertising in violation of the Lanham Act and New York law. Notably, Tiffany's complaint alleged these various trademark violations only in connection with those of Costco's point-of-sale signs that included the word "Tiffany" unaccompanied by the words "setting," "style," or "set."

In response, Costco argued that its use of the word "Tiffany" to describe certain rings' setting styles was not infringement and raised, *inter alia*, a "fair use" affirmative defense under the Lanham Act, asserting that it used the term "otherwise than as a mark, . . . in good faith only to describe" its ring settings. J.A. 89 (quoting 15 U.S.C. § 1115(b)(4)). Costco also filed a counterclaim seeking to modify or partially cancel any federal trademark registrations that might prevent retailers from using the word "Tiffany" to indicate that a ring has a Tiffany setting.

The case proceeded to discovery, during which time Tiffany filed an unsuccessful summary judgment motion seeking to dismiss Costco's counterclaim. During discovery, the parties compiled a voluminous evidentiary record including the declarations and deposition testimony of Costco customers and employees, expert declarations, sales records, and physical specimens of both parties' engagement rings and ring packaging. Following the completion of discovery, Tiffany again moved for summary judgment, this time seeking not only to dismiss Costco's counterclaim but also to hold Costco liable for trademark infringement and counterfeiting as a matter of law. Costco cross-moved for summary judgment seeking, *inter alia*, dismissal of Tiffany's counterfeiting and punitive damages claims.

On September 8, 2015, the district court issued an opinion and order granting Tiffany's summary judgment motion in its entirety, concluding that Costco had failed to raise a genuine issue of material fact as to any of the factors relevant to the infringement analysis, that Costco's fair use defense failed as a matter of law, and that Costco's infringement constituted counterfeiting as a matter of law. In the same order, the district court ruled that punitive damages would not be available to Tiffany under the Lanham Act, but that they would be

available under New York law.

Following its determination of Costco's liability, the district court held a trial from September 19 through October 5, 2016 on the issue of Tiffany's entitlement to recovery in the form of profits and statutory damages pursuant to 15 U.S.C. § 1117. At trial, the district court instructed the jury that it had already found Costco liable for trademark infringement, unfair competition under New York law, and counterfeiting, and that Costco's conduct was willful. The jury awarded Tiffany $3.7 million in an accounting of Costco's profits, a further $1.8 million on the grounds that the award of profits was inadequate compensation, and an additional $8.25 million in punitive damages.

In a subsequent order, the district court characterized the accounting of Costco's profits as an equitable remedy and deemed the jury's verdict on that score to be advisory. Making its own determination as to damages, the district court awarded Tiffany trebled profits in the amount of $11.1 million (based on the advisory jury's award of $3.7 million), along with the additional $8.25 million in punitive damages awarded by the jury.[3] The district court entered its final

---

[3] 15 U.S.C. § 1117(b) instructs the court to award treble profits or damages for a knowing and intentional violation involving the use of a counterfeit mark.

judgment and damages award, which ran to $21,010,438.35 including prejudgment interest, on August 25, 2017.

Costco appealed the judgment on September 8, 2017. Then, on September 22, Costco requested that the district court amend its findings under Federal Rule of Civil Procedure 52(b); amend the judgment under Rule 59(e); and grant Costco judgment as a matter of law or, in the alternative, a new trial under Rule 50(b). Pursuant to Federal Rule of Appellate Procedure 4(a)(4), we stayed Costco's appeal pending the district court's resolution of Costco's motions. The district court denied each of these motions on January 7, 2019. We removed the stay on January 23, 2019, and this appeal followed.

## DISCUSSION

We review the district court's rulings on summary judgment *de novo*, resolving all ambiguities and drawing all permissible inferences in favor of the nonmoving party. *Jones v. County of Suffolk*, 936 F.3d 108, 114 (2d Cir. 2019). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, we will affirm a grant of summary judgment "only where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law," *id.* (internal quotation marks omitted), or in other words,

where no reasonable jury could return a verdict for the nonmoving party, *see Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001).

On appeal, Costco argues that the district court erroneously granted Tiffany's motion for summary judgment on its infringement and counterfeiting claims, improperly depriving Costco of the opportunity to present its case to a jury. In particular, Costco contends that after resolving several critical facets of the trademark infringement analysis in Tiffany's favor without sufficiently crediting Costco's contrary evidence, the district court erroneously rejected Costco's fair use defense and held Costco liable for trademark infringement and counterfeiting as a matter of law. For the reasons that follow, we agree that Costco has raised a question of material fact as to its liability for trademark infringement and counterfeiting and, relatedly, its entitlement to present its fair use defense to a jury. Accordingly, we vacate the district court's grant of summary judgment, and remand the case for trial.

## I. Tiffany's Trademark Infringement Claim

The district court concluded that no reasonable jury could find either that Costco's use of the word "Tiffany" was not likely to cause confusion with Tiffany's registered mark or that Costco's use of the word constituted fair use. We conclude

that the district court erred on both points.

## A. Tiffany's Infringement Claim

Under the Lanham Act, a plaintiff alleging trademark infringement must demonstrate that (1) "it has a valid mark that is entitled to protection" and that (2) the defendant's "actions are likely to cause confusion with [that] mark." *The Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1996). "[A] plaintiff does not have to show necessarily that consumers would believe that the defendant's goods or services are from the same source as those of the plaintiff." *Id*. Rather, a defendant may also be liable for trademark infringement if its "actions are 'likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association' of the defendant's goods or services with those of the plaintiff." *Id.* (quoting 15 U.S.C. § 1125(a)(1)(A)); *see also Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 161–63 (2d Cir. 2016). That said, the mere possibility of confusion is not enough. To prevail in a trademark infringement action, a plaintiff must prove "a *probability* of confusion . . . affecting numerous ordinary prudent purchasers." *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 383 (2d Cir. 2005) (emphasis added) (internal quotation marks omitted).

With the first prong of the infringement inquiry presumptively satisfied,[4] the principal question in this appeal is whether Costco's use of the word "Tiffany" was likely to cause confusion with Tiffany's registered mark. We evaluate this question using the test articulated in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961) ("*Polaroid*"), which balances the following eight factors: (1) the strength of the trademark; (2) the degree of similarity between the plaintiff's mark and the defendant's allegedly imitative use;[5] (3) the proximity of the products and their competitiveness with each other; (4) the likelihood that the plaintiff will "bridge the gap" by developing a product for sale in the defendant's market;[6] (5)

---

[4] The Lanham Act treats trademark registration as "conclusive evidence of the validity of the registered mark . . . , of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce," 15 U.S.C. § 1115, and Costco does not contest that Tiffany has registered "Tiffany" as a mark in connection with the sale of jewelry.

[5] We have often referred to this factor as examining the similarity between the plaintiff's and defendant's *marks*. *See, e.g.*, *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009). But a defendant that uses a term identical to a plaintiff's registered mark may be liable for infringement even if it cannot be said to use that term "as a mark," that is, "as a symbol to attract public attention." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) (internal quotation marks omitted); *see also id.* at 306–07 (explaining that customer confusion may exist even where the defendant was not attempting to establish a competing mark, and identifying cases in which we have "allowed certain claims to proceed even where the defendant is not using the plaintiff's mark as a mark").

[6] The district court did not consider the likelihood that Tiffany would "bridge the gap" into Costco's market below, and neither party argues that this factor is relevant on appeal. As the district court correctly explained, Costco's and Tiffany's diamond

14

evidence of actual consumer confusion; (6) evidence that the defendant adopted the imitative term in bad faith; (7) the respective quality of the products; and (8) the sophistication of the relevant population of consumers. *See Polaroid*, 287 F.2d at 495; *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009). The "evaluation of the *Polaroid* factors is not a mechanical process where the party with the greatest number of factors weighing in its favor wins. Rather, a court should focus on the ultimate question of whether consumers are likely to be confused." *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000) (internal quotation marks omitted).

Though our past cases have always recognized that the "district court's balancing of the *Polaroid* factors is subject to *de novo* review," some of these cases have purported to afford "considerable deference" to district courts' findings "with respect to predicate facts underlying each *Polaroid* factor," *Playtex Prods., Inc. v. Ga.-Pac. Corp.*, 390 F.3d 158, 162 (2d Cir. 2004), or even to its "finding on each factor" generally, *Natural Organics, Inc. v. Nutraceutical Corp.*, 426 F.3d 576, 578 (2d

---

engagement rings are already in competitive proximity. *See, e.g., Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 586 (2d Cir. 1993) ("Since the [products] . . . compete in the same market, the district court correctly found that the likelihood-of-bridging-the-gap factor . . . was irrelevant.").

15

Cir. 2005); *see also Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 478 (2d Cir. 1996). These cases should not be read to suggest that "a district court deciding a motion for summary judgment in a trademark infringement case has . . . greater discretion than it would have in a non-trademark case to resolve disputed issues of fact or draw inferences against the non-moving party." *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 216 (2d Cir. 2003), *abrogated on other grounds by 4 Pillar Dynasty LLC v. N.Y. & Co.*, 933 F.3d 202 (2d Cir. 2019); *see also Kelly-Brown v. Winfrey*, 659 F. App'x 55, 58 n.3 (2d Cir. 2016) (summary order) (noting the inconsistency between a "considerable deference" standard and our responsibility to review a district court's summary judgment ruling *de novo*).

Though "considerable deference" has become an oft-repeated incantation since we first observed in *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.* "that the district court's detailed findings on each of the *Polaroid* factors are entitled to considerable deference," 799 F.2d 867, 873 (2d Cir. 1986) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 & n.6 (1986), for the proposition that a "district court's findings of fact on summary judgment, although not required, 'are extremely helpful to a reviewing court'"), we have never purported to expand a district court's license to *make* factual findings at summary judgment beyond those very

limited circumstances in which "the uncontroverted evidence and the reasonable inferences to be drawn in the nonmoving party's favor" support only a single conclusion, *see Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). In other words, a district court will be authorized to find the sorts of facts that are entitled to deference only in circumstances in which the traditional summary judgment standard has been satisfied. And even when it is so authorized, "its subsidiary conclusions as to each *Polaroid* factor . . . are not immune from appellate review." *Patsy's Brand*, 317 F.3d at 216.

As in any other area of law, then, "[i]f a factual inference must be drawn to arrive at a particular finding on a *Polaroid* factor, and if a reasonable trier of fact could reach a different conclusion, the district court may not properly resolve that issue on summary judgment." *Cadbury*, 73 F.3d at 478; *see also Liberty Lobby*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth . . . but to determine whether there is a genuine issue for trial."). Moreover, insofar as the determination of whether one of the *Polaroid* factors favors one party or another involves a legal judgment— which it often does[7]—we must review that determination *de novo. See Knight v.*

---

[7] "For example, there is a considerable component of law in the determination

17

*State Univ. of N.Y. at Stony Brook*, 880 F.3d 636, 640 (2d Cir. 2018) ("We review questions of law *de novo*."). Accordingly, in the majority of cases, we should review *de novo* both a district court's determinations as to each *Polaroid* factor and its ultimate balancing of those factors.

Here, the district court found that "Costco has proffered no evidence that raises a disputed issue of material fact with respect to any of the *Polaroid* factors" and that Tiffany therefore "demonstrated a likelihood of confusion" sufficient to warrant summary judgment in its favor as to its trademark infringement claims. *Tiffany & Co. v. Costco Wholesale Corp.*, 127 F. Supp. 3d 241, 247 (S.D.N.Y. 2015). On appeal, Costco principally contests the district court's analysis of three of these factors: whether Costco's customers were actually confused, whether Costco adopted Tiffany's mark in bad faith, and whether the relevant population of consumers was sufficiently sophisticated to avoid confusion. We conclude that Costco has raised a triable question as to each of these factors and, by extension, the ultimate issue of whether Costco's actions generated a likelihood of customer confusion.

---

whether a mark has the degree of strength necessary to weigh in favor of the party claiming infringement." *Patsy's Brand*, 317 F.3d at 216.

## 1. Actual Confusion

Concluding that Tiffany had established actual customer confusion as a matter of law, the district court pointed to two categories of evidence proffered by Tiffany. First, it referred to the deposition testimony of six Costco customers, each of whom alleged that he or she was confused by Costco's point-of-sale signs. Second, it described the results of a customer confusion survey and report created by Tiffany's expert, Dr. Jacob Jacoby. Dr. Jacoby's report included responses from 944 people surveyed through the internet, 606 of whom identified themselves as Costco patrons who thought that "they [or their significant other] would consider buying a diamond engagement ring at Costco that cost at least $2,500." J.A. 1,452. Jacoby estimated that of these 606 responders—each of whom was shown a photo of a diamond engagement ring alongside one of Costco's point-of-sale signs,[8] either in isolation or after seeing photos of other branded items sold by Costco— "more than two out of five . . . were likely confused into believing that Tiffany & Co. was the source of the rings." *Id.* at 1,454. The district court deemed this evidence unrebutted and concluded that Costco had failed to raise a factual

---

[8] The sign in Dr. Jacoby's survey read "639911 / PLATINUM TIFFANY / .70CT VS2,I ROUND / DIAMOND RING / **3199.99**." J.A. 1,539 (emphasis in original).

question as to whether customers were actually confused by its use of the word "Tiffany" on its signs. For the following reasons, we disagree.

To begin, Costco did seek to rebut Tiffany's evidence of confusion. First, it argued that the testimony of six customers—out of the 3,349 customers who purchased Tiffany-set rings at Costco during the relevant period—was only *de minimis* evidence of confusion and insufficient to resolve the issue definitively against Costco. Second, and more importantly, it submitted a report from its own expert, Dr. Russel S. Winer, criticizing Dr. Jacoby's survey methodology and results. Dr. Winer opined that Dr. Jacoby should have targeted only customers with a "present purchase interest in buying a diamond ring," and that Dr. Jacoby's actual survey respondents "could not have been a group whose perceptions provided any valid or reliable predictor of past or future Costco diamond ring purchaser beliefs*." Id*. at 4,226. Dr. Winer further asserted that Dr. Jacoby's study was fatally flawed due to "artificial, contrived and biasing" stimuli that "ignore[d] the reality of the customer purchase process." *Id.* at 4,228. For example, Dr. Winer noted that rather than showing survey responders a point-of-sale sign as it would have appeared to customers—in a display case surrounded by other rings identified by "other tags . . . , some of which would have other setting and style

types indicated"—Jacoby's survey showed them only a single ring and sign in isolation.[9] *Id*. at 4,305. Winer also assessed that on top of these flawed survey conditions, Dr. Jacoby's screening questions, which required responders to sort words into brand names and descriptive words, "trained" those responders to "bias[] the responses in favor of selecting Tiffany as a brand identifier." *Id*. at 4,303.

We conclude that this evidence was sufficient to raise a question as to whether potential buyers of Costco's diamond engagement rings were actually confused by the appearance of the word "Tiffany" on Costco's signs. In concluding otherwise, the district court observed that Dr. Winer's criticisms go to the weight of Tiffany's evidence rather than its admissibility and that he did not perform his own survey to demonstrate affirmatively that Costco's customers were *not* confused. But the weight to be given to a particular piece of evidence can be determinative of whether the moving party is entitled to summary judgment or

---

[9] Dr. Winer asserted in his report that although both of the images Dr. Jacoby provided in his survey—one depicting only a single point-of-sale sign and the other depicting a small section of a Costco display case—provided insufficient context to replicate the experience of actual customers in a Costco store, the decrease in putative confusion among the survey respondents who saw the more contextual image was "striking." J.A. 4,305. A jury was entitled to consider, as Dr. Winer did, "how the percentage [of customers identifying 'Tiffany' as a descriptive word rather than a brand] might have changed had the context provided been comparable to the real world experience." *Id.* at 4,307.

whether a jury could find a material fact favorable to the non-moving party. And in the circumstances here, neither of the putative shortcomings on which the district court relied is sufficient to resolve the customer-confusion factor in Tiffany's favor as a matter of law. Tiffany bears the burden of proof on its own motion for summary judgment. Resolving all factual inferences in Costco's favor, a reasonable jury could find that Tiffany failed to present sufficiently persuasive evidence to meet that burden.

### 2. Costco's Good Faith.

In analyzing whether a defendant has acted in bad faith, the question is whether the defendant attempted "to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." *Star Indus.*, 412 F.3d at 388. We have cautioned that "where the allegedly infringing mark is identical to the registered mark, and its use began subsequent to the plaintiff's trade-mark registration, the defendant must carry the burden of explanation and persuasion." *Kiki Undies Corp., v. Promenade Hosiery Mills, Inc.*, 411 F.2d 1097, 1101 (2d Cir. 1969). But "[p]rior knowledge of a senior user's trade mark does not necessarily give rise to an inference of bad faith and may [actually] be consistent with good faith." *Sports*

*Auth.*, 89 F.3d at 964 (quoting *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 397 (2d Cir. 1995)). Indeed, "the intent to compete by imitating the successful features of another's product is vastly different from the intent to deceive purchasers as to the source of [one's own] product." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 123 (2d Cir. 2001) (internal quotation marks and alterations omitted); *see also George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1541 (2d Cir. 1992) ("Absent confusion, imitation of certain successful features in another's product is not unlawful . . . ."). And as we have consistently observed, "subjective issues such as good faith are singularly inappropriate for determination on summary judgment." *Cadbury*, 73 F.3d at 483 (internal quotation marks and alterations omitted) (declining to grant summary judgment on the matter of good faith even where the plaintiff's "registered mark is identical—in style as well as in name—to [the defendant's] adopted logo . . . [and the defendant's] explanation is not particularly persuasive").

The district court concluded that "*no* rational finder of fact could conclude that Costco acted in good faith in adopting the Tiffany mark." *Tiffany*, 127 F. Supp. 3d at 252 (emphasis added). It cited several pieces of evidence proffered by Tiffany, including an email from a Costco employee indicating that Costco's jewelry boxes

should have a more "Tiffany or upscale look," the deposition testimony of a Costco inventory control specialist who acknowledged that she took no action in response to two emails ostensibly indicating customer and employee confusion over the source of Costco's rings, and photographs and emails that suggest efforts by Costco to "copy Tiffany's designs by making references to Tiffany designs and sharing links to Tiffany's website [in communications with vendors]." *Id.* at 251–52.

The district court acknowledged Costco's contrary evidence that it had never attempted to adopt the Tiffany mark, that its signs actually used the word "Tiffany" as a brand-independent description of a particular style of diamond setting, and that those signs merely reflected information provided by its own suppliers. *Id.* at 252. The court nonetheless concluded that a jury could not reasonably credit an argument that "Costco jewelry buyers used the word 'Tiffany' in a generic sense when communicating with vendors, while at the same time asking those vendors to copy Tiffany & Co. designs, and that signage incorporating the word 'Tiffany' on the resulting merchandise was nothing more than clerical duplication of a generic reference from an invoice." *Id.* Again, we disagree.

Although a jury could reasonably draw the conclusion that Costco's interest in emulating Tiffany's designs spilled over into an intent to mislead buyers as to the origins of its own jewelry, it could also reasonably conclude that Costco intended to borrow "certain successful features [from Tiffany's] product" without implying that Tiffany actually produced or endorsed the jewelry at issue. *George Basch Co.*, 968 F.2d at 1541. We have consistently recognized that intent to copy a product's useful, nonprotected attributes should not be equated automatically with an intent to deceive. *See Nora Beverages*, 269 F.3d at 123. Therefore, Costco's admitted intent to sell jewelry that *looks like* Tiffany's—as opposed to an intent to have its jewelry pass as Tiffany's—cannot be enough to justify a finding that Costco acted in bad faith in connection with Tiffany's trademark infringement claim.

In concluding otherwise, the district court overlooked substantial evidence that Costco did *not* attempt to sow confusion among its customers. As the district court recognized in its good faith analysis, two Costco representatives—a diamond buyer and an assistant general merchandise manager—submitted declarations affirming that Costco inventory control personnel took the term "Tiffany" directly from vendor descriptions, that the representatives understood

25

Tiffany as a "generic style name," and that indeed it was "the only name . . . used to denote [that] type of pronged setting."[10] J.A. 2,927. Costco backed these claims with evidence that the term "Tiffany" has been used as a generic descriptor—both explicitly in conjunction with a word like "setting" and implicitly by itself—in thousands of advertisements, dictionaries, trade publications, and other public documents since the late 1800s. And as the district court recognized elsewhere in its decision, Costco presented evidence that its rings were not branded with Tiffany's mark (and indeed were branded with R.B. Diamond's logo instead); that the rings came in unbranded containers bearing no resemblance to Tiffany's distinctive robin's-egg blue packaging; that buyers received *Costco*-branded receipts, appraisal forms, and other sales documents; and that Costco's return policy permitted customers to return their rings any time after purchase. [11]

---

[10] As far as we can tell, Tiffany's only reply to this evidence is that after Costco voluntarily stopped using the name "Tiffany" on its signs, it was still able to describe those rings' settings as "Solitaire." But "Solitaire," which describes any single gem in a simple setting, is undeniably a less descriptive term than "Tiffany," which ostensibly describes a specific type of six-prong setting.

[11] Both Tiffany and Costco point to a customer email asking whether the word "Tiffany" on the label referred to the "Tiffany setting or Tiffany brand," J.A. 15,333. Consistent with Costco's argument that it acted in good faith, a Costco employee responded to the customer's email that "[i]t means Tiffany setting." *Id.* at 15,334. Notably, the jury could also consider this email as evidence of an absence of actual customer confusion. *See Nora Beverages*, 269 F.3d at 124 ("Inquiries about the relationship between the owner of a mark and an alleged infringer do not amount to actual confusion. Indeed,

Crediting this evidence, a reasonable jury could conclude that Costco did not intend to mislead its customers and that signs bearing the word "Tiffany" were the product of a good-faith attempt to communicate to its customers the setting style of certain rings that it sold.[12]

### 3. Consumer Sophistication

"Our analysis of consumer sophistication 'consider[s] the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods.'" *Star Indus.*, 412 F.3d at 390 (quoting *Sports Auth.*, 89 F.3d at 965); *see also Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 746 (2d Cir. 1998). In general, "the more sophisticated the purchaser, the less likely he or she will be confused by the presence of similar marks in the marketplace." *Savin Corp.*

---

such inquiries are arguably premised upon a *lack* of confusion between the products such as to inspire the inquiry itself." (emphasis in original)).

[12] A jury would also be entitled to infer good faith from Costco's conduct after Tiffany asserted that Costco's had infringed its trademark. Costco offered evidence that it voluntarily ceased using the word "Tiffany" on its product signs within a week of receiving Tiffany's demand letter. And after Tiffany filed its complaint, Costco wrote to all purchasers of Costco rings bearing a Tiffany-style setting alerting them to Tiffany's claim and reminding them of their right to return their purchase at any time for a full refund. While Tiffany disputes certain of these facts, we assume in assessing Tiffany's motion for summary judgment that a jury would resolve those disputes in Costco's favor.

*v. Savin Grp.*, 391 F.3d 439, 461 (2d Cir. 2004). Likewise, "[t]he greater the value of an article[,] the more careful the typical consumer can be expected to be." *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 627 F.2d 628, 631 (2d Cir. 1980) (internal quotation marks omitted). Although sophistication may usually be proven by direct evidence, including expert opinions or surveys, "in some cases a court is entitled to reach a conclusion about consumer sophistication based solely on the nature of the product or its price." *Star Indus.*, 412 F.3d at 390.

The district court correctly identified the competing expert reports submitted by Dr. Jacoby and Dr. Winer as the principal evidence on the question of customer sophistication. As indicated above, Dr. Jacoby's study assumed that survey responders who said they "would consider buying a diamond engagement ring at Costco" were representative of customers who would likely interact with Costco's allegedly infringing point-of-sale signs. Tiffany offered no other evidence regarding the sophistication of the relevant consumer population. In response, Dr. Winer countered that the purchase of an engagement ring is a "high involvement" transaction, and that actual purchasers—as opposed to those who merely "would consider buying an engagement ring"—have, or acquire, substantial "subject matter knowledge and familiarity with the relevant vocabulary." J.A. 4,226.

The district court nonetheless determined that Costco failed to raise a question as to whether its customers were sufficiently sophisticated that its use of the word "Tiffany" would not create confusion. As in its analysis of actual confusion, the district court concluded that Costco's evidence goes only to "the weight that Tiffany's evidence should be accorded, and fails to provide competing affirmative evidence regarding the relevant population of consumers." *Tiffany*, 127 F. Supp. 3d at 254. Once again, its appraisal erroneously shifted Tiffany's burden onto Costco. As explained above, the weight of a piece of evidence can be determinative as to whether summary judgment is appropriate. What's more, it is simply incorrect to say that Costco proffered no affirmative evidence regarding customer sophistication. As the district court otherwise described, Costco *did* offer evidence, in the form of Dr. Winer's declaration, that "[i]n the case of purchasing a diamond ring, . . . actual prospective purchasers proximal to the purchase decision definitely know more than people not in the market." J.A. 4,300. And as Dr. Winer's report further opined:

> [A] group of 'actively in the market' prospective diamond ring buyers would clearly be more attuned to the marketing of diamond rings, the jargon associated with diamond rings, and the shopping process and experience associated with diamond rings, and thus be more knowledgeable about whether the word Tiffany in the context of the small product labels referred to the 'Tiffany & Co.' brand or was being

used to describe a particular type of ring setting.

*Id.* Indeed, we have previously recognized that "[t]he purchaser of a diamond ring, particularly of a wedding or engagement ring, will be most discriminating in his purchase, and make it carefully and deliberately." *J.R. Wood & Sons, Inc. v. Reese Jewelry Corp.*, 278 F.2d 157, 159 (2d Cir. 1960). A jury could reasonably conclude, by crediting Costco's evidence and rejecting Tiffany's, that the relevant population of consumers would be sufficiently attentive and discriminating as to recognize that Tiffany had nothing to do with Costco's diamond engagement rings.

### 4. Overall Likelihood of Customer Confusion

We conclude that Costco's evidence has, when considered in the aggregate, created a genuine question as to the likelihood of customer confusion. *See Star Indus.*, 412 F.3d at 383. Our conclusion rests primarily on the combination of (1) Costco's evidence that "Tiffany" is a broadly recognized term denoting a particular style of pronged ring setting and (2) its further indications, backed by prior pronouncements of this Court, that purchasers of diamond engagement rings educate themselves so as to become discerning consumers.

Affording full credit to this evidence, a jury could reasonably conclude that

30

consumers of diamond engagement rings would know or learn that "Tiffany" describes a style of setting not unique to rings manufactured by Tiffany, and recognized that Costco used the term only in that descriptive sense. Such consumers may also be distinctly capable of recognizing that Costco's rings were *not* manufactured by Tiffany—based, for example, on their price, place of purchase, packaging, or paperwork—and consequently be particularly unlikely to be confused by any aspect of Costco's point-of-sale signs. Moreover, *any* Costco customer looking at a Tiffany-set ring identified by a sign that includes the word "Tiffany" would also see a jewelry case full of other unbranded rings, each identified by a sign indicating its own setting type in a similar or identical way.

To be sure, Tiffany has made a persuasive (and essentially unrebutted) showing that the general public associates its famous brand with high-quality engagement rings that compete directly with those sold by Costco. But even the potential for confusion inherent in such circumstances cannot dictate a judgment for Tiffany in light of Costco's evidence that engagement-ring purchasers exercise care and become savvy, and that the context Costco provided at the point of sale was sufficient for those careful customers to recognize that its signs used "Tiffany" only as a generic descriptor. In short, Costco's use of the word "Tiffany" to

describe engagement rings may have created a *possibility* of confusion. It may even be the more reasonable inference that confusion was *likely*. But in light of Costco's competing evidence—and Tiffany's failure to demonstrate that actual purchasers would not recognize the word "Tiffany" as denoting a commonly used setting style—we decline to hold that *no* reasonable jury could find that Costco's signs were not confusing.[13] *See Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 264 (2d Cir. 2005) ("[A]t the summary judgment stage, [even if one] inference . . . seems the better of the possible inferences that can be drawn, we must still draw all inferences in favor of the non-moving party.").

## B. Costco's Fair Use Defense

To avoid liability for infringement, however, Costco need not rely on a jury to reject Tiffany's claim that Costco's actions created a likelihood of confusion. Contrary to the district court's holding, Costco is also entitled to present its fair use affirmative defense at trial. The Lanham Act provides that when a party "uses the words constituting [a registered] mark in a purely descriptive sense, this use

---

[13] Because liability for trademark infringement under New York law mirrors liability under the Lanham Act, *see Standard & Poor's Corp., Inc. v. Commodity Exchange, Inc.*, 683 F.2d 704, 708 (2d Cir. 1982), the district court likewise should not have granted Tiffany's motion for summary judgment in connection with its state-law infringement claim.

may qualify as permissible fair use." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013). Crucially, a defendant may raise a fair use defense even where the challenged material is likely to cause some confusion. *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 121–22 (2004). To demonstrate fair use, a defendant must establish that it used the allegedly infringing term "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 400 (2d Cir. 2009) (internal quotation marks omitted); *see also* 15 U.S.C. § 1115(b)(4).

The district court rejected Costco's fair use defense at summary judgment on the basis that—for the same reasons that underpinned its *Polaroid* analysis—Costco's evidence was insufficient to establish that it used the word "Tiffany" in good faith.[14] Having resolved the motion on the basis of good faith alone, the district court did not consider the other factors pertinent to the fair use defense. On appeal, Costco argues that the record contains sufficient evidence to support

---

[14] The "good faith" prong of the fair use analysis is essentially identical to the same prong of the *Polaroid* analysis and "concerns the question whether the user of a mark intended to create consumer confusion as to source or sponsorship." *JA Apparel*, 568 F.3d at 401 (quoting *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 66–67 (2d Cir. 2000)).

each prong of its affirmative defense. We agree. For the reasons stated above, the district court should not have concluded that no question of material fact exists on the question of Costco's good faith. For the reasons that follow, we likewise conclude that Costco created a triable question as to the remaining factors of the fair use analysis.

### 1. Use "As a Mark"

A defendant uses a term "as a mark" when it employs it "as a symbol to attract public attention," *Kelly-Brown*, 717 F.3d at 306 (internal quotation marks omitted), or "to identify and distinguish . . . goods [or services] . . . and to indicate [their] source," 15 U.S.C. § 1127. Whether a defendant has done so may entail an investigation into, *inter alia*, whether the challenged material appeared on the product "itself, on its packaging, or in any other advertising or promotional materials related to [the] product," and the degree to which "defendants were trying to create, through repetition . . . a[n] association between [themselves] and the [mark]." *Kelly-Brown*, 717 F.3d at 310–11 (internal quotation marks omitted).

A jury could reasonably conclude that Costco did not use the term "Tiffany" as a trademark. Tiffany's own evidence indicates that Costco typically identifies the trademark associated with its branded products as the first word on the

product label.[15] For this litigation, Costco produced hundreds of examples of signs for its engagement rings, *none* of which began with the word "Tiffany" or any other brand name. Instead, Costco's evidence demonstrates that it displayed the word "Tiffany" in the exact same manner (including typeface, size, color, and relative location on the signs) that it displayed setting information for other engagement rings. Costco also proffered evidence that the word "Tiffany" did not appear on any of its rings or ring packaging, and that the rings actually bore the logo of a *different* manufacturer. *See Car-Freshner Corp. v. S.C. Johnson & Son, Inc.,* 70 F.3d 267, 270 (2d Cir. 1995) (explaining that a defendant's display of its own trademark on a tree-shaped car freshener suggested that the product's shape was used otherwise than as a mark).

## 2. Descriptive Use

Whether a phrase is descriptive refers to its tendency to describe the goods in question in a broad sense, including not only "words that describe a characteristic of the goods[] such as size or quality," but also words or images that

---

[15] Costco's evidence indicates that when it did sell genuine Tiffany merchandise, "Tiffany" was indeed the first word on the accompanying signs. Both parties agree, however, that Costco has never sold engagement rings produced by Tiffany in its American stores.

more abstractly identify some information about the goods in question. *Cosmetically Sealed Indus. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997) (citing *Car-Freshner Corp*, 70 F.3d at 269–70 (concluding that a car freshener's pine-tree shape was a fair use of a protected image because the shape indicated both the product's scent and the season in which it was sold)).

Here, a jury could reasonably find that Costco used the term "Tiffany" descriptively, based on Costco's evidence that (1) "Tiffany" has a descriptive meaning independent of Tiffany's brand and (2) Costco intended to and did invoke that meaning when it created its point-of-sale signs. As noted above, Costco has identified over a century's worth of documents suggesting that "Tiffany"—both alone and in conjunction with words like "ring," "setting," "style," or "mounting"—is widely understood to refer to a particular type of pronged diamond setting. And as Costco's employees attested in their declarations, both they and their vendors understood the term to be the only precise way to describe that style. Costco also presented unrebutted evidence that it used the term "Tiffany" exclusively on signs identifying rings bearing a Tiffany setting, and that it displayed the same set of information for engagement rings of all styles. In other words, Costco would generally display a diamond ring with a cathedral or bezel

diamond setting along with a sign displaying the word "Cathedral" or "Bezel" in the same way that a sign identifying a diamond ring with a Tiffany setting would display the word "Tiffany."

Tiffany, for its part, resists the conclusion that the term "Tiffany" is amenable to descriptive use—or indeed any use other than as a mark—within the jewelry industry. It argues that "no case has ever bisected a trademark to allow the same word to be used exclusively by the trademark holder to denote the source of goods for every product in a registered class except one," and that doing so here would bring about the "absurd" result that "Tiffany" could be a source identifier for rings of other styles, but a descriptive term for rings in the so-called "Tiffany" style. Appellees' Br. 10.

Tiffany's argument fundamentally misunderstands our caselaw. There is nothing inherently absurd about a single word's being both a source identifier and a descriptive term within the same product class. *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976) ("[T]he same term may be put to different uses with respect to a single product." (citing 15 U.S.C. § 1115(b)(4))). To the extent that "Tiffany" actually does have the descriptive meaning Costco submits that it does, Tiffany's putative "absurd" result is nothing more than the

37

predictable reality of a legal regime in which "trademark rights may be acquired in a word or image with descriptive qualities." *Car-Freshner*, 70 F.3d at 269. And within that reality, it is well established that "the public's right to use descriptive words or images in good faith in their ordinary descriptive sense must prevail over the exclusivity claims of the trademark owner."[16] *Id.*

As a result, the simple fact that a defendant has trademarked a term for use in a particular industry does not preclude a jury's finding that the term has some descriptive use within the same industry. *See JA Apparel*, 568 F.3d at 402–03 (holding that fair use may entitle a clothing company to identify its designer on

---

[16] That Tiffany & Co. and the Tiffany setting derive their names from a common source—Charles Lewis Tiffany, who both founded the company and invented the setting—does not alter this proposition. *See JA Apparel*, 568 F.3d at 394 (explaining that the plaintiff's trademark "Joseph Abboud" refers to the same individual identified in the defendant's ostensibly descriptive advertising materials); *id.* at 402–03 (explaining that the challenged usage might nonetheless be fair use). Nor does it matter that the word "Tiffany" is not *inherently* descriptive of the diamond setting at issue. One who possesses exclusive rights in a mark by virtue of having used it in commerce can lose that right to exclusivity—either outright or in connection with a limited application—by failing to enforce the mark so that, through usage by others in the marketplace, it becomes generic at least in a limited sense. The record reflects that Tiffany used the word mark "Tiffany" in commerce as early as 1868, while the use of the term "Tiffany" to describe a particular setting style acquired currency in the late 1800s. The record suggests no reason that Tiffany could not have taken action in the late 1800s to prevent the use of the word "Tiffany" descriptively in the general marketplace. Whatever Tiffany's reasons for not doing so, Costco's evidence suggests that the word "Tiffany" did acquire an adjectival meaning in the trade to identify a particular style of setting.

advertisements even where a competitor has registered that same designer's name as a trademark in connection with the sale of apparel). Indeed, the fact that Tiffany does not here challenge Costco's use of the phrase "Tiffany set" or "Tiffany setting" may signal an implicit recognition that some uses of its protected mark are indeed descriptive. As we explained in *JA Apparel*, whether a defendant has used a name descriptively requires "individualized consideration" of *how* the defendant has used the name. *Id.* at 402. And as we explained above, Costco's evidence is sufficient for a jury to find the word "Tiffany," when used in conjunction with a particular six-pronged stone setting, had acquired a descriptive meaning in the jewelry trade that did not suggest an association with the jeweler Tiffany & Co., and that Costco used the word descriptively in that sense and in good faith under the particular circumstances of this case. To be sure, a reasonable jury could also *reject* Costco's evidence and find that customers would not recognize the word "Tiffany" as descriptive even with the context Costco provided. On this record, however, that decision belongs to the jury and not to the court.

39

## II. Tiffany's Trademark Counterfeiting Claim

Having determined that Costco's use of the word "Tiffany" constituted
trademark infringement, the district court proceeded to conclude as a matter of
law that Costco's infringement involved a counterfeit mark.[17]  Under the Lanham
Act, "[a] counterfeit is a 'spurious mark which is identical with, or substantially
indistinguishable from, a registered mark.'" *Kelly-Brown*, 717 F.3d at 314 (quoting
15 U.S.C. § 1127). Echoing its principal infringement analysis, the district court
held that Costco's conduct had necessarily involved such a mark because it had
"utilized a word mark identical to the one that Tiffany has registered" and done

---

[17]  In a Lanham Act litigation, a plaintiff who has employed "a counterfeit mark"—
as opposed to a mere "colorable imitation" or other infringing usage—is subject to
heightened statutory penalties. *See* 15 U.S.C. § 1117. "In a case involving the use of a
counterfeit mark," a Lanham Act plaintiff may elect to recover, in lieu of the standard
profits and damages available for mere infringement, "an award of statutory damages . .
. not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or
services sold, offered for sale, or distributed." 15 U.S.C. § 1117(c). Even greater penalties
are available upon a finding that a defendant used a counterfeit mark willfully. If a
defendant has "intentionally us[ed] a mark or designation, knowing that such mark or
designation is a counterfeit mark," and the plaintiff elects to pursue standard profits and
damages, the court "shall, unless [it] finds extenuating circumstances, enter judgment for
three times [defendant's] profits or [plaintiff's] damages, whichever amount is greater,
together with a reasonable attorney's fee." *Id.* § 1117(b). And if a plaintiff elects instead
to pursue statutory damages, a "court [that] finds that the use of the counterfeit mark was
willful," may impose damages of up to "$2,000,000 per counterfeit mark per type of goods
or services sold, offered for sale, or distributed." *Id.* § 1117(c)(2). In this case, after holding
Costco liable for willful trademark counterfeiting as a matter of law, the district court
awarded Tiffany treble profits pursuant to § 1117(b).

so with the "intent to confuse customers as to the source of the rings," rendering its "use of the Tiffany mark . . . 'spurious' as a matter of law." *Tiffany*, 127 F. Supp. 3d at 255. Because it was inappropriate to hold Costco liable for trademark *infringement* at the summary judgment stage—and because counterfeiting is merely an aggravated form of infringement—we vacate the district court's judgment as to counterfeiting as well.[18]

---

[18] We cannot conclude on the record here that no reasonable jury could find in favor of Tiffany on the counterfeiting claim, and we therefore affirm the district court's denial of Costco's motion for summary judgment as to this claim. We do note that it is likely inappropriate to impose liability for trademark counterfeiting when a defendant is able to establish—with or without the other two elements of the fair use defense—that it used a term identical to the registered mark otherwise than as a mark. In order for material to qualify as "counterfeit" under the Lanham Act, it must be a "spurious mark." 15 U.S.C. § 1127. A "spurious" mark, in turn, is one that is "fake" and "[d]eceptively suggest[s] an erroneous origin." Spurious, Black's Law Dictionary (11th ed. 2019). We fail to see how a term can be a "fake" mark if it is not actually *used* as a mark, or how a term can "deceptively suggest an erroneous origin" if it is not used as a means to indicate origin in the first place. *See* 15 U.S.C. § 1127 (defining "trademark" and "service mark" as "any word, name, symbol, or device, or any combination thereof" used "to indicate the source" of goods and services). Terms not used as a mark may still generate confusion as to "affiliation, connection, . . . association[,] . . . sponsorship or approval," *id.* § 1125(a)(1)(A), or "misrepresent the nature, characteristics, qualities, or geographic origin" of a good or service, *id.* § 1125(a)(1)(B), and therefore constitute trademark *infringement*. *See Int'l Info. Sys. Sec. Certification Consortium*, 823 F.3d at 161 ("[P]rotection is not exclusively limited . . . to cases in which there may be confusion as to source."); *Kelly-Brown*, 717 F.3d at 308 ("Lanham Act plaintiffs [need not] show that the defendant was using the allegedly infringing content 'as a mark' . . . in order to establish consumer confusion."). But because terms not used as marks are not "spurious," they cannot, as a matter of law, be *counterfeit*.

### III.    Tiffany's Entitlement to Punitive Damages

In their briefing, both parties address the question whether—assuming Costco's liability for infringement—Tiffany is entitled to punitive damages under New York law. Because we vacate the district court's ruling as to Costco's liability, we decline to address the question whether punitive damages would be available to Tiffany if a jury were to find in its favor on remand.

### CONCLUSION

For the foregoing reasons, we VACATE the judgment of the district court and REMAND the case for trial.